**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____x

**CORRINE LYNCH,**

                              Plaintiff              DOCKET NO.

        -against-

                                            **COMPLAINT**
                                            _Jury Trial Demanded_

**THE DEPARTMENT OF EDUCATION OF**          **24-cv-7795-DG-JAM**
**THE CITY OF NEW YORK, DAVID BANKS,**
**Chancellor and KATHERINE RODI, Director**
**of Employee Relations,**

                              Defendants

_____x

**PLAINTIFF CORRINE LYNCH,** ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendants the **DEPARTMENT OF EDUCATION OF THE CITY OF NEW**

**YORK, DAVID BANKS and KATHERINE RODI,** (henceforth "Defendants"), alleges

upon knowledge as to her own facts and upon information and belief as to all other

matters:

## PRELIMINARY STATEMENT

1.  This is a civil action seeking injunctive relief, monetary relief, including past and

    on- going economic loss, compensatory and equitable damages for the deprivation

    of Constitutionally protected due process rights given to her as a tenured teacher

    pursuant to 42 U.S.C. Section 1983, 1st, and 14th Amendments to the United States

    Constitution, protected property and liberty rights under Education Law §§3020 and

1

3020-a, and New York State and New York City Human Rights Law (NYSHRL and NYCHRL), which prevent employers from (1) discriminating against employees based on an employee's religious belief; (2) wrongfully forcing Plaintiff into a suspension without pay and then terminating her, a tenured teacher, by circumventing public policy employment, due process laws, and the property and liberty rights of the Tenure statute.

2.  Despite giving religious-based accommodations to other tenured employees similarly situated, and placing many unvaccinated employees on reassignment ("rubber rooms") in Defendants' district offices and at home on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA"), offered no accommodation whatsoever, and terminated her.

3.  Defendants denied Plaintiff's request for an RA without any factual basis or proof after Plaintiff requested a RA in September 2021. Then, she was punished by Defendants for not getting the vaccine by being terminated, after being placed on a "problem code" by the Defendant Katherine Rodi, Director of the Office of Personnel Investigations which oversees the Problem Code.

4.  By placing Plaintiff's fingerprints into a "problem code" or no-hire database, LWOP became a disciplinary action, with a charge of misconduct/insubordination due to Plaintiff holding onto her religious beliefs and refusing the vaccine. These actions by Defendants may clearly be defined as disciplinary retaliation, motivated by an intent to harm.

## PARTIES

5.  Plaintiff was a tenured employee of the Department of Education of the City of
New York in good standing as a tenured teacher since 2011. She had an impeccable
reputation and record. Plaintiff was a public employee of Defendants within the
meaning of an "employee" as defined in New York State Civil Service Law § 75-
b(1)(b). Plaintiff lives in Oceanside, N.Y.

6.  Defendants the Department of Education of the City of New York ("DOE") has
overseen the NYC system of public schools located throughout all five (5)
boroughs of the City of New York and been and continues to be a recipient of
substantial federal funds, and as such, acts under color of law with its' principal
place of business located in 65 Court Street in Brooklyn, New York.

7.  Defendant David Banks is the Chancellor of the Department of Education of the
City of New York ("DOE") and has overseen the NYC system of public schools
located throughout all five (5) boroughs of the City of New York.

8.  Defendant Katherine Rodi is employed by the Department of Education of the City
of New York ("DOE") and started work as the Director of Employee Relations in
2012. She also has the responsibility of overseeing the DOE's Office of Safety and
Health and the Office of Personnel Investigations, where she decides who among
the DOE's employees are placed on a "Problem Code". She monitors the
disciplinary information in the personnel file that is highlighted by the Problem
Code for principals who may want to hire a former or current employee.

## JURISDICTION AND VENUE

9.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §3020-a (the "tenure law") . This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4)  for claims arising federal questions under 42 U.S.C. 1983.

10. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

11. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

12.  . This action seeks recovery of monetary damages for the violation of constitutional rights of property, liberty and due process enshrined in Federal

4

Statute and state law protecting the rights of tenured employees in public service in New York State.

13. Plaintiff was hired as a teacher by the New York City Department of Education ("DOE") in 2011. Plaintiff has earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law Sections §§3020 and 3020-a of the New York State Education Law.

14. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated. See **EXHIBIT A**, Application for Religious exemption/accommodation (RA); **EXHIBIT A(1)**. Religious Statement; and **EXHIBIT A(2)** Letter from Cliff Kretkowski.

15. On September 10, 2021 the DOE sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021.This alleged "policy" never changed the terms of Plaintiff's tenured employment status, although claiming to do so. No citation to Education Law §3020 or 3020-a was included in the LWOP, in violation of her constitutional rights. (Judge Abadi Order in the case of Kambouris v NYC Depart. Of Educ., Index No. 518863/2022). See **Exhibit B**, Scheinman Award Dated September 10, 2021.

16. On September 25, 2021 Plaintiff was denied her RA by Defendants because she failed to meet "the criteria" for a religious accommodation, and no other worksite could be offered, as this would be an undue burden. **EXHIBIT C.** Denial of RA.

17. On November 30, 2021, Plaintiff, without a salary and with no health insurance due

to LWOP (See **EXHIBIT D**) nonetheless wrote the Department of Education an

email saying she would not waive her protected rights. **EXHIBIT D(1)**.

18. On October 5, 2021 Plaintiff attempted to reapply for a RA with updated

documentation, but was not permitted by the Defendants.

19. On November 28, 2021 the Court of Appeals threw out the Scheinman Appeals

Process and Award because it was "constitutionally infirm". In a letter to this Court

dated July 7, 2022 in Broecker et al. v New York City Department of Education et al

Docket No. 21-CV-06387-KAM-LB: Attorney Austin Graff cited Scheinman for

violating Department employees' rights:

In Scheinman's June 27 Award Scheinman wrote:

> "... While the Department claims its action is unconnected with the Award, it is
> the Award itself that created a new leave without pay. Absent the Award, the
> Department was without the authority to remove these employees from the
> payroll without providing a due process hearing.
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied.
> This is because such employees intentionally decided to disregard the mandate
> they be vaccinated by September 27, 2021, the date established by
> Commissioner Chokshi and Mayor de Blasio."

Graff adds:
> "First, Scheinman's words establish that but-for the Award, the NYCDOE could
> not have placed the Plaintiff on leave without pay. As Plaintiff argued in
> opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil
> Service Law § 209.3.(f) and the numerous cases that have interpreted the statute,
> including a case from the New York Court of Appeals and numerous opinions
> issued by PERB. Therefore, if the Court finds that the Award violated N.Y.
> Civil Service Law § 209.3.(f), as the Plaintiff argue, then the NYCDOE did not
> have any authority to place the Plaintiff on leave without pay without due
> process, thereby violating the Plaintiff due process rights. Scheinman's words
> are additional evidence that the Plaintiff have stated a plausible claim against the
> NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion
> to Dismiss should be denied.
>
> Second, it was Scheinman who "created a new leave without pay" by issuing the
> Award. Scheinman establishes, by his own words, that he actively participated

6

in the violation of the Plaintiff' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing….. admitting that his actions caused the Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

**EXHIBIT E.** Court of Appeals;  and **EXHIBIT E(1),** Scher Lawfirm letter dated July 7, 2022.

20. On November 29, 2021 Plaintiff again attempted to reapply for a RA but she was not provided any option to do so in the DOE portal.

21. On February 8, 2022 Plaintiff received a termination notice from Defendants stating that she would be terminated on February 18, 2022. The DOE claimed that her terms of employment had been changed, and this was false. On February 18 2022 Plaintiff was terminated without any due process due, namely a §3020-a hearing. On February 9, 2022 the UFT sent Plaintiff a request for a §3020-a, which she filled out and sent back, to preserve her rights. See **EXHIBITS F, F(1), F(2),** and **F(3).**

22. On June 27, 2022, Arbitrator Martin Scheinman created a new Award in which he apologized for creating LWOP out of whole cloth, and he admitted that all tenured employees were protected from termination without due process and the Department was required to offer a 3020-a hearing. **EXHIBIT G,** Scheinman Award June 27, 2022; and **EXHIBIT G(1),** Letter from the Scher Lawfirm on this new Award.

23. On or about April 28, 2022 Plaintiff was informed that the DOE's Office of Personnel Investigations ("OPI") had placed her personnel file and fingerprints on the "Problem Code" database in October, meaning that she would not be able to work in any position for the NYC DOE or any vendor because she was deemed guilty of misconduct/insubordination. Defendants Katherine Rodi has been Director of OPI and in charge of placing problem codes on personnel files since 2012. Plaintiff was, by Rodi's action, blocked from getting paid by the NYC DOE or any vendor. Karen King at the UFT confirmed this action, and two Declarations were filed in the Kane v DeBlasio and  Keil v City of New York federal cases. **EXHIBIT H.** email from UFT Karen King; **EXHIBIT I**, Declaration of Betsy Combier and Amato email; **EXHIBIT J**. Declaration of Barry Black.

24. On February 10, 2023 Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary. Yet no one at the DOE told Plaintiff she could re-apply for her job.

25. The §3020-a arbitration hearing is clearly described in the law, is New York State public policy, and the charging procedures cited in Section 1 and Section 2 of this law cannot be waived nor bargained away. The UFT-DOE Contract ("CBA") gives the particulars of the hearing itself in Article 21G of the contract. This procedure is mandatory, and unless a tenured educator is found guilty of serious misconduct – grand larceny, abuse of a child, having or using drugs in school – at a Probable Cause hearing, he/she must be kept fully paid their regular salary while waiting for the charges and 3020-a.

