UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————————x

**CORRINE LYNCH,**

                    Plaintiff            DOCKET NO.

      -against-

                                          **COMPLAINT**
                                       *Jury Trial Demanded*

**THE DEPARTMENT OF EDUCATION OF**
**THE CITY OF NEW YORK, DAVID BANKS,**    24-cv-7795-DG-JAM
**Chancellor and KATHERINE RODI, Director**
**of Employee Relations,**

                  Defendants

————————————————————————————x

**PLAINTIFF CORRINE LYNCH,** ("Plaintiff") proceeding Pro Se, as and for her

Summons and Complaint filed to protect her Constitutional rights against the above-

captioned Defendants the **DEPARTMENT OF EDUCATION OF THE CITY OF NEW**

**YORK, DAVID BANKS and KATHERINE RODI,** (henceforth "Defendants"), alleges

upon knowledge as to her own facts and upon information and belief as to all other

matters:

REC'D IN PRO SE OFFICE
NOV 20 '24 AM9:04

### PRELIMINARY STATEMENT

1. This is a civil action seeking injunctive relief, monetary relief, including past and

    on- going economic loss, compensatory and equitable damages for the deprivation

    of Constitutionally protected due process rights given to her as a tenured teacher

    pursuant to 42 U.S.C. Section 1983, 1st, and 14th Amendments to the United States

    Constitution, protected property and liberty rights under Education Law §§3020 and

1

3020-a, and New York State and New York City Human Rights Law (NYSHRL and NYCHRL), which prevent employers from (1) discriminating against employees based on an employee's religious belief; (2) wrongfully forcing Plaintiff into a suspension without pay and then terminating her, a tenured teacher, by circumventing public policy employment, due process laws, and the property and liberty rights of the Tenure statute.

2. Despite giving religious-based accommodations to other tenured employees similarly situated, and placing many unvaccinated employees on reassignment ("rubber rooms") in Defendants' district offices and at home on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA"), offered no accommodation whatsoever, and terminated her.

3. Defendants denied Plaintiff's request for an RA without any factual basis or proof after Plaintiff requested a RA in September 2021. Then, she was punished by Defendants for not getting the vaccine by being terminated, after being placed on a "problem code" by the Defendant Katherine Rodi, Director of the Office of Personnel Investigations which oversees the Problem Code.

4. By placing Plaintiff's fingerprints into a "problem code" or no-hire database, LWOP became a disciplinary action, with a charge of misconduct/insubordination due to Plaintiff holding onto her religious beliefs and refusing the vaccine. These actions by Defendants may clearly be defined as disciplinary retaliation, motivated by an intent to harm.

## PARTIES

5. Plaintiff was a tenured employee of the Department of Education of the City of New York in good standing as a tenured teacher since 2011. She had an impeccable reputation and record. Plaintiff was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b). Plaintiff lives in Oceanside, N.Y.

6. Defendants the Department of Education of the City of New York ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, acts under color of law with its' principal place of business located in 65 Court Street in Brooklyn, New York.

7. Defendant David Banks is the Chancellor of the Department of Education of the City of New York ("DOE") and has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York.

8. Defendant Katherine Rodi is employed by the Department of Education of the City of New York ("DOE") and started work as the Director of Employee Relations in 2012. She also has the responsibility of overseeing the DOE's Office of Safety and Health and the Office of Personnel Investigations, where she decides who among the DOE's employees are placed on a "Problem Code". She monitors the disciplinary information in the personnel file that is highlighted by the Problem Code for principals who may want to hire a former or current employee.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §3020-a (the "tenure law") . This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4) for claims arising federal questions under 42 U.S.C. 1983.

10. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff as well as committing fraud in the inducement.

11. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

12. . This action seeks recovery of monetary damages for the violation of constitutional rights of property, liberty and due process enshrined in Federal

Statute and state law protecting the rights of tenured employees in public service in New York State.

13. Plaintiff was hired as a teacher by the New York City Department of Education ("DOE") in 2011. Plaintiff has earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law Sections §§3020 and 3020-a of the New York State Education Law.

14. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated. See **EXHIBIT A**, Application for Religious exemption/accommodation (RA); **EXHIBIT A(1)**. Religious Statement; and **EXHIBIT A(2)** Letter from Cliff Kretkowski.

15. On September 10, 2021 the DOE sent to Plaintiff an Impact Bargaining Agreement wherein Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021.This alleged "policy" never changed the terms of Plaintiff's tenured employment status, although claiming to do so. No citation to Education Law §3020 or 3020-a was included in the LWOP, in violation of her constitutional rights. (Judge Abadi Order in the case of Kambouris v NYC Depart. Of Educ., Index No. 518863/2022). See **Exhibit B**, Scheinman Award Dated September 10, 2021.

