*** Filed ***
06:14 PM, 16 Jul, 2025
U.S.D.C., Eastern District of New York

Corrine Lynch
Pro Se Plaintiff
34 Cheslan Court
Oceanside, NY 11572
Rins083082@aol.com
516-316-0451

Hon. Magistrate Judge J. Marutollo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Lynch v. Department of Education, et al. — Case No. 24-cv-7795
Plaintiff's Addendum to Joint Status Report

Dear Judge Marutollo,

I respectfully submit this addendum to the parties' Joint Status Report due July 16, 2025, to ensure that the Court has a complete and accurate record of ongoing discovery issues and the good faith efforts made to resolve them.

On July 15, 2025, I served a detailed deficiency letter on Defendants, one day after receiving their Responses and Objections to Plaintiff's First Set of Document Requests. In that letter (attached as Exhibit A), I raised concerns regarding Defendants' blanket objections to every single request in both Plaintiff's First Set of Interrogatories and Document Requests. I also requested that Defendants provide a privilege log pursuant to FRCP 26(b)(5)(A), and that the unresolved discovery issues be acknowledged in the Joint Status Report.

Defendants declined to include the substance of my position, stating:

*"We are not going to include all of those details because they are not ripe for consideration by the court. We have not had a chance to make good faith efforts to resolve them in accordance with Judge Marutollo's rules because we only received the notice yesterday."*

In the interest of transparency, I have included their statement here. However, I respectfully submit that I have made a good faith effort to resolve the discovery dispute—especially considering that the Defendants have had multiple weeks of extensions to prepare their responses. On May 9, 2025, Defendants requested and received an additional week to respond. As evidence of the delay, Defendants wrote to me:

*"I am requesting an additional week to produce our responses and the accompanying documents. Please let me know if you consent to this request. Thank you."*

Despite this extended timeframe, the responses ultimately consisted solely of objections and no substantive production. I made every reasonable effort to address these issues promptly by serving a deficiency letter the day after receipt.

I do not seek immediate intervention from the Court, but I submit this addendum to preserve my position and ensure the record reflects the current state of discovery.

Additionally, Plaintiff anticipates deposing Katherine Rodi, a key individual with direct knowledge of Plaintiff's claims.

Thank you for the Court's attention to this matter.

Respectfully submitted,
/s/ Corrine Lynch
Pro Se Plaintiff
Dated: July 16, 2025
Brooklyn, New York

**Enclosure:** Exhibit A – Plaintiff's Deficiency Letter (dated July 15, 2025)

# Exhibit A

Dear Ms. Ehrlich,

I hope this message finds you well.

I am writing to express serious concern regarding Defendants' discovery responses served on July 13, 2025. As you are aware, the parties originally agreed to serve responses by June 6, 2025. On June 12, Magistrate Judge Marutollo granted Defendants an extension to July 13, 2025. Despite having over a month to respond, Defendants objected to every single one of Plaintiff's document requests. In contrast, Plaintiff received 15 requests and objected to only one, demonstrating good faith in the discovery process.

Many of my requests could have easily been answered with documents already in the City's or DOE's possession. For example:

---

Section A – Problem Code (Request A(1))

My request for policies and procedures regarding the DOE's "problem code" was met with objections claiming vagueness and that no such documents exist. However, this contradicts testimony and evidence in PERB Case No. UD-32479, in which Katherine Rodi was deposed about the problem code. Additionally, UFT's 2012 improper practice complaint led to a settlement and decision in June 2022 requiring the DOE to notify employees when placed on the problem code. Nearly 1,000 documents were exchanged during that litigation. To now claim that no responsive records exist is implausible and inconsistent with the DOE's public and litigation history.

---

Section B – Scheinman Arbitration Contracts (Request B(2))

My request for contracts relating to arbitration services (i.e., SHAMS) was rejected as vague and irrelevant. However, this information is public and essential. The Summary of Agreement between DC 37 and the City of New York (Nov. 4, 2021) and the "Full Award" issued by Martin Scheinman are publicly accessible through court filings, including in the Appendix to the Dillon Declaration submitted in federal court (EDNY) on Sept. 10, 2021, and referenced in cases such as *Lebowitz v. Board of Education* (2023). These materials define the religious exemption appeals process and were relied upon to justify mass employment actions—making their omission both unjustifiable and evasive.

