**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Corrine Lynch,

Plaintiff,

v.

Department of Education of the City of New York, David Banks, and Katherine Rodi, Defendants.

Case No.: 24-cv-7795 (DG) (JAM)

**LETTER MOTION TO DISQUALIFY MAGISTRATE MARUTOLLO FROM THIS CASE AND PLAINTIFF'S OBJECTION TO REFERRAL FOR A REPORT AND RECOMMENDATION**

28 U.S.C. §455

Hon. Judge Gujarati:

I, Corrine Lynch, am the pro se Plaintiff in this case cited above. The purpose of this letter Motion is to request that you, Judge Gujarati, find sufficient cause to disqualify and/or remove Magistrate Marutollo from this case or, at minimum, reconsider your Order that allows him to submit a Report and Recommendation on the Defendants' Motion To Dismiss.

Magistrate Jude Marutollo has already made his recommendation for this case crystal clear, and here I want this Court to see how biased Magistrate Judge Marutollo is, by reviewing the documents in the Discovery schedule and stay.

On 2/6/25 I declined to have Magistrate Judge Marutollo preside over my case (Docket 14); On January 7, 2025, Attorney Erhlich asked for an extension of time to submit a response to my Complaint without any prior contact with me (Docket 11, 1/7/25); _the next day, 1/8/25_, Judge Marutollo granted Ehrlich's request, also without my input, and Ordered the completion of the Discovery Plan and Scheduling Order by March 4, 2025 without my input; Ms Ehrlich then submitted the Discovery Plan to the Court on March 3, 2025.

On March 6, 2025 I filed a Notice of Motion for Recusal or Disqualification of Magistrate Judge Marutollo (Docket 19) and _the next day_ Judge Marutollo Denied the request without any response from Ms. Ehrlich. On March 11, 2025 the Discovery Plan and Scheduling Order was set, with Judge Marutollo advising the parties "a finding of 'good cause' depends on the diligence of the moving party" and "the Court has an obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding." He also told Ms. Ehrlich to mail a copy of his Minute Entry and Order on me.

1

Despite my not wanting Magistrate Judge Marutollo to have any jurisdiction over the Motion To Dismiss, on March 24, 2025 he set the schedule for the Motion papers, Opposition, and Reply and Ordered the Defendants (Ehrlich) to file the fully briefed motion by June 12, 2025.

On April 17 and again on June 16, 2025 a Joint Status Report was filed by Ms. Ehrlich without any input by me. During these months Defendants made many requests for extensions, which I believed to be untimely, and submitted my objections on June 25, 2025 (Docket 36). On July 14, 2025, the Motion To Dismiss and attachments were filed in the Docket (#37-41).

Defendants continued their untimely and improper discovery production throughout this time. Many of their responses to my discovery and interrogatories were:

- boilerplate, repetitive objections that fail to articulate any specific basis for withholding documents.
- Assert vagueness with respect to commonly understood terms such as "criteria," "panel duties," "AWOP," or "problem code";
- Improperly and repeatedly rely on the assertion that I "did not appeal the denial of my reasonable accommodation" to justify withholding responsive documents that are clearly relevant to claims of discrimination, retaliation, and policy implementation.
-  As explicitly stated in the Complaint, I was never provided the opportunity to appeal, and therefore this objection by Ms. Ehrlich in her responses is both factually incorrect and legally unjustified.

On July 16, 2025 Ms. Ehrlich filed a Joint Status Report that once again was not "Joint", as I had no input. She wrote that the Defendants were not interested in settling, as "we "do not believe it would be a productive use of time and resources at this stage in the litigation". I filed an objection to the one-party status report (Docket #43) on July 16 2025 clarifying my good faith efforts to participate in my own case, but not being able to be heard. Additionally, I cited Defendants for giving me no discovery yet making an effort to delay this case.