26. Plaintiff was charged by Defendants in this matter with disciplinary misconduct, which prevented her from getting benefits from the unemployment office, solely due to the fact that she held sincere religious beliefs prohibiting her from getting vaccinated. Plaintiff was denied a §3020-a due process hearing and given no accommodation whatsoever, despite the fact that the DOE has hundreds of employees throughout the City that either got the exemption from getting the vaccine or they were placed into a reassignment location at home. In addition to these many DOE employees, school bus drivers, and school delivery people were given exemptions by the Mayor. Later, in March 2022, volunteers and Broadway actors as well as sports players were excluded from having to take the COVID Vaccine under the Mandate ("CVM"). See Emergency Executive Order 62 here: https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62

27. The chaotic mess of the explosion of inequalities of law and vaccinations continue today. The New York Post highlighted the hundreds of employees who were getting exemptions:  **City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees** https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees;Gothamist, Sept. 24, 2021.

## CAUSES OF ACTION
## AS AND FOR A FIRST CAUSE OF ACTION
## FOR RELIGIOUS DISCRIMINATION

28. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 27 as if the same were fully set forth at length herein.

29. Plaintiff submitted to Defendants in September 2021 a statement on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

30. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

31. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. …..
>
> Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

32. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

33. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones. All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

34. Plaintiff's unemployment and her unvaccinated status led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated. See: **NYC teachers with vaccine exemptions are being treated like pariahs,** https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

35. In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs.

36. Defendants started with suspension without pay, then secretly charged Plaintiff with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a "Problem Code" without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination. The U.S. Supreme Court has ruled that this is retaliatory discrimination: Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006) ("that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay").

37. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed into leaving her job and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

38. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, Constitutionally protected property and liberty rights to continued employment. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get them out of their positions quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, worked. Until November 28, 2021. (Ex. G).

39. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the

12

flag or Code on their fingerprints cannot get paid by the Defendants or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Plaintiff's career and character. See the following post on Parentadvocates.org:

"The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints"
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

40. The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct, and that Scheinman gave false information in his September 10 Award when he wrote that LWOP was not disciplinary. It was, and he knew it. He wrote and negotiated the CBA for the UFT. **EXHIBITS H,I, J**.

41. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of her Constitutional rights to property, liberty and a due process 3020-a hearing, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
<u>**FOR FAILURE TO REASONABLY ACCOMMODATE**</u>
<u>**THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS**</u>

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 34 as if the same were fully set forth at length herein.

43. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

44. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

45.  No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

46. At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

**New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions**
**https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**

and "rubber homes"

**Idled NYC educators do nothing but sign in remotely, even from Europe**
https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023

47. Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

48. Defendants claimed "undue burden" while simultaneously omitting information of their long-term policy re-assigning employees to "rubber rooms", some of which held about 1-2000+ employees from 2002 until 2010. After 2010 Defendants scattered the re-assigned employees who could not be near children to rooms throughout New York

City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that may never have happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, these re-assigned employees awaited their §3020-a hearings at home.

49. Defendants could have given all the so-called "miscreants" similarly unvaccinated as Plaintiff, a reassignment to home or a rubber room. Defendants chose to claim that no accommodation was available and any accommodation was an "undue burden". This lack of consideration directly contradicts the ruling in Groff.

50. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION:
## VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL
## PROTECTION CLAUSE

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 42 as if the same were fully set forth at length herein.

15

52. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

53. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance....The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious....prohibit an employee from reporting to work."

54. New York City was the only location in New York State which mandated the vaccine or termination for public employees. New York City was also the only place where tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

55. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection

under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover compensatory and nominal damages including backpay.

56. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis of her religious beliefs, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her disabling condition, in violation of 42 U.S.C. § 1983; 14th Amendments due process clauses; Tenure rights and Law; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HER PROPERTY AND LIBERTY RIGHTS TO A CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A**

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 48 as if the same were fully set forth at length herein.

58. Plaintiff was punished with wrongfully being disciplined for her alleged "insubordination" in not getting vaccinated with the COVID vaccine without any §3020-a hearing and no accommodation offers or review by the Defendants.

59. Education Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;
2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law….. (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision…"

See **EXHIBIT F(2).**

60. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her religious exemption/accommodation. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

61. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

62. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

   "Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

63. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

64. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

"New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985].
New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law § 3020."

See Kambouris v NYC DOE, Index no. 518863/2022, Decision dated January 5, 2023. Defendants DOE did not appeal.

65. Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led to her wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a forced leave without pay in order to throw out senior, tenured teachers such as Plaintiff without a due process hearing.

66. Scheinman committed a fraud against Plaintiff and breached an implied covenant of good faith and fair dealing by issuing lawless requirements of procedure that Plaintiff could not comply with yet relied on to her detriment. Scheinman's actions were intentional and deliberate.

67. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her

19

religious beliefs, and unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religious beliefs, in violation of Education Law §3020, §3020-a (Tenure Law); 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

68. Plaintiff requests (1) backpay and all benefits and pension steps due after Defendants' violations of law, public policy and rights removed her from her salary under color of law and deprived her of Constitutionally protected due process;  (2) reinstatement to her former working title with a salary that reflects 2 ½ years of missing time and wages, with pension steps and raises included; (3) judgment against Defendants for refusing to, or neglecting to, prevent such deprivations and denials to Plaintiff.

69. Plaintiff has had actual, documented impairments and damages to her life and career.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.    Awarding Plaintiff her tenured position, salary steps and raises, earned before October 2021, in full, with benefits; and

2.    Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

3.   Considering Plaintiff is prose, an opportunity to Amend her

Complaint after submission of Defendants' papers.

4.   Granting such other and further relief that the Court deems just and

proper.

Dated: October    2024
Oceanside, N.Y.

_____
Corrine Lynch

21

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Tuesday, September 21, 2021 12:22 PM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Your application for a COVID-19 Vaccine Related Exemption or Accommodation has been received.

09/21/2021

Case#: A79583
File# 0865228
EMP ID: 1296342

Dear CORRINE LYNCH,

Thank you for submitting your application online!

Type of Application: COVID-19 Vaccine Related Exemption or Accommodation

Application Communications:
During your application process, all communications will be sent to your DOE e-mail account. You must continue to check your DOE e-mail, even if you listed a different preferred email address.

Changes to Your Application:
Unfortunately, you cannot make changes to your submitted application. If you need to make changes, you must withdraw this application and re-submit your request. To withdraw the application please log back into SOLAS: https://dhrnycaps.nycenet.edu/SOLAS.

Questions:
For technical questions regarding the SOLAS system, please call HR Connect at 718-935-4000 and refer to the case number at the top of this notice. For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Corrine Lynch
34 Cheslan Court
Oceanside, NY 11572
(516) 316-0451
Clynch7@schools.nyc.gov


Dear **New York City Department of Education**,

I am writing to formally and respectfully apply for a religious exemption to immunizations. I base my request on religious grounds. New York law has great respect and deference for the myriad religions that are practiced in her borders and, as such, allows for the individual's unique word from God as it concerns this issue. I understand that we do not have to be members of an organized religion or any religion at all. I also appreciate that refusing immunization does not have to be a tenet or directive of a particular faith that I may follow. I also understand that I do not have to submit a letter from a religious figure.  Before moving any further, I ask that this be shared on an as-needed basis only; that is, only those charged with approving the application should read my words.

I was brought up as a Christians. Some Christian principles remain with me; those of generosity and tolerance towards others, the goal of peace and contentment, and a union with God remain a perpetual goal. However, as I grew and matured, I began to see that I did not truly understand why I adhered to the form of Christianity my parents introduced me to. I always looked for something beyond the church, past the hymns and more than the prayers recited. I needed more than the words that others wrote, which I was supposed to think and feel. I bought into it partially, but not 100%. Shouldn't religion be an integral part of life? As soon as I put down the Bible or walked out of the church, I left the thoughts and feelings a little bit behind; I had other ideas and feelings that were all my own that were not directly spoken of in the church. Shouldn't it all be the same? 'Half-baked' regarding organized religion did not sit well with me; I found I needed more to explain what I felt and thought. And what my relationship to God needed to be.

My family and I do not have to adhere to Christianity my parents introduced me to. We can look for something beyond the church building, past the hymns, and more than the prayers recited. We believe religion needs be an integral part of life, not just a few hours on a Sunday. We needed to make religion an essential part of life. We can't simply put down the Bible and disconnect. Belief in God needs, for us, to be more than that. We also believe that there is evidence that Jesus Christ did not necessarily want his teachings to become a standardized type of religion, which is precisely what, at least, Catholicism has done. We have chosen to live by the Christian principles that we feel define the essence of the faith and the word of Jesus Christ and the Bible. We have also invited other complementary aspects of other religions, including Buddhism, into our lives to complete our set of beliefs. We live by a blended group of views, and this suits us.

Nevertheless, the principles of generosity, tolerance towards others, inner peace and contentment, and a loving union with God remain a perpetual goal for us. We achieve this peace by trusting in God's words and following them. Followers of Jesus look for this inner peace and well as followers of Buddhism.