16. On September 25, 2021 Plaintiff was denied her RA by Defendants because she failed to meet "the criteria" for a religious accommodation, and no other worksite could be offered, as this would be an undue burden. **EXHIBIT C.** Denial of RA.

17. On November 30, 2021, Plaintiff, without a salary and with no health insurance due

to LWOP (See **EXHIBIT D**) nonetheless wrote the Department of Education an

email saying she would not waive her protected rights. **EXHIBIT D(1)**.

18. On October 5, 2021 Plaintiff attempted to reapply for a RA with updated

documentation, but was not permitted by the Defendants.

19. On November 28, 2021 the Court of Appeals threw out the Scheinman Appeals

Process and Award because it was "constitutionally infirm". In a letter to this Court

dated July 7, 2022 in Broecker et al. v New York City Department of Education et al

Docket No. 21-CV-06387-KAM-LB: Attorney Austin Graff cited Scheinman for

violating Department employees' rights:

In Scheinman's June 27 Award Scheinman wrote:

> "... While the Department claims its action is unconnected with the Award, it is
> the Award itself that created a new leave without pay. Absent the Award, the
> Department was without the authority to remove these employees from the
> payroll without providing a due process hearing.
> Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied.
> This is because such employees intentionally decided to disregard the mandate
> they be vaccinated by September 27, 2021, the date established by
> Commissioner Chokshi and Mayor de Blasio."

Graff adds:
> "First, Scheinman's words establish that but-for the Award, the NYCDOE could
> not have placed the Plaintiff on leave without pay. As Plaintiff argued in
> opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil
> Service Law § 209.3.(f) and the numerous cases that have interpreted the statute,
> including a case from the New York Court of Appeals and numerous opinions
> issued by PERB. Therefore, if the Court finds that the Award violated N.Y.
> Civil Service Law § 209.3.(f), as the Plaintiff argue, then the NYCDOE did not
> have any authority to place the Plaintiff on leave without pay without due
> process, thereby violating the Plaintiff due process rights. Scheinman's words
> are additional evidence that the Plaintiff have stated a plausible claim against the
> NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion
> to Dismiss should be denied.

> Second, it was Scheinman who "created a new leave without pay" by issuing the
> Award. Scheinman establishes, by his own words, that he actively participated

in the violation of the Plaintiff' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing..... admitting that his actions caused the Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

**EXHIBIT E.** Court of Appeals; and **EXHIBIT E(1),** Scher Lawfirm letter dated July 7, 2022.

20. On November 29, 2021 Plaintiff again attempted to reapply for a RA but she was not provided any option to do so in the DOE portal.

21. On February 8, 2022 Plaintiff received a termination notice from Defendants stating that she would be terminated on February 18, 2022. The DOE claimed that her terms of employment had been changed, and this was false. On February 18 2022 Plaintiff was terminated without any due process due, namely a §3020-a hearing. On February 9, 2022 the UFT sent Plaintiff a request for a §3020-a, which she filled out and sent back, to preserve her rights. See **EXHIBITS F, F(1), F(2), and F(3).**

22. On June 27, 2022, Arbitrator Martin Scheinman created a new Award in which he apologized for creating LWOP out of whole cloth, and he admitted that all tenured employees were protected from termination without due process and the Department was required to offer a 3020-a hearing. **EXHIBIT G,** Scheinman Award June 27, 2022; and **EXHIBIT G(1),** Letter from the Scher Lawfirm on this new Award.

23. On or about April 28, 2022 Plaintiff was informed that the DOE's Office of Personnel Investigations ("OPI") had placed her personnel file and fingerprints on the "Problem Code" database in October, meaning that she would not be able to work in any position for the NYC DOE or any vendor because she was deemed guilty of misconduct/insubordination. Defendants Katherine Rodi has been Director of OPI and in charge of placing problem codes on personnel files since 2012. Plaintiff was, by Rodi's action, blocked from getting paid by the NYC DOE or any vendor. Karen King at the UFT confirmed this action, and two Declarations were filed in the Kane v DeBlasio and Keil v City of New York federal cases. **EXHIBIT H**. email from UFT Karen King; **EXHIBIT I**, Declaration of Betsy Combier and Amato email; **EXHIBIT J**. Declaration of Barry Black.

24. On February 10, 2023 Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary. Yet no one at the DOE told Plaintiff she could re-apply for her job.

25. The §3020-a arbitration hearing is clearly described in the law, is New York State public policy, and the charging procedures cited in Section 1 and Section 2 of this law cannot be waived nor bargained away. The UFT-DOE Contract ("CBA") gives the particulars of the hearing itself in Article 21G of the contract. This procedure is mandatory, and unless a tenured educator is found guilty of serious misconduct – grand larceny, abuse of a child, having or using drugs in school – at a Probable Cause hearing, he/she must be kept fully paid their regular salary while waiting for the charges and 3020-a.