---

Section C – Eric Amato's Employment (Request C(1))

Your response lists Mr. Amato's start date as July 1, 2026, but public records and press releases confirm he began employment with DOE on July 1, 2016, and resigned on April 7, 2022. Refusing to correct this obvious error—and objecting to providing the reason for his resignation—raises serious concerns about the accuracy and integrity of Defendants' responses.

---

Section D–F – Religious Accommodation Criteria, AWOP/LWOP Status, and Arbitration Process

Several of Plaintiff's requests related to the Citywide Panel (Sections D & E) and DOE HR classifications (Section F) were improperly rejected on grounds of irrelevance or Plaintiff's lack of appeal. Yet these documents are clearly relevant to the claims of discrimination and denial of fair process.

• *Section E: Definitions and Panel Criteria*

My requests regarding how the Citywide Panel evaluated religious accommodation requests—including definitions of "sincerely held belief" and "undue hardship"—were rejected in full. These materials are not only relevant, they are central to my claims. As Katherine Rodi testified before PERB, DOE made a policy decision that "everyone was denied in the beginning" because "there was no accommodation possible." This supports my assertion that the process was predetermined and discriminatory. Further, the EEOC Compliance Manual (Section 12) states that employers must conduct "case-specific determinations" of accommodation requests. The U.S. Supreme Court's decision in Groff v. DeJoy, 600 U.S. ___ (2023) reaffirmed that employers may only deny accommodations based on "substantial increased cost in relation to the conduct of the particular business." These governing standards are not privileged and should have been produced or acknowledged.

• *Section F: AWOP vs. LWOP Classifications*

The DOE's refusal to provide documents explaining how and why employees were placed on AWOP or LWOP is also troubling. These distinctions are explicitly governed by Chancellor's Regulation C-601 and the 2021 UFT-DOE Impact Bargaining Agreements. The UFT Weekly Update (Fall 2021) confirmed that unvaccinated employees were initially marked AWOP until LWOP status was negotiated. These public and internal records should have been produced. Additionally, HR Connect and DOE payroll records—already available to both parties—contain data showing when and how these classifications were applied.

---

Given the volume and nature of these improper objections—especially in light of Defendants' access to the very documents requested—I respectfully request the following:

1. That you reference or attach this letter to our upcoming Joint Status Report due July 16, 2025;

2. That Defendants acknowledge their refusal to produce any substantive documents, despite clear access and relevance to the claims;

3. That Defendants provide a privilege log for any documents withheld on privilege grounds, pursuant to FRCP 26(b)(5)(A).

I trust the Court will expect good faith from all parties, including the City. At minimum, a reasonable and responsive production is now overdue.

Thank you for your attention.

Sincerely,
Corrine Lynch
Pro Se Plaintiff

Appendix: Trusted Sources for Referenced Documents

1. PERB (NY State Public Employment Relations Board) – Access official decisions and selected hearing excerpts, including PERB Case No. UD-32479, which includes sworn testimony from Katherine Rodi regarding the "problem code."
   *Visit the PERB website and use the case search tool.*

2. UFT Official Publications – Find public summaries of the long-running dispute over the DOE's "problem code" and impact-bargaining memoranda governing AWOP/LWOP status during the COVID-19 mandate.
   *Check the UFT's official website under "News" and "Contract Talks."*

3. NYC DOE Chancellor's Regulations – Specifically Regulation C-601, which outlines DOE attendance and leave classification policies (including AWOP and LWOP).
   *Available from the DOE's official policy portal.*

4. EEOC Compliance Manual, Section 12 – Authoritative guidance for religious accommodation under federal law, including "sincerely held belief" definitions.
   *See the EEOC's official website under their laws/guidance section.*

5. Supreme Court Opinion – Groff v. DeJoy (2023) – U.S. Supreme Court ruling refining the meaning of "undue hardship."
   *Viewable via the Supreme Court's official site or public legal databases.*

6. PACER (Public Access to Court Electronic Records) – Contains the Dillon Declaration Appendix and the Martin Scheinman arbitration award, including detailed processes for religious exemption appeals filed in EDNY.
   *Requires a PACER account.*

7. NYC DOE FOIL Portal – Official avenue for requesting internal DOE records such as HR rules, arbitration communications, or training materials.