On July 29, 2025 (Docket 45) Ehrlich filed a Motion to Stay Discovery, after I had submitted all my documents exactly as ordered, and Defendants submitted nothing at all. Section B. in this request is a list of the reasons to dismiss my case and stay discovery, and every statement in this list is either totally erroneous or nonsense. On top of these false claims, Ehrlich writes, "Accordingly, Defendants' Motion to Dismiss is completely dispositive of the claims in the SAC" – which clearly shows that she applied a statement that she or someone else had written for another case, which had submitted a Second Amended Complaint (SAC). I never did this. Ehrlich is not reading my papers, but someone else's.

Defendants also wrote, In deciding whether to stay discovery pending a dispositive motion, a court may consider the following factors: "(1) whether the defendant has made a strong showing that plaintiffs claim lacks merit; (2) the breadth of the requested discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." Also, "Defendants contend it would be unduly burdensome to engage in any further discovery for a case that is inevitably headed for dismissal. Defendants urge the Court to review the pending Motion, and Defendants are confident that the Court will see that Plaintiff's claims cannot survived, and indeed the majority are nearly identical to claims in other cases have been universally rejected, and many of Plaintiff's claims are barred on procedural grounds. In the alternative, and at a minimum, Defendants ask the Court for a stay of deposition discovery until after the motion has been decided, as to minimize the onerous tasks of engaging in depositions.

In other words, my case is a waste of time and resources, and the Court will see this and dismiss the case that is just like many cases filed exactly like this one, and there is nothing of value. Yet barely 10 days later, Ms. Ehrlich settled the case Hernandez v Office of the Richmond County District Attorney, Michael Mahon et al., 24-cv-5790. Ms. Hernandez was given her job back at the RCDA, and her religious accommodation was granted.

In granting Defendants' Motion to Stay discovery, Judge Marutollo's order repeated nearly verbatim the arguments submitted by defense counsel. The absence of independent judicial reasoning creates a reasonable perception that the Magistrate Judge adopted Defendants' positions wholesale rather than exercising impartial judgment. Courts have cautioned that such verbatim adoption can erode confidence in neutrality. "ORDER granting 45    Motion to Stay. Upon careful review of the parties' submissions at 45    and 47   , the Court stays discovery in this case pending resolution of Defendants' motion to dismiss 37 .
"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.' In evaluating whether a stay of discovery pending resolution of a motion to dismiss is appropriate, courts typically consider: (1) whether the Defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay. (citation and quotation marks omitted).

Here, applying these factors, the Court finds that a stay is warranted. See Johnson v. N.Y. Univ. Sch. of Educ., 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[A] stay of discovery is appropriate [ ] where the motion appears to have substantial grounds or, stated another way, does not

3

appear to be without foundation in law.") (citation omitted). All discovery is stayed pending resolution of the Defendants' dispositive motion.

Defendants are ordered to serve a copy of this order on Plaintiff and file proof of service on the docket by August 1, 2025. Ordered by Magistrate Judge Joseph A. Marutollo on 7/31/2025. (JAM) (Entered: 07/31/2025)"

Magistrate Judge Marutollo's actions in this case show not only great prejudice towards me and my success in this case, but also collusion with the City Law Department where he previously worked, abuse of discretion, and fraud on the Court. See the letter from City Law Department supervisor Christopher Arko (Docket #34, June 25, 2025), in which he states that he intended to call Judge Marutollo soon after filing the Motion for an Extension of Time, despite never filing a Notice of Appearance and being a non-party in this matter. He is Ms. Ehrlich's supervisor. Under Judge Marutollo's Individual Rule III.A, any attorney appearing before the Court must first file a Notice of Appearance on ECF. Rule III further provides that settlement-related communications are to be made in writing through ex parte letters to chambers (Rule III.C.2), and Rule III.C.3 governs who may attend conferences. Nowhere do the Rules authorize informal phone calls from non-appearing supervisors. Why did Mr. Arko call the Magistrate Judge, and what was the substance of his conversation? I do not know. But his attempted direct communication with the Court falls outside the Rules and creates the appearance of an improper ex parte contact. I believe that Arko's participation in this case, and his speaking ex parte to Judge Marutollo, was improper and only reinforces the appearance that Ms. Ehrlich and Judge Marutollo are working together against my interest.