While I always will carry my Christian roots and a deep belief in Jesus and the Father, I look to other religious principles to live a life-supporting the essence of my understanding of Christ. I find that Eastern faiths (specifically Buddhism) call out to me as suitable for how I live and worship. This is because Buddhism teaches, among other things, that solutions to problems and obstacles lie within our bodies and minds- ourselves- not outside of ourselves.

"Trust in the Lord with all thine heart, and lean not unto thine own understanding. In all thy ways acknowledge Him, and He shall direct thy paths." Proverbs 3:5,6 "Show me the path where I should go, O Lord, show me the right road for me to walk." Psalms 25:4 "I will instruct thee and teach thee in the way which thou shalt go; I will guide thee with mine eye." Psalms 32:8 This illustrates that we must place our faith and trust in God and listen to His word. Therefore, whatever we feel his directive is to us, we must follow. This is important as various scripture can deliver a message to us, and according to the above, we must heed it as it is the word of God.

Do I believe in medical interventions? I think whatever God sends my way, I will seek His help for solutions and guidance. And my decisions will adhere to my personal belief in God. Though I turn my back on immunization, I do not turn my back on all 'modern' medicine and its practices and philosophies. When my child was born with a rare neurological-genetic condition, I leaned on God and prayer to help guide my family through the most challenging decisions we ever faced, and I accepted help. There is a significant difference between a body in crisis needing help and a healthy body accepting a procedure. I believe God would accept the former; He would not accept the latter.

Why was I immunized in the past? It is part of my nature to live in a way that adheres to the 'rules' and follows guidelines set by trained experts. For me, and in most instances, this is comfortable and feels right. For this reason, my child and I have been vaccinated in the past. As I have raised my child and evolved and developed as a spiritual being, I see that many things of value in life do not necessarily make sense as humankind sees them. Sometimes, this is one of those 'times' we need to follow our inner voice, instinct, and conversations with our higher power. These conversations with God can take endless forms. Turning my back on vaccines has reached me in His word. This, to me, defines faith and defines mine. It is a difficult step to take in society, not to vaccinate. Current medical wisdom tells us there is a health risk if I do not engage in this procedure. It is difficult to carry out what I knew to be suitable for my family and reflect on my bond with God. Through prayer, consulting with self, God, and family members, I have found the strength to carry out what God's word means to me, even if it means opposing a more mainstream school of thought. My relationship with God, my family and my conscience are uniquely mine. My family and I will be raised to be a part of the holy and sacred union and interpretation.

The above is an explanation of my personal religious beliefs. I hope I have described them sufficiently. But, again, these thoughts are the unique message I receive from my God. I don't ask that you, or anyone else, agree with these thoughts and personal translations. But under New York law, I respectfully request that they be honored as truthful and legally permissible. Therefore, based on what I have shared, I ask this waiver be approved.


Warm regards,



Corrine Lynch

September 13, 2021

To whom it may concern:

I, Cliff Kretkowski, am writing to confirm that I have been a part of Corrine Lynch's religious and spiritual journey for 39 years. I was a Pastor at the Valley Stream Church of the Nazarene and have witnessed and played a significant role in Corrine's religious/spiritual growth. I have known her since the day she was born. She was baptized in the church when she was 21 years old. I married her in the church and dedicated her son to God when he was a baby. She has attended Bible Studies to deepen her relationship with God, and I have been a mentor to her through many of life's challenges. Her relationship with God has been unique and transforming and it is her and her's alone. If you have any questions, please feel free to reach me at  (516) 680-0647.

Sincerely,
Cliff Kretkowski



September 10, 2021

<u>Via E-Mail Only</u>
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:    **Board of Education of the City School District of the City of New York and**
       **United Federation of Teachers, Local 2, AFT, AFL-CIO**
       **(Impact Bargaining)**

Dear Counsel:

    Enclosed please find my Award in the above referenced matter.

    Thank you.

                                   Sincerely,

                                   Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

```
------------------------------------ X
In the Matter of the Arbitration
                                     X
         between
                                     X
BOARD OF EDUCATION OF THE CITY                    Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF       X
NEW YORK
                                     X
         "Department"
                                     X
         -and-
                                     X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                 X

         "Union"                      X
------------------------------------ X
```

**APPEARANCES**

    **For the Department**
      Renee Campion, Commissioner of Labor Relations
      Steven H. Banks, Esq., First Deputy Commissioner
      and General Counsel of Labor Relations

    **For the Union**
    STROOCK & STROOCK & LAVAN, L.L.P.
      Alan M. Klinger, Esq.

    Beth Norton, Esq., UFT General Counsel
    Michael Mulgrew, UFT President

**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM                    INDEX NO. 155905/202

YSCEF DOC. NO. 4          Case 1:24-cv-07795-DG-JAM   Document 1   Filed 11/08/24   Page 28 of 92 PageID #: 28          RECEIVED NYSCEF: 07/19/202

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of
Education's ("Department" or "DOE") failure to reach agreement on
the impact of its decision mandating all employees working in
Department buildings show proof they started the Covid-19
vaccination protocols by September 27, 2021. The Union contends the
Department failed to adequately provide, among other things, for
those instances where employees have proof of a serious medical
condition making the vaccine a danger to their health, as well as
for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan
area, we are now in the 18th month of the Covid-19 pandemic. During
that time, we have seen substantial illness and loss of life. There
have been periods of significant improvement and hope, but sadly, we
have seen resurgence with the Delta variant. Throughout this period,
NYC and its municipal unions have worked collaboratively to provide
needed services for the City's 8.8 million residents in as safe an
environment as possible. Yet, municipal employees have often borne
great risk. The Department and the UFT are no exception. The DOE
and the UFT immediately moved to remote instruction and then later
a hybrid model of both in-person and remote learning for the 2020-
2021 school year. Educators at all levels strove to deliver the
best experience possible under strained circumstances. For this

2

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning.   They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters.   In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate.   That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits.   This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021.   That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

3

Case 1:24-cv-07795-DG-JAM    Document 1    Filed 11/08/24    Page 30 of 92 PageID #: 30

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

5

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.   Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodattion

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT"), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

7

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o ~~Within ninety (90) days of monoclonal antibody treatment of COVID-19~~;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or ~~determined by a treating physician with a valid medical~~ license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

8

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM          INDEX NO. 155905/202

YSCEF DOC. NO. 4                                           RECEIVED NYSCEF: 07/19/202

Relations. These determinations shall be made in writing no

later than Thursday, September 23, 2021, and, if denied,

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM          INDEX NO. 155905/202

YSCEF DOC. NO. 4                                           RECEIVED NYSCEF: 07/19/202

Length of delay for these conditions may vary, and the employee
must get vaccinated after that period unless satisfying the criteria
for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the
mandatory vaccination policy must be documented in writing
by a religious official (e.g., clergy). Requests shall be
denied where the leader of the religious organization has
spoken publicly in favor of the vaccine, where the
documentation is readily available (e.g., from an online
source), or where the objection is personal, political, or
philosophical in nature. Exemption requests shall be
considered for recognized and established religious
organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought
and received the full course of the vaccination, he or she
is unable to mount an immune response to COVID-19 due to
preexisting immune conditions. In these circumstances, each
individual case shall be reviewed for potential
accommodation. Medical accommodation requests must be
documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or
accommodation shall be made by staff in the Division of Human
Capital in the Office of Medical, Leaves and Benefits; the
Office of Equal Opportunity; and Office of Employee

9

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

YSCEF DOC. NO. 4    Case 1:24-cv-07795-DG-JAM    Document 1    Filed 11/08/24    Page 36 of 92 PageID #: 36    RECEIVED NYSCEF: 07/19/202

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv.   Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period. This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v.   In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child. As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi.   If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

ILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

YSCEF DOC. NO. 4    Case 1:24-cv-07795-DG-JAM    Document 1    Filed 11/08/24    Page 37 of 92 PageID #: 37    RECEIVED NYSCEF: 07/19/202

> vii.  All other eligibility and use rules regarding UFT Parental
> Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29,
2021, any employee who is on leave without pay due to
vaccination status may opt to separate from the DOE. In order
to separate under this Section and receive the commensurate
benefits, an employee must file a form created by the DOE which
includes a waiver of the employee's rights to challenge the
employee's involuntary resignation, including, but not limited
to, through a contractual or statutory disciplinary process. If
an employee opts to separate consistent with this Section, the
employee shall be eligible to be reimbursed for unused CAR days
on a one (1) for one (1) basis at the rate of 1/200th of the
employee's salary at departure per day, up to 100 days, to be
paid following the employee's separation with documentation
including the general waiver and release. Employees who elect
this option shall be deemed to have resigned involuntarily
effective on the date contained in the general waiver as
determined by the DOE, for non-disciplinary reasons.    An
employee who separates under this Section shall continue to be
eligible for health insurance through September 5, 2022, unless
they are eligible for health insurance from another source
(e.g., a spouse's coverage or another job).

16

FILED: NEW YORK COUNTY CLERK 07/19/2022 02:10 PM

YSCEF DOC. NO. 1    Case 1:24-cv-07795-DG-JAM    Document 1    Filed 11/08/24    Page 38 of 92 PageID #: 38    RECEIVED NYSCEF: 07/19/202

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE. Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK      )
                       )   ss.:
COUNTY OF NASSAU       )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.Impact Bargaining.awd

18

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Saturday, September 25, 2021 2:03 AM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Your COVID-19 Vaccine Religious Exemption Application - Determination

09/24/2021

Case#: A79583
File# 0865228
EMP ID: 1296342

Dear CORRINE LYNCH,
We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate.
Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

.