26. Plaintiff was charged by Defendants in this matter with disciplinary misconduct, which prevented her from getting benefits from the unemployment office, solely due to the fact that she held sincere religious beliefs prohibiting her from getting vaccinated. Plaintiff was denied a §3020-a due process hearing and given no accommodation whatsoever, despite the fact that the DOE has hundreds of employees throughout the City that either got the exemption from getting the vaccine or they were placed into a reassignment location at home. In addition to these many DOE employees, school bus drivers, and school delivery people were given exemptions by the Mayor. Later, in March 2022, volunteers and Broadway actors as well as sports players were excluded from having to take the COVID Vaccine under the Mandate ("CVM"). See Emergency Executive Order 62 here: https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62

27. The chaotic mess of the explosion of inequalities of law and vaccinations continue today. The New York Post highlighted the hundreds of employees who were getting exemptions: **City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees** https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees;Gothamist, Sept. 24, 2021.

**CAUSES OF ACTION**
**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR RELIGIOUS DISCRIMINATION**

28. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 27 as if the same were fully set forth at length herein.

29. Plaintiff submitted to Defendants in September 2021 a statement on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

30. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

31. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

    "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. .....

    Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

32. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

33. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones. All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

34. Plaintiff's unemployment and her unvaccinated status led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated. See: **NYC teachers with vaccine exemptions are being treated like pariahs,** https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

35. In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs.

36. Defendants started with suspension without pay, then secretly charged Plaintiff with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a "Problem Code" without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination. The U.S. Supreme Court has ruled that this is retaliatory discrimination: Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006) ("that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay").

37. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed into leaving her job and stigmatized permanently by being placed on the Ineligible/Inquiry or "no hire" Problem Code List.

38. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, Constitutionally protected property and liberty rights to continued employment. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get them out of their positions quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, workred. Until November 28, 2021. (Ex. G).

39. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the

flag or Code on their fingerprints cannot get paid by the Defendants or any of the

thousands of vendors working in the City of New York. This scarlet letter is extremely

damaging to Plaintiff's career and character. See the following post on

Parentadvocates.org:

"The New York City Department of Education's "Problem Code" is an Unlawful
Flag on an Employee's Fingerprints"
https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

40. The Code is accessible by government agencies and principals, and UFT

Representatives, among others. The label means that the individual has committed

misconduct, and that Scheinman gave false information in his September 10 Award

when he wrote that LWOP was not disciplinary. It was, and he knew it. He wrote and

negotiated the CBA for the UFT. **EXHIBITS H,I, J.**

41. Based on the foregoing, Defendants under color of law subjected Plaintiff to

discrimination on the basis of her religion, unlawfully discriminating against the

Plaintiff in the terms and conditions of her employment on the basis of her religion, in

violation of her Constitutional rights to property, liberty and a due process 3020-a

hearing, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights

Law), and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR FAILURE TO REASONABLY ACCOMMODATE
## THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 34 as if the same were fully set forth at length herein.

43. Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated

with the COVID-19 vaccine.

44. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

45. No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

46. At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

**New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**

and "rubber homes"

**Idled NYC educators do nothing but sign in remotely, even from Europe** https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023

47. Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

48. Defendants claimed "undue burden" while simultaneously omitting information of their long-term policy re-assigning employees to "rubber rooms", some of which held about 1-2000+ employees from 2002 until 2010. After 2010 Defendants scattered the re-assigned employees who could not be near children to rooms throughout New York

City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that may never have happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, these re-assigned employees awaited their §3020-a hearings at home.

49. Defendants could have given all the so-called "miscreants" similarly unvaccinated as Plaintiff, a reassignment to home or a rubber room. Defendants chose to claim that no accommodation was available and any accommodation was an "undue burden". This lack of consideration directly contradicts the ruling in Groff.

50. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION: VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

51. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 42 as if the same were fully set forth at length herein.

52. Defendants while acting under the color of law, unlawfully deprived the Plaintiff of her right to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of the United States Constitution, in that they engaged in selective enforcement of their own laws, rules, regulations, and ordinances against Plaintiff based upon the Plaintiff's religion and Plaintiff's constitutionally protected conduct. In so doing, Defendants intentionally and, with malicious or bad faith intent to injure Plaintiff, selectively treated Plaintiff differently from other similarly situated employees and acted with no rational basis for the difference in treatment. Defendants' conduct was intentional, conducted with bad faith, and wholly irrational.

53. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance....The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious....prohibit an employee from reporting to work."