Judge Marutollo previously served for ten years as an attorney with the NYC Law Department, the office now representing Defendants. While prior government service does not automatically mandate recusal, when combined with his rulings consistently favoring that office, a reasonable observer would question his impartiality. Under § 455(a), recusal is required whenever impartiality "might reasonably be questioned." I filed a Motion pursuant to 28 U.S.C.§455 to have him recuse himself from this case. (Docket No. 19, 3/6/2025). Magistrate Judge Marutollo denied the Motion _the next day March 7, 2025._ The Order was served on me by Defendants, although signed by Judge Marutollo.

Upon information and belief and based on the facts and evidence I have submitted in my case, I have the opinion that since the start of this case Magistrate Judge Marutollo has shown bias and abuse of discretion against me and my interests. The proof is in the details:

Throughout this case, Ms. Ilona Ehrlich, lawyer for the Defendants, has not contacted me, and filed her letter request for a pre-motion conference without reviewing your Practice

4

Rules. This is a continuation of her asking Magistrate Judge Marutollo to extend her time for a response and submitting alleged "Joint" Status Reports, also without any prior attempt to contact me.

I will clarify the above. Defendants submitted several "Joint" Status Reports that were anything but that. Ms. Ehrlich's opinions on this case – that it is a waste of time and the claims made by me have been dismissed many times in this Court, so no need to hear it again – are discussed in her submitted supposedly "Joint" Status Reports without me, the Plaintiff, giving my side of this story. The Status Reports, therefore, are devoid of any views but Attorney Ehrlich's and are not "Joint".

Additionally, Ms. Ehrlich is completely wrong about the claims I made.

- First and foremost, the terms of my employment were never changed. Only new hires in 2021- 2023 were required to get vaccinated before starting their jobs at the Department of Education in New York City ("NYC DOE"). The State legislature is the only entity that may change the Law. No change has been made to my terms of employment, namely that I have a right to request a religious accommodation when an order that conflicts with my beliefs is set by the employer. My claims in my Complaint are specifically against the COVID Vaccine Mandate AS APPLIED to me. The *application* of the CVM was unconstitutional as applied to educators in New York City, including me. This is my claim.
- Second, I was terminated because the NYC DOE would not grant me a religious accommodation so that an experimental vaccine – the COVID vaccine in particular, which that did not prevent or stop the spread of infection - could be honored under a law that never existed for educators in New York State.
- Third, when I could not get vaccinated, and before my appeals were submitted or heard, I was placed on a "Problem Code" which designated me in the Defendants' budget "Galaxy" as guilty of misconduct. I was permanently blocked from getting hired in my tenured position at my 2021 salary. This harm continues today. This charge made an Education Law 3020-a arbitration hearing mandatory by law and statute. In these arbitrations, the NYC DOE has the burden of proof to document not only what my misconduct was, but against whom, when and why. As this could never be proven, and the denial of my religious accommodation was unjustified and discriminatory, I should have been reassigned to a location designated by the NYCDOE as the reassignment room, to await a hearing. There were at least three locations where a large number of unvaccinated DOE employees sat, in 2021-2023, all on salary but not vaccinated. I named several of the 'lucky' employees, including R.F., in my complaint. I was not one of these lucky employees. But why?

5

- Fourth, the Ed. Law 3020-a hearings are public policy in New York State and required by statute and contract once an employee complained about and charged with incompetency or misconduct. I was charged with misconduct but never received a hearing. My tenure is a state-level privilege which provides due process rights in dismissal proceedings. Tenure's protections stem from constitutional guarantees of due process and fair treatment, preventing arbitrary dismissal and allowing teachers like me to exercise professional judgment without fear of political reprisal. This hearing is defined by the 14th Amendment, and I cannot be fired until I have had a full hearing under the Ed. Law and UFT contract – which, as I wrote above, was never changed. See Rights of Tenured Teachers,  I was fired without a hearing. No decision-makers at the DOE ever reviewed by religious exemption appeals, and the DOE never explained what an "undue hardship" was, or "did not meet criteria", as mandated by Groff v Dejoy (U.S. Supreme Court, No. 22-174 (June 29, 2023).
- Fifth, many cases have won on the failure to accommodate a religious accommodation in lieu of getting the COVID Vaccine, namely because of the unconstitutional use of "undue hardship" also used against me in my appeal to remain on salary while working without getting vaccinated. See the cases of Weizel v NYCDOE, Index No.5308072/2022; LaBarbera v NYC DOE Index No. 85001/23; 2nd Dept win 2023-05071; 2023-05072; Vasquez v City of New York-Office of the Mayor, 22-cv-05068-HG-VMS; Famiglietti v Dep't of Sanitation, 23-cv-02754(LDH)(VMS); Hill v NYCDOE, 24-cv-03506-RPK-CHK; and Hernandez  v Richmond County District Attorney, 24-cv-5790 (BMC).