**From:** Lynch Corrine
**Sent:** Tuesday, November 30, 2021 7:17 PM
**Subject:** Updated Maintaining Right to Sue for Wrongful Termination


SUBJECT – **Maintaining Right to Sue for Wrongful Termination**

To whom it may concern,
I received a final notice of leave without pay status from NYCDOE Division of Human Capital on 11/29/2021. In this notice, it states "If you remain non-compliant and have not opted to extend you LWOP or return from LWOP status by November 30, you are subject to termination from service with the NYCDOE beginning December 1, 2021."

I have reasons to believe that my religious or medical exemption was wrongfully denied by the DOE and I am writing this letter to inform you of the followings.
1.    I will NOT choose to extend my LWOP status on SOLAS by 11:59 pm on 11/30/2021 because I will not waive my right to sue.
2.    I am NOT waiving my rights to seek religious or medical exemption and accommodation from any requirement that conflicts with my sincerely held religious beliefs and/or medical conditions, and I am not waiving my rights to seek legal redress from any wrongful denial of such exemption or accommodation.
3.    I am NOT waiving my rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process.
4.    I am NOT waiving my rights to challenge any wrongful termination.


Employee Name: Corrine Lynch
Signature: Electronic- Corrine Lynch
Date: 11/30/21


–
*Sincerely*
*Corrine Lynch*

**From:** NYCDOE <noreply@schools.nyc.gov>
**Sent:** Saturday, October 2, 2021 3:10 PM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Notice of Leave Without Pay - PLEASE READ



Dear Corrine Lynch,

You are receiving this message because you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's COVID-19 Vaccine Mandate. If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. This means you must not report to your work or school site beginning Monday, October 4th.

While you are on Leave Without Pay (LWOP), you:
- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the DOE Vaccination Portal
1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the DOE Vaccination Portal, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door. You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately. Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:
- **Separation with benefits** (available in SOLAS as of Monday, October 4): Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,
NYCDOE Division of Human Capital

**APPENDIX**

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

       At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:     Pierre N. Leval,
             José A. Cabranes,
             Denny Chin,
                 *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu,
Heather Clark, Stephanie Di Capua, Robert Gladding,
Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad
Smith, Amaryllis Ruiz-Toro,

                    *Plaintiffs-Appellants,*         **ORDER**

         v.                           21-2678-cv

Bill de Blasio, in his official capacity as Mayor of
the City of New York, David Chokshi, in his
official capacity of Health Commissioner of the
City of New York, New York City Department of
Education,

                    *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado,
Dennis Strk, Sarah Buzaglo,

                    *Plaintiffs-Appellants,*

         v.                           21-2711-cv

The City of New York, Board of Education of the
City School District of New York, David Chokshi, in
his Official Capacity as Health Commissioner of the
City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal
having been heard at oral argument on November 10, 2021, and Defendants-Appellees
("Defendants") having represented to this Court that "the City is working toward making an
opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully
sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on
November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious
   accommodation by a central citywide panel consisting of representatives of the
   Department of Citywide Administrative Services, the City Commission on Human
   Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil
   Rights Act of 1964, the New York State Human Rights Law, and the New York City
   Human Rights Law. Such consideration shall not be governed by the challenged criteria
   set forth in Section IC of the arbitration award for United Federation of Teachers
   members. Accommodations will be considered for all sincerely held religious
   observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be
   considered within two weeks of entry of this order. The citywide panel shall issue a
   determination on each request no later than two weeks after a plaintiff has submitted such
   information and materials. Within two business days of the entry of this order,
   Defendants shall inform plaintiffs' counsel how such information and materials should be
   transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying
   waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's
   employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay
   running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is
   considered by the merits panel of this court, which panel may entirely supersede these
   provisions for interim relief, and the parties are at liberty to advocate to the merits panel
   for alteration of these provisions. Unless the merits panel has previously entered a
   superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before
   the citywide panel, the parties shall inform the merits panel of the result of those
   proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H SCHER*
JONATHAN L SCHER**

AUSTIN R GRAFF*

* Also Admitted in District of Columbia
· Also Admitted in New Jersey

TEL 516-746-5040

FAX 516-746-5043

W SCOTT KERSHAW
COUNSEL
MICHAEL SCHILLINGER
COUNSEL
ROLAND P BRINT
COUNSEL
ADAM GANG
COUNSEL

ROBERT S NAYBERG
[unreadable]

July 7, 2022

**BY FEDERAL EXPRESS AIRBILL NO. 777327941330**
**AND BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Broecker, *et al.* v. New York City Department of Education, *et al.*
       Docket No. 21-CV-06387-KAM-LB

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon new documentary evidence obtained yesterday contained in the filing with the New York State Supreme Court, County of New York in a newly filed litigation entitled *In the Matter of the Application of the Board of Education of the City School District of the City of New York, et al. v. United Federation of Teachers, Local 2, AFT, AFL-CIO, et al.* under Index Number 451995/2022 ("DOE Proceeding"), regarding a dispute over a new arbitration decision by the Defendant Martin Scheinman ("Scheinman") materially and relevant to the pending Motions to Dismiss.

The *New York Post* reported yesterday on the DOE Proceeding which challenges Scheinman's Opinion and Award relating to 82 NYCDOE employees placed on leave without pay by the New York City Department of Education ("NYCDOE") for filing allegedly false vaccine cards. *See,* **Exhibit A,** a copy of the *New York Post* article.

Through due diligence, we were able to find the NYCDOE's filings in the DOE Proceeding, which included the new Opinion and Award issued by Scheinman that directly relates to the pending Motions to Dismiss in the above-referenced Action.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 2 of 3

In Scheinman's newest Opinion and Award (**Exhibit B** ("Opinion and Award")), Scheinman states with respect to the UFT Arbitration Award ("Award"):

> ... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
>
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

**Exhibit B**, at page 10.

This language, written by Scheinman in the Opinion and Award supports three arguments previously made by the Plaintiffs in opposition to the Motions to Dismiss:

First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiffs on leave without pay. As Plaintiffs argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiffs argue, then the NYCDOE did not have any authority to place the Plaintiffs on leave without pay without due process, thereby violating the Plaintiffs' due process rights. Scheinman's words are additional evidence that the Plaintiffs have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinman establishes, by his own words, that he actively participated in the violation of the Plaintiffs' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing." **Exhibit B**,

# THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
July 7, 2022
Page 3 of 3

at page 10. Scheinman's own words establish that the Plaintiffs have stated a plausible claim for a violation of 42 U.S.C. § 1983 against the NYCDOE and Scheinman because as he admits, without his Award, the NYCDOE would have had to provide the Plaintiffs with due process before placing them on leave without pay, admitting that his actions caused the Plaintiffs to "suffer[ ] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). Accordingly, the Scheinman Defendants' Motion to Dismiss must be denied.

Third, Scheinman confirms that it was him who "decided [leave without pay] was appropriate", which means that the NYCDOE and the UFT did not "continu[e] to negotiate until an 'agreement' [was] reached" but instead the resolution of the NYCDOE's and UFT's impasse was imposed by Scheinman in violation of N.Y. Civil Service Law § 209.3.(f). *Matter of Buffalo Teachers Federation v. City School District of the City of Buffalo*, 49 PERB P4560 (2016). Scheinman's words confirm that the Award was a newly created and imposed remedy to the school district's impasse in negotiations with its union and therefore violated clear and unambiguous statutory language requiring a school district, like the NYCDOE, and its union, like the UFT, to overcome any impasse at the bargaining table and not through any other means. As a result, Scheinman's words support the Plaintiffs' argument that they have a plausible claim that the Award was promulgated and instituted without any statutory authority.

*********************

The Plaintiffs thank the Court for its courtesies in accepting the Plaintiffs' supplemental filing, considering the Opinion and Award only came into the Plaintiffs' possession yesterday and the Plaintiffs believed, as shown above, that the Opinion and Award is material and relevant to the pending Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michael\Teacher Litigation\Motions\Motion # 002 - Motions to Dismiss\Opposition to the Motion\July 2022 Supplemental Letter 7-7-2022 letter to Court re Scheinman award.doc



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
89 Washington Ave., Room 987 EBA
Albany, New York 12234

Ph:   (518) 473-2829
Fax:  (518) 402-5940

(09/21)

## Rights of Tenured Employees
(This document only applies to cases where charges were filed on or after July 1, 2015.)

This document, while not intended to be exhaustive, describes certain rights of tenured employees in Education Law §3020-a and §3020-b proceedings. The information contained in this document should not act as a substitute for the applicable statutes or regulations. Individuals are advised to consult with an attorney as significant adverse consequences may result from these proceedings.

> **Special Notice to Tenured Employees of the New York City Department of Education**
>
> Many of the provisions in Education Law §3020-a and/or §3020-b, including those described in this document, have been substantially modified by the collective bargaining agreement and subsequent amendments and/or revisions between the United Federation of Teachers ("UFT") and the New York City Department of Education ("NYCDOE"). Education Law §3020(3) permits the NYCDOE to modify the provisions of Education Law §3020-a through the collective bargaining process. If you are a tenured employee of the NYCDOE, you are advised to review your collective bargaining agreement and any amendments and/or revisions thereto to determine whether your rights may deviate from the provisions described below. If you have any questions, you should consult with the UFT and/or an attorney.

Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C, Part 82-3.