54. New York City was the only location in New York State which mandated the vaccine or termination for public employees. New York City was also the only place where tenured educators were suspended without pay and terminated without a 3020-a hearing. Every other tenured educator in the State whether vaccinated or not, were given accommodations such as masks and testing. Anyone designated for charged misconduct received a 3020-a hearing. As a direct result of Defendants' violation of the Plaintiff's Fourteenth Amendment rights of equal protection, Plaintiff has suffered irreparable harm for which there is no adequate remedy of law.

55. Defendants' violation of Plaintiff's Fourteenth Amendment rights of equal protection

16

under the law, as alleged herein above, Plaintiff has suffered and is entitled to recover

compensatory and nominal damages including backpay.

56. Based on the foregoing, Defendants subjected Plaintiff to discrimination on the basis

of her religious beliefs, unlawfully discriminating against the Plaintiff in the terms and

conditions of her employment on the basis of her disabling condition, in violation of

42 U.S.C. § 1983; 14th Amendments due process clauses; Tenure rights and Law; N.Y.

Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human

Rights Law.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR FRAUD IN THE INDUCEMENT TO DENY PLAINTIFF HER PROPERTY AND LIBERTY RIGHTS TO A CONSTITUTIONALLY PROTECTED DUE PROCESS HEARING AS A TENURED TEACHER MANDATED BY EDUCATION LAW 3020 AND 3020-A

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in

paragraphs 1 through 48 as if the same were fully set forth at length herein.

58. Plaintiff was punished with wrongfully being disciplined for her alleged

"insubordination" in not getting vaccinated with the COVID vaccine without any

§3020-a hearing and no accommodation offers or review by the Defendants.

59. Education Law Section §3020 , Chapter 16, Title 4, Article 61 states as follows:

"Discipline of teachers.

1. No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article;
2. No person enjoying the benefits of tenure shall be suspended for a fixed time without pay or dismissed due to a violation of article thirteen-E of the public health law..... (iii) the provisions of subdivisions one and two of this section shall not apply to agreements negotiated pursuant to this subdivision..."

See **EXHIBIT F(2).**

60. Plaintiff did not, at any time, waive her rights to a §3020-a hearing on her religious exemption/accommodation. She wanted her due process rights to be honored. Instead, she was declared insubordinate by the Department, her personnel file was flagged and her fingerprints tagged with a "Problem Code" designating misconduct and put into the same database used by the FBI.

61. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

62. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

    "Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

63. Additionally, a waiver of a teacher's tenure rights must be knowingly and freely given (Matter of Gould v. Bd. of Educ. of the Sewanhaka CHSD, et al., 81 NY2d 446; Matter of Abramovich v. Bd. of Educ. of the Three Villages CSD No. 1, 46 NY2d 450).

64. Tenured teachers have a property and liberty right to their jobs, and therefore when there is any penalty that reduces the benefits of these rights, there must be Just Cause. Judge Desmond Green in the Richmond County Supreme Court ruled in the case of Rosalie Cardinale that:

"New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law §§§ 3012, 3012- a, 3020, Holt v. Board of Educ. Of Webutuck Cent. School Dist., 52 NY2d 625 [1981], Matter of Abromovich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown, 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " Education Law § 3020."

See Kambouris v NYC DOE, Index no. 518863/2022, Decision dated January 5, 2023. Defendants DOE did not appeal.

65. Plaintiff did not have standing to protest the Scheinman Award issued to all teachers in September 2021, so she was forced to submit to the procedure that subsequently led to her wrongful termination without due process. Clearly, Scheinman made up the LWOP by changing the commonly known AWOP ("Absence Without Pay") which is disciplinary to a forced leave without pay in order to throw out senior, tenured teachers such as Plaintiff without a due process hearing.

66. Scheinman committed a fraud against Plaintiff and breached an implied covenant of good faith and fair dealing by issuing lawless requirements of procedure that Plaintiff could not comply with yet relied on to her detriment. Scheinman's actions were intentional and deliberate.

67. Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her

religious beliefs, and unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religious beliefs, in violation of Education Law §3020, §3020-a (Tenure Law); 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

68. Plaintiff requests (1) backpay and all benefits and pension steps due after Defendants' violations of law, public policy and rights removed her from her salary under color of law and deprived her of Constitutionally protected due process; (2) reinstatement to her former working title with a salary that reflects 2 ½ years of missing time and wages, with pension steps and raises included; (3) judgment against Defendants for refusing to, or neglecting to, prevent such deprivations and denials to Plaintiff.

69. Plaintiff has had actual, documented impairments and damages to her life and career.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.    Awarding Plaintiff her tenured position, salary steps and raises, earned before October 2021, in full, with benefits; and

2.    Awarding Plaintiff all the back pay owed since she was removed from her salary in 2021;

3.  Considering Plaintiff is prose, an opportunity to Amend her Complaint after submission of Defendants' papers.

4.  Granting such other and further relief that the Court deems just and proper.

Dated: October     2024
       Oceanside, N.Y.

Corrine Lynch