Plaintiff respectfully objects to Magistrate Judge Marutollo's July 31, 2025 Order granting a stay of discovery pending resolution of Defendants' Motion to Dismiss.

I. STANDARD OF REVIEW

A district judge must "modify or set aside any part of the magistrate judge's order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

II. GROUNDS FOR OBJECTION

1. The Stay Order Is Contrary to Law and Judicial Efficiency

In granting the stay, the Magistrate Judge did not fully apply the relevant factors under *Landis v. North Am. Co.*, 299 U.S. 248 (1936) and *Amron v. 3M*, 2024 WL 263010 (E.D.N.Y.):

- No strong showing was made that Plaintiff's claims lack merit;

- Defendants have not faced any discovery burden, as they have refused to produce any documents;

- And Plaintiff, proceeding pro se, faces clear prejudice as the discovery deadline of September 11, 2025 approaches.

2. The Stay Undermines the Court's Two-Track Litigation Process

The Court has bifurcated this case into:

- Dispositive motion practice before the District Judge, and

- Discovery under the Magistrate Judge's management.

Plaintiff has acted in full reliance on this structure—serving and responding to discovery, preparing for depositions, and complying with scheduling orders. Defendants, by contrast, refused to participate and then sought a stay. Allowing such a stay invalidates the efficiency of the two-track approach and undermines judicial economy by freezing all progress without first resolving the dispositive motion.

This unfairly disadvantages Plaintiff and invites future litigants to exploit the same delay strategy.

3. Significant Factual and Legal Disputes Remain

The motion to dismiss does not resolve the following:

- The constitutionality and procedural validity of the "Problem Code";

- The blanket denial of religious accommodations in violation of *Groff v. DeJoy*;

- Recent developments in *Health Freedom Def. Fund, Inc. v. Carvalho*, which undercut the vaccine mandate's legal justification.

Plaintiff's case presents viable claims, supported by deposition transcripts, expert declarations, and documentary evidence that can only be further developed through discovery.

Additionally, a similar case was brought against Katherine Rodi in which her actions came under close scrutiny. That case raised issues central to this matter, including the use of the Problem Code and the charge of misconduct issued against me on or about October 4, 2021, for requesting a religious accommodation. This precedent is highly relevant to the Court's consideration here. Furthermore, the email from Eric Amato attached to the Declaration of Betsy Combier, together with Ms. Rodi's deposition transcript in the PERB

7

Case U-34279, reveal conflicts that can only be resolved through further discovery and Ms. Rodi's deposition in this case.

See the Transcript of Ms. Kathy Rodi in 2015, attached. She clarifies the procedures used by Defendants when an employee is given a Problem Code. This procedure is not at all what happened in my case, and this Court as well as all teachers similarly situated need to know how the Problem Code worked during the COVID Mandate period. My due process rights were denied.

---

III. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Disqualify Magistrate Judge Marutollo from further participation in this case, including from issuing any Report and Recommendation on Defendants' Motion to Dismiss;

2. Set aside or modify the Magistrate Judge's stay of discovery;

3. Permit discovery to proceed in accordance with this Court's original scheduling order;

4. Alternatively, permit limited discovery on time-sensitive matters such as the deposition of Defendant Rodi and production of documents concerning the "Problem Code."

5. Allow me to submit to you an Amended Complaint.

Respectfully submitted,
/s/ Corrine Lynch
Corrine Lynch, Pro Se
Email: rins083082@aol.com
Phone: 516-316-0451

8