### Charges

1. The employing board of education ("board") must determine, by a majority vote, that probable cause exists to bring a disciplinary proceeding against the tenured employee ("employee").
2. If the board finds probable cause, the tenured employee must be provided with a written statement specifying: a.) the charges in detail; b.) the maximum penalty the board will seek if the employee is found guilty of the charges or that will be imposed if the employee does not request a hearing; and c.) a copy of this form outlining the employee's rights. The charges must be sent by certified or registered mail, return receipt requested or by personal delivery.
3. Charges cannot be brought more than three years after the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

### Suspension Pending Hearing

The employee may be suspended pending a hearing on the charges and the final determination thereof. An employee may be suspended without pay if: a.) the employee has pleaded guilty to or has been convicted of certain felony drug crimes or a felony crime involving the physical abuse of a minor or student; or b.) the employee is charged with misconduct constituting physical or sexual abuse of a student. Employees suspended without pay due to charges constituting physical or sexual abuse of a student, are entitled to an expedited probable cause hearing.

### Termination Without Hearing

The employee shall be terminated without a hearing upon conviction of a sex offense as defined by Education Law §305(7-a)(b)(2). Employees acting as school administrators or supervisors shall be terminated without a hearing upon conviction of defrauding the government as defined by Education Law §305(7-b)(b)(2).

### Hearing Request/Failure to Request

1. Within 10 days of receiving charges, the employee must provide a written request to the clerk or the secretary of the employing board if the employee desires a hearing on the charges.
2. In the written request for hearing, the employee should indicate the name and contact information for the attorney who will represent the employee, if any. Such attorney shall be authorized to receive all correspondence related to the proceeding on the employee's behalf.

## Rights of Tenured Employees (cont.)

3. If the employee does not request a hearing within 10 days of receipt of the charges, the employee shall be deemed to have waived the right to a hearing if there is an unexcused failure to request a hearing.
4. If the employee waives his right to a hearing, the board shall proceed, within fifteen days, by a majority vote to determine the case and fix the penalty, if any, to be imposed.

### Hearing Officer Selection Process

1. Within 3 business days of receipt of the written hearing request, the clerk or secretary of the board shall notify the commissioner of the need for a hearing.
2. Upon receipt of such notification, the commissioner shall request that the American Arbitration Association provide a list of names of individuals to potentially serve as hearing officers along with relevant biographical information concerning the individual. The commissioner shall forthwith send such list to both parties.
3. For charges brought pursuant to §3020-a, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 15 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 15 days, the commissioner shall appoint a hearing officer from the list.
4. For charges brought pursuant to §3020-b, where an employee has received two consecutive ineffective ratings, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 7 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 7 days, the commissioner shall appoint a hearing officer from the list.
5. For charges brought pursuant to §3020-b, where an employee has received three consecutive ineffective ratings, the commissioner shall appoint a hearing officer from the list.

### Pre-Hearing Conference

1. The pre-hearing conference shall be private.
2. The hearing officer shall hold a pre-hearing conference within 10-15 days of receipt of notice from the commissioner confirming his or her acceptance to serve in such position, in the case of a standard or expedited §3020-a hearing.
3. For expedited §3020-b hearings where the employee has received 2 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 7 days of receiving notice confirming the hearing officer's agreement to serve.
4. For expedited §3020-b hearings where the employee has received 3 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 5 days of receiving notice confirming the hearing officer's agreement to serve.
5. At the pre-hearing conference, the hearing officer has the power to: a.) issue subpoenas; b.) hear and decide motions and applications made by either party; c.) set a schedule for full and fair disclosure of witnesses and evidence for both parties; and d.) set the time and place for hearings to ensure that the hearing is conducted within the statutory timelines.
6. Generally, pre-hearing motions must be made on written notice to the hearing officer and adverse party at least 5 days before the pre-hearing conference. Any pre-hearing motions not made as provided for herein shall be deemed waived. However, for expedited hearings, written notice to the adverse party shall be made no later than 2 days before the pre-hearing conference.

### General Hearing Procedures

1. The hearing will be conducted by a single hearing officer.
2. The employee shall have a reasonable opportunity to defend his or herself, including making any additional motions and applications and an opportunity to testify on his or her own behalf, however, the employee shall not be required to testify.
3. Each party has the right to be represented by counsel, and may subpoena and cross-examine witnesses. All testimony shall be under oath.
4. An accurate record of the hearing shall be kept at the expense of the commissioner. Upon request, the employee is entitled to a copy of the record without charge.
5. If the hearing officer needs to be replaced and the parties fail to notify the commissioner of their mutually agreed upon replacement within 2 business days, the commissioner shall select the replacement.

**Rights of Tenured Employees** *(cont.)*

6. At the conclusion of the testimony, the hearing officer may allow the parties to submit memoranda of law; however, such submission may not delay the date that the hearing officer is required to render a decision.
7. In general, hearings must be completed within 60 days of the pre-hearing conference. Please see below for the time periods applicable to particular expedited hearings.
8. In general, all evidence must be submitted within 125 days of the filing of charges and no additional evidence shall be accepted after such time, absent extraordinary circumstances beyond control of the parties.

**Expedited Hearing Based on Revocation of Certification**

1. If the charges are based upon revocation of the employee's certification, an expedited hearing must be held.
2. The hearing shall commence within 7 days of the pre-hearing conference and is limited to one day. The hearing may not be adjourned except upon request of a party and only for good cause as determined by the hearing officer.

**Expedited Hearing Based on Charges Constituting Physical or Sexual Abuse of Student**

1. If the charges are based upon allegations of physical or sexual abuse of a student, an expedited hearing must be held.
2. The hearing shall commence within seven days after the pre-hearing conference and shall be completed within sixty days after the pre-hearing conference. Adjournments may not be granted that would extend the hearing beyond 60 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

**Expedited Hearing Based on Two Consecutive Ineffective APPR Ratings**

1. The Board may bring charges alleging incompetence based upon two consecutive ineffective APPR ratings, in which case an expedited hearing would be held, but the board is not required to bring charges.
2. The hearing must begin within 7 days of the pre-hearing conference and be completed within 90 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 90 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.
3. The charges must allege that the board has developed and substantially implemented a teacher or principal improvement plan for the employee following the first evaluation in which the employee was rated ineffective and the immediately preceding evaluation if the employee was rated developing.

**Expedited Hearing Based on Three Consecutive Ineffective APPR Ratings**

1. The Board shall bring charges alleging incompetence where any teacher or principal receives three consecutive ineffective APPR ratings, in which case an expedited hearing must be held.
2. The hearing must commence within 5 days of the pre-hearing conference and be completed within 30 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 30 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

**Decision**

1. With the exception of expedited hearings, the hearing officer shall render a written decision within 30 days of the last hearing date.
2. For expedited hearings, the hearing officer shall render a written decision within 10 days of the last hearing date.
3. The commissioner must immediately forward copies of the decision to the parties.
4. The hearing officer shall render a written decision that includes findings of fact and conclusions, based upon the findings of fact, as to each charge and shall state the penalty, or other action, if any, against the employee on each charge.

## Rights of Tenured Employees *(cont.)*

5. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, a suspension for a fixed time without pay, or dismissal.

6. In determining penalty, the hearing officer shall give serious consideration to the penalty recommended by the board, and if the hearing officer imposes a different penalty, then the hearing officer must indicate the reasons for the alternate penalty based upon the record.

7. Within 15 days of the receipt of the hearing officer's decision, the board shall implement the decision. If the employee is acquitted of the charges, he or she must be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record.

8. The hearing officer shall indicate in the decision whether any of the charges brought by the board were frivolous as defined by the Civil Practice Law and Rules §8303-a. If the hearing officer finds that all of the charges were frivolous, the hearing officer shall order the board to reimburse both the employee and the department reasonable costs that were incurred. If the hearing officer finds that some, but not all of the charges were frivolous, the hearing officer shall order the board to reimburse a portion of the reasonable costs incurred to the department and the employee.

### Appeal

1. Not later than 10 days after receipt of the hearing officer's decision, either the employee or the board may make an application to the New York State Supreme Court to vacate or modify the hearing officer's decision pursuant to Civil Practice Law and Rules §7511.

2. The filing of the pendency of an appeal shall not delay the implementation of the hearing officer's decision.

### Restoration of Rights

If an employee who was convicted of a felony crime as specified in Education Law §3020-a(2)(b) has his or her conviction reversed, the employee, upon application, shall be entitled to have his or her pay and other emoluments restored, for the period of time extending from the date of suspension to the date of the decision.

---

*Pursuant to §§ 30-2.14 and 30-3.17 of the Rules of the Board of Regents, educators whose Annual Professional Performance Reviews (APPRs) include results from the State's growth model (i.e., teachers of grades 4-8 ELA and Mathematics; principals of buildings including those grade levels; and principals of buildings including all of grades 9-12) or any other measures based on the grades 3-8 ELA and Mathematics State assessments will receive both an "original" evaluation and a "transition" evaluation. This process will continue through the 2018-19 school year, during the time that the State transitions to new ELA and Mathematics learning standards and assessments and during that time the State will explore potential revisions to the evaluation framework. The "original" evaluation will include the results of the State's growth model and any other measures based on the grades 3-8 ELA and Mathematics State assessments. This evaluation is provided for advisory purposes only and cannot be used for employment related decisions. Affected educators will also receive a "transition" evaluation that excludes the above referenced measures. During the transition period, only this transition score and rating will be used for purposes of employment decisions, including tenure determinations and for purposes of proceedings under Education Law §§3020-a and 3020-b.

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Tuesday, February 15, 2022 3:18 PM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Termination of NYCDOE Employment


February 15, 2022

CORRINE LYNCH
TEACHER
1296342

Dear CORRINE LYNCH:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all NYCDOE staff and your termination from DOE effective February 11, 2022 as a result.  Compliance with that Order is a condition of employment. Since you did not comply with the Order and did not choose to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education was terminated, effective February 11, 2022. Please note that your health insurance coverage through the City also ceased upon termination.

If you have not already done so, you must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.


Thank you for your service to the New York City Department of Education.

Sincerely,


NYCDOE Division of Human Capital



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
EBA Room 987
Albany, New York 12234

Ph:  (518) 473-2829
Fax:  (518) 402-5940

(09/21)

## Hearing Request/Waiver for Education Law §3020-a or §3020-b Charges

| Instructions to the Tenured Employee: | This form is for you to request a hearing on the Education Law §3020-a or §3020-b charges brought against you, or to waive your right to a hearing on such charges.  You must return this form within 10 days of receipt of the charges to the Clerk or Secretary of the Board of Education that brought charges against you. If you fail to request a hearing or waive your right to a hearing within 10 days, you will be deemed to have waived your right to a hearing on the charges and your employing board will meet to determine a penalty. |
|---|---|

### Tenured Employee Information

| Name | Corrine Lynch | Phone | 516-316-0451 |
|---|---|---|---|
| Address | 34 Cheslan Ct | Phone | |
| Address | | Fax | |
| City, State Zip | Oceanside NY 11572 | Email | Rino083088@aol.com |

### Hearing Request or Waiver

| [✓] | I request a hearing on the charges served against me pursuant to Education Law §3020-a or §3020-b <br> ＊ See Attached ＊ |
|---|---|
| [ ] | I waive the right to have a hearing pursuant to Education Law §3020-a or §3020-b.  I understand the Board of Education will meet to determine the case and fix the penalty or punishment, if one is to be imposed. |

### Tenured Employee Attorney Information

| Firm Name | TBD | | |
|---|---|---|---|
| Attorney Name | TBD | Phone 1 | |
| Address | | Phone 2 | |
| Address | | Fax | |
| City, State, Zip | | Email | |

### Tenured Employee Signature

| Signature | | Date | 2/9/22 |
|---|---|---|---|

I am submitting a hearing request form based on the recommendation of the UFT, out of the
utmost caution to preserve my rights. However, I am protesting the process employed by the
DOE. I have not received any formal charges against myself in a manner that is prescribed by
NY State Education Law 3020-a. I was denied a religious exemption to the COVID-19 vaccine
mandate, based on unconstitutional grounds, was denied the right to appeal, placed on leave
without pay, prevented from using my CAR days, and pressured to sign documents waiving my
right to hold the DOE accountable for their injustices against me. I have not violated any rules
of the DOE or UFT contract nor any of the Chancellor's Regulations. I am requesting to know
what charges are being brought against me so I may speak to council and prepare an
adequate defense.   By submitting the attached hearing request form, I DO NOT give up my
rights guaranteed to me by the US Constitution, State Laws, and the DOE/UFT contract, or any
other protections not mentioned.


### 82-3.3 Charges.

(a) Except as provided in Education Law section 2573(8) or 2590-j(7), no charges under this Subpart
shall be brought more than three years after the occurrence of the alleged incompetency or misconduct,
except when the charge is of misconduct constituting a crime when committed.

(b) Charges filed under Education Law section 3020-a shall be in writing and shall be filed by the chief
school administrator with the clerk during the period between the actual opening and closing of the school
year for which the employed is normally required to serve.

(c) Upon receipt of the charges, the clerk or secretary of the school district shall immediately notify the
board of the receipt of charges. After receipt of the charges, the board shall in executive session, and
determine by a vote of a majority of all of the members of the board, whether probable cause exists to
bring a disciplinary proceeding against the employee. In the case of charges brought pursuant to
Education Law section 3020-a, such executive session shall be held within five days of the board's receipt
of the charges, except with permission of the board.

(d) Where the vote of the board is affirmative, a written statement specifying the following
information shall be immediately forwarded to the employee by certified or registered mail, return
receipt requested, or by personal delivery:

        (1) a description of the charges specifying in detail each charge to which the board finds
probable cause exists;

        (2) the maximum penalty which will be imposed by the board if the employee does not
request a hearing, or that will be sought by the board if the employee is found guilty of the charges
after a hearing; and

        (3) a copy of the employee's rights under section 3020-a or 3020-b as applicable, including
the right to request a hearing.

(e) Charges against an employee must be made separately from charges against any other
employee.

(f) A copy of the charges shall be filed with the commissioner in a timeframe and manner
prescribed by the commissioner.

8 CRR-NY 82-3.3
Current through December 31, 2020

Sincerely,
Corrine Lynch
File #0865228

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, January 31, 2022 3:18 PM
**Subject:** February 11 Termination of Employment from the NYCDOE

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff. Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

# THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*

JONATHAN L. SCHER**                          TEL: 516-746-5040

                                             FAX: 516-746-5043
AUSTIN R. GRAFF*

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1959-2012)

March 29, 2023

**BY ECF**
Hon. Carol Bagley Amon, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    Masciarelli v. New York City Department of Education
       E.D.N.Y. Docket No. 22-cv-07553 (CBA)(SJB)

Dear Judge Amon:

This law firm represents the Plaintiff in the above-referenced Action. This letter shall serve as the Plaintiff's opposition to the Defendant's request for a pre-motion conference to discuss a Motion to Dismiss.

The Plaintiff was a former teacher employed by the Defendant. The Plaintiff was terminated from her employment when she refused to take the COVID vaccine because she has a long-held religious objection to the vaccine.

The Plaintiff sought a religious exemption/accommodation, which was rejected, just like most of her former colleagues, without any offer from the Defendant of a reasonable accommodation. Instead, the Defendant denied the Plaintiff any religious accommodation based upon an "undue hardship", which the Defendant said was "the need for a safe environment for in-person learning." Docket Entry No. 1-8.

The Defendant never offered any reasonable accommodation to the Plaintiff that would both satisfy the Plaintiff's sincere religious beliefs and the Defendant's concern for "a safe environment for in-person learning."

In *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986), the Court held:

> We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation. By its very terms the statute directs that any reasonable accommodation by the employer is sufficient to meet its accommodation obligation. The employer violates the statute unless it "demonstrates that [it] is unable to reasonably accommodate . . . an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's

# THE SCHER LAW FIRM, LLP

Hon. Carol Bagley Amon, U.S.D.J.
United States District Court, Eastern District of New York
March 29, 2023
Page 2 of 3

business." 42 U. S. C. § 2000e(j). Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship. As *Hardison* illustrates, the extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship. Once the Court of Appeals assumed that the school board had offered to Philbrook a reasonable alternative, it erred by requiring the Board to nonetheless demonstrate the hardship of Philbrook's alternatives.

In this case, the Defendant did not offer any accommodation to the Plaintiff for her long-held religious beliefs. The failure to offer any accommodation places the Defendant's alleged undue hardship at issue. Since the Defendant's explanation that the undue hardship was "the need for a safe environment for in-person learning" the alternative of testing (which system existed before the COVID vaccine mandate was implemented) could have been a reasonable accommodation and could have allowed the Plaintiff to have a reasonable accommodation and would have maintained a safe environment for in-person learning. Docket Entry No. 1-8. But the Defendant did not offer that option to the Plaintiff. Accordingly, any Motion to Dismiss will likely be denied.

The Defendant also does not address the fact that in testimony in the *New Yorkers for Religious Liberty, Inc., et al. v. The City of New York, et al.*, Eastern District of New York, Docket Number 2022-cv-00752, the City's witness testified that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests. Deposition of Eric Eichenholtz, dated May 24, 2022, at page 32, line 8 through page 33, line 5.

This evidence reveals that despite having a mechanism for reasonable accommodation requests, the Defendant failed to accommodate religious beliefs and the excuse of an undue hardship was merely pretext for discrimination.

As a result, any Motion to Dismiss by the Defendant will fail because the Plaintiff has stated a claim for religious discrimination based upon the Defendant's failure to provide any reasonable accommodation and its undue hardship explanation is merely a pretext for discrimination against the Plaintiff's long-held religious beliefs.

Finally, the Defendant's citation to several cases, including *Kane v. DeBlasio*, 19 F.4th 152 (2d Cir. 2021) pre-date the Supreme Court's decision in *Kennedy v. Bremerton Sch. Dist.*, __ U.S. __, 142 S Ct 2407, 2421 (2022), in which the Court held

Under this Court's precedents, a plaintiff bears certain burdens to demonstrate an infringement of his rights under the Free Exercise

# THE SCHER LAW FIRM, LLP

Hon. Carol Bagley Amon, U.S.D.J.
United States District Court, Eastern District of New York
March 29, 2023
Page 3 of 3

and Free Speech Clauses. If the plaintiff carries these burdens, the
focus then shifts to the defendant to show that its actions were
nonetheless justified and tailored consistent with the demands of
our case law.

...The Free Exercise Clause provides that "Congress shall make no
law . . . prohibiting the free exercise" of religion. Amdt. 1. This
Court has held the Clause applicable to the States under the terms
of the Fourteenth Amendment. *Cantwell* v. *Connecticut*, 310 U. S.
296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940). The Clause
protects not only the right to harbor religious beliefs inwardly and
secretly. It does perhaps its most important work by protecting the
ability of those who hold religious beliefs of all kinds to live out
their faiths in daily life through "the performance of (or abstention
from) physical acts." *Employment Div., Dept. of Human Resources
of Ore.* v. *Smith*, 494 U. S. 872, 877, 110 S. Ct. 1595, 108 L. Ed. 2d
876 (1990).

The Defendant violated the Plaintiff's constitutional rights under the Free Exercise clause
when it required the Plaintiff to take the COVID-19 vaccine or lose her job, when the Plaintiff's
religious beliefs conflicted with the vaccine. The Free Exercise clause protects the Plaintiff from
abstaining from taking the COVID-19 vaccine (a physical act) based upon her religious beliefs.

However, the *Kennedy* decision establishes that the Plaintiff's constitutional right under
the Free Exercise clause was violated when the Defendant made the Plaintiff choose her religion
or her job. When the Plaintiff chose her religion, which was her constitutional right, the Plaintiff
was terminated because of it.

The Court should deny the Defendant's request to make a Motion to Dismiss.

*********

The Plaintiff requests that if the Court grants permission for the Defendant to make a
Motion to Dismiss, the Court permit discovery to proceed and the Initial Conference schedule,
including the settlement conference to proceed while the Motion to Dismiss is pending.

Thank you for your courtesies.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

ARG:ms
cc:    Lauren A. Zaprzalka, Esq. (by ECF)



**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

June 27, 2022

<u>**Via E-Mail Only**</u>
Liz Vladeck, Esq.
New York City Department of Education
Office of the General Counsel
52 Chambers Street, Room 308
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Michael Mulgrew, President
Beth Norton, Esq.
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:     **Board of Education of the City School District of the City of New York
        and
        United Federation of Teachers, Local 2, AFT, AFL-CIO
        (Proof of Vaccination)**

Dear Counsel:

Enclosed please find my Opinion and Award in the above referenced matter.

I have also enclosed my bill for services rendered.

Thank you.

Sincerely,

*Martin F. Scheinman*

MFS/sk
NYCDOE.UFT.proof of vaccination.trans

```
----------------------------------- X
In the Matter of the Arbitration
                                    X
           between
                                    X      Re: Proof of
BOARD OF EDUCATION OF THE CITY                 Vaccination
SCHOOL DISTRICT OF THE CITY OF      X
NEW YORK
                                    X
           "Department"
                                    X
           -and-
                                    X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO               X

           "Union"                  X

----------------------------------- X
```

**APPEARANCES**

**For the Department**
  Liz Vladeck, General Counsel

**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
  Alan M. Klinger, Esq.

  Beth Norton, Esq., UFT General Counsel
  Michael Mulgrew, UFT President

**BEFORE:**  Martin F. Scheinman, Esq., Arbitrator

## BACKGROUND

The Union protests the Department's decision to summarily place approximately eighty two (82) Department employees on leave without pay, with benefits, effective April 25, 2022. This action was based upon information the Department received from a separate investigative agency these employees' proof of COVID-19 vaccination was allegedly fraudulent. The Union contends the issue of whether the Department's action is proper and falls within the scope of my September 10, 2021, Award ("Award").

Most of the basic facts are not in dispute.

In July 2021, former Mayor de Blasio announced a "Vaccine-or-Test" mandate which required the City workforce, including the educators, to either be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021. Thereafter, on August 23, 2021, Mayor de Blasio and the New York City Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in Department buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto Department premises, would not be paid for work and would be at risk of loss of job and benefits.

2

This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

The Union promptly sought to bargain the impact and implementation of the Vaccine Only mandate. The parties had a number of discussions, but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The Department did not challenge the statement of impasse and PERB appointed me to mediate the matters. Mediation sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.

Arbitration sessions were then held. On September 10, 2021, I issued an Award which set forth a detailed procedure to be followed in the cases of employees who sought an exemption to the Vaccination Mandate based on a medical condition or religious reasons.

3

Case 1:24-cv-08795-DG-TAM Document 07/01/2022 10:35 PM Page 63 of 92 PageID #: 1520

In accordance with the procedure set forth in my Award, employee requests for an exemption were initially submitted to the Department along with any supporting documentation. An employee wishing to appeal an adverse determination by the Department was given the opportunity to appear at a hearing before an impartial arbitrator who was authorized to render a final and binding decision. Approximately five hundred (500) appeals were determined by the arbitration process. Pending the arbitrator's decision, the employee could not be removed from the payroll.

On April 19, 2022, the Department informed approximately eight two (82) employees they were being placed on leave without pay, with benefits, effective April 25, 2022, based on allegations their proof of COVID-19 vaccination was fraudulent. The employees were told they could contact the Department if they believed the allegation they submitted fraudulent proof of vaccination was wrong. On April 21, 2022, the Union wrote the Department and demanded it rescind its decision to remove these employees from the payroll without the benefit of a due process hearing.

By letter dated April 22, 2022, the Department set forth its position placement of these employees on a leave without pay status did not constitute discipline, and, therefore, did not implicate the disciplinary procedures set forth in the Education Law or the parties' Collective Bargaining Agreement ("Agreement").

4

Thereafter, by letter dated May 3, 2022, the Union wrote to me requesting I take jurisdiction over this dispute. The Union cited to that portion of the Award which states "should either party have reason to believe the process set forth herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution".

By letter dated May 4, 2022, the Department wrote in opposition to the Union's May 3, 2022, letter. The Department stated it was in full compliance with my Award, as well as the Agreement and applicable law. The Department also insisted this matter was not properly before me.

On May 4, 2022, I conducted a conference call with the parties. At that time, each side was given the opportunity to argue their positions.

Thereafter, on May 6, 2022, the Union submitted further argument in support of its position. The Department responded in a letter dated May 10, 2022.

Upon my receipt of the parties' written submissions, I closed the record.

## DISCUSSION AND FINDINGS

### The Issues:

The basic issues to be decided are as follows:

5

1. Is the Department's decision to place the approximately eighty two (82) employees on leave without pay, with benefits, subject to my jurisdiction pursuant to the September 10, 2021, Award?

2. If so, what shall be the remedy?

**Position of the Parties**

The Department insists the facts of circumstances regarding its placement of the eighty two (82) employees on leave without pay, with benefits, is not within my jurisdiction pursuant to the Award. According to the Department, the Award sets forth an expedited process to review Department employees' requests for exemptions and accommodations from the August 21, 2021, mandate to submit proof of COVID-19 vaccination by September 29, 2021. The Department maintains the requests for an exemption or accommodation were limited to medical and religious grounds. It contends no other issue is covered by the Award.

The Department contends it placed the employees on a leave without pay status as a result of the Department's receipt of information from a law enforcement agency the employees in question submitted fraudulent proof of vaccination in order to comply with Commissioner Chokshi's order which required vaccination of all Department staff.

According to the Department, the Courts have held compliance with the Commissioner Chokshi's Order is a "condition of

6

employment". The Department maintains this situation is no different to the Department's unilateral action against an employee who is not certified. As such, the Department maintains placing employees on leave without pay for failing to comply with the Commissioner Chokshi's Order comports with applicable due process procedures as long as notice is given, and the employee has an opportunity to respond. In support of its position the Department cites Broecker v. N.Y. Dep't of Educ., 21-CV-6387, 2022 WL 426113 at *7-8 (E.D.N.Y. Feb. 11, 2022); and N.Y. City Mun. Labor Comm. V. City of New York, 151169/2022 (Sup. Ct. N.Y. County Apr. 21, 2022).

The Department argues employees who are identified in connection with a law enforcement investigation into the submission of fraudulent vaccination cards are outside the scope of the Award. Furthermore, the Department insists the Award's reference to a party's failure to implement the process does not apply to the facts and circumstances presented, here. According to the Department, the language relied upon by the Union refers specifically to the "administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school". The Department asserts since that process is not at issue, here, the Union's claim is misplaced.

7

For the reasons set forth above, the Department contends the Union's request for relief pursuant to the Award must be denied.

The Union, on the other hand, argues the Department's decision to place these employees on leave without pay, with benefits, is predicated on the Award. It insists this matter is subject to my continued jurisdiction. The Union asserts the Agreement prohibits an employee from being removed from the payroll without establishing probable cause in a due process hearing. [1]

The Union maintains the Department's contention this situation is akin to the removal of an uncertified employee is misplaced. According to the Union, approval of certification is issued by the State. In addition, the Union insists an employee is either certified by the State or is not, there is no underlying question of fact to be determined. The Union asserts if an employee proves they have completed all of the necessary paperwork, but they are not yet certified, they will not be terminated.

The Union urges in this instance 'the Department made a unilateral decision to place the employees on leave, without pay, based solely on a communication from another agency the employees were not vaccinated. The Union contends the Department has no direct knowledge of whether that assertion is true or false.

---

[1] There are limited exceptions to this procedure which are inapposite.

According to the Union, the Department removed the employees from the payroll and subsequently allowed them to provide additional evidence they are vaccinated. The Union maintains as of May 6, 2022, employees who have contacted the Department asserting they have been placed on leave without pay in error have not received any response, yet they remain suspended without pay.

The Union asserts the only authority for the Department to place employees on leave without pay, with benefits, is the Award. It contends the Department is improperly invoking the Award, and the action cannot be taken until the dispute concerning their vaccination status is determined through the Award's stated process.

In short, the Union argues the Department's unilateral decision to place employees on leave without pay, with benefits, based on the communication from another agency the employees are not vaccinated falls within the jurisdiction of the Award.

## Opinion

Certain preliminary comments are appropriate. As an arbitrator my role is a limited one. In order for me to determine whether I can assert jurisdiction over the Department's actions as alleged by the Union, I am limited by the language of the Award. If the Award is clear, I must enforce it according to its plain meaning.

9

Case 1:21-cv-07765-DLC-JW Document 77-1 Filed 11/07/24 Page 69 of 92 PageID #:5690

With these principles in mind, I turn to the facts presented.

I find I have jurisdiction to consider this matter. While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.

Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio.

Implicit in such a designation of leave without pay is the individual failed to comply with the vaccine mandate. Here, there is a dispute whether the employees did or did not comply. Without that being assessed, or at least submitting evidence to show a high likelihood of non-compliance, the predicate for placing an employee on leave without pay does not exist.

The Department's decision to automatically place these employees on leave without pay is inconsistent with the language and underpinnings of my Award. Nothing in the Award grants the Department such use of leave without pay status.

10

Based upon the above, I find the Department failed to properly implement the due process protections of my Award.  The Union has the right to assert the Department's process "is not implemented in good faith."  To be clear, nothing in my Award was intended to abrogate any due process rights the parties otherwise maintained with regard to employment status.

I also disagree with the Department's position the court decisions it cites support the removal of these employees from pay status without a hearing.  Those court decisions confronted an entirely different factual scenario.  Unlike this matter, in those cited cases, there was no claim the employees at issue were vaccinated.

In denying the request for a preliminary injunction, Justice Kim, in NYC Municipal Labor Committee, supra., specifically found the absence of that factual issue in her determination.  Here, of course, the employees assert they are in fact vaccinated.  This raises a factual issue that is ripe for adjudication pursuant to my Award.

Based on the reasons set forth above, I take jurisdiction over the Department's placement of the approximately eighty two (82) employees placed on leave without pay, with benefits.  The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an

11

employee's claim they have submitted proof of vaccination.  If the
parties are unable to agree on such a procedure, I shall
immediately schedule a hearing and issue an expedited Award
establishing the proper protocol to provide the employees the
appropriate due process procedure.

12

## AWARD

1. Pursuant to Section 1L of my Award dated September 10, 2021, I shall assume jurisdiction over the Department's decision to place eighty two (82) employees on leave without pay, with benefits, effective April 25, 2022.

2. The parties shall meet within seven (7) calendar days of the date of this Award to attempt to agree on a procedure to review an employee's claim they have submitted proof of vaccination. If the parties are unable to agree on such a procedure, I shall immediately schedule a hearing and issue an expedited Award establishing the proper protocol to provide the employees the appropriate due process procedure.

June 27 , 2022.

Martin F. Scheinman, Esq.
Arbitrator

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NASSAU     )

I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 27 , 2022.

Martin F. Scheinman, Esq.
Arbitrator

DOE.UFT.CHIARA.KARASHIAN.AWD

13

5/8/24, 12:48 PM    Gmail - response from UFT regarding the problem code

 Gmail                                    Jadenae Trabacchi <jadenaetrabacchi@gmail.com>

---

## response from UFT regarding the problem code

1 message

---

**mrsbumps via Educators for Freedom** <educatorsforfreedom@googlegroups.com>    Thu, Apr 28, 2022 at 12:50 PM
Reply-To: mrsbumps@aol.com
To: "educatorsforfreedom@googlegroups.com" <educatorsforfreedom@googlegroups.com>

> **Karen King** (KKing@uft.org)
>
> To: you    Details
>
> Hello,
>
> Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.
>
> The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.
>
> **Karen King**
> *Administrative Assistant to the Assistant Secretary &*
> *Director of Personnel, Payroll, and Special Projects*
> United Federation of Teachers
> 50 Broadway, 13th Floor
> New York, N.Y. 10004
> _kking@uft.org_
>
> --
> Educators for Freedom!
> ---
> You received this message because you are subscribed to the Google Groups "Educators for Freedom" group.
> To unsubscribe from this group and stop receiving emails from it, send an email to educatorsforfreedom+unsubscribe@googlegroups.com.
> To view this discussion on the web visit https://groups.google.com/d/msgid/educatorsforfreedom/579170824.1343972.1651164623211%40mail.yahoo.com.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
                                                                  :
MICHAEL KANE, et al.,                                             :
                                                                  :
                              Plaintiffs,                         :
                                                                  :
            - against -                                           :        Case No.  21-cv-7863 (VEC) (Lead)
                                                                  :
BILL DE BLASIO, et al.,                                           :
                                                                  :
                              Defendants.                         :
------------------------------------------------------------------X
                                                                  :
MATTHEW KEIL, et al.                                              :
                                                                  :
                              Plaintiffs,                         :
                                                                  :
            - against -                                           :        Case No.  21-cv-8773 (VEC)
                                                                  :
THE CITY OF NEW YORK, et al.,                                     :
                                                                  :
                              Defendants.                         :
------------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

<u>**First False Assertion in Sullivan Declaration**</u>

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code, the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem** PR" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

**Second False Assertion in Sullivan Declaration**

9.  The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

<u>**Further Evidence of Irreparable Harm**</u>

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable – and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

      June 3, 2022                    Respectfully submitted,

                                    Barry Black
                                    Nelson Madden Black LLP
                                    *Attorney for Plaintiffs*
                                    475 Park Avenue South, Suite 2800
                                    New York, NY 10016
                                    (212) 382-4303

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X :
                                                              :
MICHAEL KANE, et al.,                                         :
                                                              :
                              Plaintiffs,                     :
                                                              :   Case No.  21-cv-7863 (VEC) (Lead)
              - against -                                     :
                                                              :
DE BLASIO et al.,                                             :
                                                              :
                              Defendants.                     :
-------------------------------------------------------------X :
                                                              :
MATTHEW KEIL, et al.                                          :
                                                              :
                              Plaintiffs,                     :
                                                              :   Case No.  21-cv-8773 (VEC)
              - against -                                     :
                                                              :
THE CITY OF NEW YORK et al.,                                  :
                                                              :
                              Defendants.                     :
-------------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.    My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.    I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.    I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4.    I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5.    I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6.    From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7.    I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8.    I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9.    When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10.    I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11.    I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12.    I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.    I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.    In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
        June 3, 2022

_____
By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ██████████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code – Problem code was added to all employees who were placed on 2VM vaccine
mandate leave. It was placed there the day you went on the leave. Our central offices placed this code
on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

JS 44 (Rev. 4-29-21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Corrine Lynch

## DEFENDANTS
DAVID BANKS, Chancellor and KATHERINE RODI, Director of Employee Relations

**(b)** County of Residence of First Listed Plaintiff  Nassau
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ~~Attorneys~~ *(Firm Name, Address, and Telephone Number)*
Corrine Lynch 34 Cheslan Ct. Oceanside, NY 11572 (516) 316-0451

Attorneys *(If Known)*
New York City Law Department 100 Church St. New York, NY 10007 (212) 356-1000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☑ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

*Does this case include a motion for temporary restraining order or order to show cause?* Yes ☐ No ☐

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | 26 USC 7609 | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |  ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1983 and the 1st & 14th Amendment
Brief description of cause:
Wrongful termination without due process

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.     DEMAND $ 400,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

DATE _____     SIGNATURE OF ~~ATTORNEY~~ OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐    monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☐    the complaint seeks injunctive relief,

☐    the matter is otherwise ineligible for the following reason

### DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

### RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.)    Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?    ☐ Yes    ☐ No

2.)    If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?    ☐ Yes    ☐ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?    ☐ Yes    ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:    .

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?    ☐ Yes    ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

### BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐    Yes    ☐    No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐    Yes    (If yes, please explain    ☐    No

I certify the accuracy of all information provided above.

**Signature:** _____

Last Modified: 11/27/2017

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

|  |  |  |
|---|---|---|
| **Corrine Lynch** | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, | ) | |
| DAVID BANKS, Chancellor | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, DAVID BANKS, Chancellor
65 Court Street
Brooklyn, NY 11201

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**BRENNA B. MAHONEY**
*CLERK OF COURT*

Date: _____          _____
                                                                  *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____              _____
                                                          *Server's signature*

                                             _____
                                                          *Printed name and title*

                                             _____
                                                          *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

|  |  |  |
|---|---|---|
| Corrine Lynch | ) | |
| _____ | ) ) ) ) | |
| *Plaintiff(s)* | ) | Civil Action No. |
| v. | ) ) | |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, DAVID BANKS, Chancellor | ) ) ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, DAVID BANKS, Chancellor
65 Court Street
Brooklyn, NY 11201

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____    _____
                                                                      *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                                      *Server's signature*

                                          _____
                                                      *Printed name and title*

                                          _____
                                                      *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

|  |  |  |
|---|---|---|
| Corrine Lynch | ) ) ) ) ) ) ) ) ) ) ) ) |  |
| *Plaintiff(s)* |  |  |
| v. |  | Civil Action No. |
| THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, KATHERINE RODI, Director of Employee Relations |  |  |
| *Defendant(s)* |  |  |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

**THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, Katherine Rodi, Director of Employee Relations
65 Court Street
Brooklyn, NY 11201**

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**BRENNA B. MAHONEY**
*CLERK OF COURT*

Date: _____          _____
                                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: