UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Corrine Lynch,
Plaintiff,
v.
Department of Education of the City of New York, David Banks, and Katherine Rodi,
Defendants

Case No.: 24-cv-7795 (DG) (JAM)

**RE: REPLY TO MAGISTRATE JUDGE MARUTOLLO'S AND DEFENDANTS' DENIAL OF PLAINTIFF'S DISQUALIFICATION MOTION RETITLED AS "RECUSAL" AND PLAINTIFF'S CONTINUED OBJECTION TO REFERRAL FOR A REPORT AND RECOMMENDATION PURSUANT TO 28 U.S.C. §455**

Hon. Judge Gujarati:

I, Corrine Lynch, am the pro se Plaintiff in this case cited above. The purpose of this letter is to supplement my motion requesting the disqualification of Magistrate Judge Marutollo and objecting to your referral to him for a R&R. I want to bring to your attention that Magistrate Judge Marutollo and Defendants changed the title of my motion from "Disqualification" to "Recusal" and then quickly denied my "Recusal" motion, berated me for submitting it, and prohibited me from making any request for reconsideration. The shocking actions taken by Magistrate Judge Marutollo and Defendants' Attorney Ilona Ehrlich have no basis in any lawful, ethical or statutory authority. In my arguments below I put in bold the Rules that I believe are being ignored in my case, that have led to my filing the letter motion to disqualify Magistrate Judge Marutollo.

"The impartiality and neutrality of judges is an indispensable feature of the American justice system. An impartial judiciary is imperative to ensure procedural fairness to individual litigants' and to preserve public confidence in the integrity of the judicial process. Realizing these objectives requires that judges be neutral and unbiased in fact. Preserving public confidence, however, additionally requires that judges present an appearance of scrupulous impartiality even in the absence of any actual bias." Gary L. Karl, *Disqualification of Federal District Court Judges for Bias or Prejudice: Problems, Problematic Proposals, and A Proposed Procedure,* 46 ALB. L. REV.229, 229 (1981) (noting that "[i]f a judge is biased toward or against one of the parties, or if he is prejudiced about the subject matter of the suit to the extent that he is unable to hear both sides with an open mind, his participation deprives the litigants of due process"); and, "Without armies to carry out their judgments, courts are dependent on the consent of the governed no less than the other branches to make their pronouncements law. When the image of the judiciary is tarnished, the moral authority of the court is critically undermined. The appearance of partiality, whether based on the judge's apparent economic self-interest, his class or race prejudices, or simple carelessness about the concerns of citizens and the public, is the greatest threat that confronts our judges." JOHN P. MACKENZIE, THE APPEARANCE OF JUSTICE at x (1974).

1

*See* Susan E. Barton, Note, *Judicial Disqualification in the Federal Courts: Maintaining an Appearance of Justice Under 28 U.S.C. § 455,* 1978 U. ILL. L.F. 863, 863 (recognizing that "[c]ourts strive to achieve and maintain an appearance of justice-an appearance, that is to say, of scrupulous fairness and total impartiality- because the authority of judicial tribunals ultimately rests upon public confidence").

From the start of this case, filed and paid for by me on November 8, 2024, Magistrate Judge Marutollo has made Orders that are biased against me and which have led to my writing a motion to Recuse him on March 6, 2025 (Docket #19). The next day, on March 7, 2025, Magistrate Judge Marutollo denied the Motion with disdain for my reference to his Bio in this Court wherein he proudly writes that he has prosecuted 100s of Section 1983 cases for the City of New York as a City Law Department Attorney. My case is a Section 1983, was filed against the City, and the Defendants are represented by the City Law Department. Magistrate Judge Marutollo never requested a response from Ms. Ehrlich. He spoke for her and the Defendants. This effectively makes Magistrate Judge Marutollo a lawyer in this matter and not a judge.

My addition of Katherine Rodi as Director of Employee Relations and a Defendant makes my case a matter of first impression. This Court's decision as well as any Appeal made to the Court of Appeals will set new legal precedent. Both Magistrate Judge Marutollo's and Ms. Ehrlich's claims - that pursuing this matter is a waste of time and resources – are created out of whole cloth. See EXHIBITS A-R in my Complaint; my Opposition to Defendants' Motion To Dismiss, and my Recusal Motion.  (Complaint, Docket #1 November 8, 2024; Opposition To Motion To Dismiss Docket #31, June 12, 2025; Recusal Docket #19). By reference herein, please incorporate all of this evidence as if entered in the Motion For Disqualification filed September 12, 2025 in full.

**A DISQUALIFICATION MOTION of MAGISTRATE JUDGE MARUTOLLO CANNOT BE DISMISSED BY HIM**

As part of his deliberate rampage tarnishing the legal principles of fairness and justice in this case, Magistrate Judge Marutollo has proven to be blind to the unfair, prejudicial and fraudulent hoax he is placing on the docket and arguing judicial right to claim.

On September 12, 2025 I uploaded and sent my case status report to Ms. Ehrlich and to Magistrate Judge Marutollo. Ms. Ehrlich refused to incorporate my side of this case in her version of the "Joint" status report. I then found a "Joint Status Report" (Sept 26, 2024) and another document, a Joint Discovery Plan (January 31, 2025), signed by Attorney Christina Martinez and Attorney Ehrlich in the case of Anita Hernandez. ( Anita Hernandez v. The Richmond County District Attorney, et al., 24-CV-05790 (BMC)). The Hernandez documents have both Attorneys' description of their allegations and evidence. Here, Ehrlich wanted nothing to do with my documents or evidence which she believes are inconvenient and/or "improper" at best.

On September 12, 2025, I filed and submitted to Your Honor, Judge Gujarati, a Letter Motion to Disqualify Magistrate Judge Joseph Marutollo from this case pursuant to 28 U.S.C. § 455 and

2

my Objection to your referral for a Report and Recommendation. (Docket #50).This motion was directed to Your Honor, as only the District Judge has the authority to decide a disqualification of a Magistrate Judge under § 455.

A magistrate judge cannot decide a motion filed under 28 U.S.C. § 455 for their own removal, as the motion is for their disqualification, which implies impartiality concerns that the magistrate cannot themselves assess. Federal law requires that the impartial judge or another judge on the court decide a disqualification motion, not the judge or magistrate whose impartiality is being questioned.

**Why the Magistrate Cannot Decide the Motion**
- **Impartiality is the Core Issue:** The very basis of a 28 U.S.C. § 455 motion is a challenge to the judge's impartiality. A judge or magistrate cannot impartially rule on a motion questioning their own fairness or integrity.
- **Statutory Purpose:** The purpose of 28 U.S.C. § 455 is to promote confidence in the judiciary. Allowing a judge or magistrate to rule on their own disqualification would undermine this confidence and go against the statute's intent.
- **Who Should Decide:** The motion must be decided by a district judge. The district court judge is responsible for assigning the matter or deciding the disqualification themselves.

In their September 22, 2025 filing (Docket #53), Defendants mischaracterized my motion as one seeking Magistrate Judge Marutollo to "recuse himself" and then ridiculed my allegations as wholly false. That is not accurate. I did not request voluntary recusal. I moved for disqualification under § 455, to be determined by the District Court.

The distinction matters:
- Recusal is voluntary, when a judge steps aside on their own initiative;
- Disqualification under § 455 is a statutory motion brought by a party, and it must be decided by the District Judge.

By framing my motion as a recusal request, Defendants attempt to portray it as duplicative of my prior recusal request, or a motion for reconsideration, rather than what it is — a proper statutory Motion.

Yet on September 22, 2025 Magistrate Judge Marutollo denied the letter motion for his Disqualification and Removal pursuant to 28USC 455 sent to District Court Judge Diane Gujarati on September 12, 2025. (Entered 9/15/2025). His actions are improper, prejudicial to me and my case, and without subject matter jurisdiction and legal authority.

His denial and his prohibition of any reconsideration of his Order are invalid as a matter of Law, and meaningless as a procedural or substantive decision in this case. However, his actions give legal and ethical truth and validity to the motion to disqualify Magistrate Judge Marutollo from this case.

**Arko-** Specifically, the name Christopher G. (Gregory) Arko, at Tannenbaum Helpern Syracuse & Hirschtritt LLP (900 Third Avenue, New York, NY 10022, 212-508-6714, carko@thsh.com)

3

appears on the docket as representing the Defendants. However, Mr. Arko never submitted to the Court a Notice of Appearance, nor did he file or sign any pleading or motion in this case. On June 25, 2025 he suddenly popped up on the Docket (#34) with a request for an extension of time for Defendants' submission of a Motion To Dismiss. Mr. Arko sent me an email requesting this extension, but I did not consent, as many requests for extensions had been made already. Mr. Arko gave his email as "carko@law.nyc.gov". His letter #34 on the Docket shows that he worked at that time for the City Law Department, and he wrote that he was Ilona Ehrlich's supervisor at the City Law Department. Furthermore, he added that she was on her honeymoon, and that "Consistent with Your Honor's (Marutollo) Individual Rule III, I intend to call Chambers after filing this motion to advise the Court that it had been filed….[and] neither the requested extension not its timing will cause any prejudice to Plaintiff".

Unaware that the City Law Department had filed a request for an extension of time, as the Magistrate Judge's Rules forbade submitting a request for an extension unless this request was submitted two business days prior to the deadline (Marutollo's **Rules IV**) .On the same day – June 25, 2025 – I filed an objection to the multiple extensions of time and violations of the Court's Rules on Extensions (Docket 36). I cited failure to timely serve the Judge's June 16 order; violations of Marutollo's **Rule IV** for extension requests; repeated delays; and prejudice to me. See EXHIBIT 1, attached.

On the very same day, Magistrate Judge Marutollo made an ORDER granting Defendants' request as submitted by Mr. Arko and entered on the Docket by him on 6/25/2025, the same day.

The actions of Attorney Arko in this instance, and the support he has been given by Magistrate Judge Marutollo, are some of the many reasons I filed a Disqualification Motion and objection to Marutollo's submission of a R&R on Defendants' Motion To Dismiss, namely that his authority and impartiality are compromised.

First, who does Attorney Christopher Arko represent? His submission as well as calling the Court on June 25, 2025 are in direct conflict with **Local Rule 1.4(a)** "each attorney appearing on behalf of a party must file a notice of appearance promptly on or before the the attorney's first appearance in court or filing in the case. The notice of appearance must provide the attorney's name, any firm or organizational affiliation, business address, telephone number, email address, and the name of the party or parties represented." **See 2025-01-02 Joint SDNY-EDNY Local Rules.**

A notice is also required if an attorney and a party have agreed to a limited-scope representation. Attorney Arko disregarded that as well. **(Rule I.4(c)(1))**

Second, Arko is also violating **Rule II A. of Magistrate Judge Marutollo's Individual Practices and Rules:** "Telephone calls to Chambers are not permitted. For emergencies or inquiries, please contact Chambers via email, at Marutollo_Chambers@nyed.uscourts.gov.," and **Rule III A**: "Any attorney appearing before the Court must first enter a notice of appearance on ECF" and **Rule IV: "**All requests for adjournments of a court conference or extensions of time shall be filed on ECF as a "Motion" (not a "Letter") at least two (2) business days prior to the scheduled appearance or deadline. Any adjournment of a court appearance being requested less

4

than two (2) business days prior to the scheduled appearance or deadline shall be accompanied by a telephone call to Chambers advising the Court of the request. All requests for adjournments or extensions must state the original date of the conference or deadline; the reasons for the adjournment or extension; the number of previous requests for adjournment or extension, and whether those requests were granted; whether the adversary consents, and if not, the reasons given by the adversary for refusing to consent; and if the requested adjournment or extension affects any other scheduled dates."

Attorney Arko and Ms. Ehrlich used the state of 'emergency' to call the court and have Mr. Arko pop up on the docket as her Supervisor, when indeed, we are supposed to believe that Ms. Ehrlich's honeymoon and travel were undisclosed to her Supervisor and her employer until the last minute, when an emergency contact was necessary?

I also believe that Mr. Arko's backstory is important. He passed the bar in 2011, and went to work at the New York City Law Department, Labor and Employment Division. In April 2016, he transferred to the **Special Federal Litigation Division**, where he defended City employees in federal civil lawsuits, known as 1983 cases. He volunteered to assist new attorneys as part of the Law Department's Ambassador Program. He left the Law Department in 2025 and started work at Tannenbaum Helpern Syracuse & Hirschtritt LLP in September, 2025.

Magistrate Judge Marutollo's Biography has this: Upon graduating from law school, Judge Marutollo served as an Assistant Corporation Counsel in the **Special Federal Litigation Division** of the New York City Law Department. While at the New York City Law Department, Judge Marutollo handled over 100 federal cases brought pursuant to 42 U.S.C. § 1983, including multiple trials.

Both Magistrate Judge Marutollo and Attorney Arko worked in the Special Federal Litigation Division of the NYC Law Department, and both made notice in their Biographies that they prosecuted Section 1983 cases for the City of New York. My case is brought against the City of New York as a Section 1983 case.

It may be concluded that both these men worked together or knew each other before 2025. I concluded that this is the reason why Magistrate Judge Marutollo chose to not make anything of the fact that his own Rules and the Court's Local Rules are being violated without consequences by Christopher Arko and the attorney he supervised before September 2025, Ilona Ehrlich. The inference of impropriety is clear.

Out of an abundance of caution, I have continued to copy Mr. Arko on my filings. However, under Local Civil Rule 1.3(c), it appears that service is required only on counsel of record — i.e., attorneys who have filed a notice of appearance or have otherwise signed a filing in the case. On September 12, 2025, I emailed Ms. Ehrlich to include clarification on the participation of Mr. Arko in our joint status report , but she felt it was "inappropriate" and has not provided me with a response.

Accordingly, I respectfully ask the Court to clarify whether I am required to continue serving filings on this attorney, or whether service should be limited to counsel of record. I also request

an explanation as to Mr. Arko's continued representation of Defendants, and why he has made no Notice of Appearance in my case.

**Joint Status Reports**- While Defendants argue that they shared drafts of the joint status reports with me, I respectfully clarify that these drafts consistently contained only Defendants' positions, which defeats the purpose of a truly "joint" submission. My concern was never that Defendants failed to send me a draft, but rather that my input was never genuinely requested or incorporated. In some instances, I received these drafts less than 24 hours before the deadline, leaving no meaningful opportunity to contribute. On the two occasions when I specifically asked to include important facts from my side, Ms. Ehrlich declined, stating that my contributions were "inappropriate" or did not "follow procedure."

At the time, I mistakenly believed this practice was the norm and trusted that Defendants were acting fairly. However, after reviewing joint status reports Ms. Ehrlich has submitted in cases involving represented plaintiffs, I noticed they appear more balanced, collaborative, and reflective of both parties' positions. When I asked Ms. Ehrlich in an email on September 12, 2025 to include in the joint status report her protocols and procedures when working with pro se litigants and counsel if they meet the same standards , she said that it was "inappropriate" and did not respond.
Defendants' practice of filing unilateral submissions labeled as "joint" directly violates both this Court's September 18, 2025 Scheduling Order and Magistrate Judge Marutollo's Individual Practices **§V B**. The Scheduling Order expressly requires that joint status reports "reflect the positions of all parties," consistent with **Fed. R. Civ. P. 16(b)** and **Local Civ. R. 16.1**. Likewise, Judge Marutollo's Individual Practices provide that discovery, and pretrial disputes must be presented in "a single letter, jointly composed," with each party limited to its own three-page section. Only if the parties can show "good cause" may separate letters be submitted (**Individual Practices § V(B)**). Defendants have repeatedly submitted letters reflecting only their own positions while labeling them "joint," without any showing of good cause. This practice contravenes the Court's order and rules, deprives the Plaintiff of equal participation, and undermines the integrity of the joint reporting process.

**Discovery**- Defendants argue that they complied with discovery by serving Initial Disclosures on April 10, 2025, and by providing responses on July 13, 2025. This is not accurate.

On April 10, 2025, at 10:32 p.m., Ms. Ehrlich emailed me stating that Defendants were serving "Initial Disclosures" along with "Defendants' First Set of Interrogatories and Request for the Production of Documents." However, the only "documents" attached were eight exhibits, all of which came directly from my own complaint. Under **Fed. R. Civ. P. 26(a)(1)(A),** Initial Disclosures require a party to identify witnesses, produce or describe documents that support its defenses, provide a damages computation, and disclose insurance agreements. Reattaching documents that I myself filed does not meet this standard, and it provided no new or meaningful information.

Further, after receiving multiple extensions, Defendants served their responses to my First Set of Document Requests on July 13, 2025. In those responses, Defendants objected to every request without producing any substantive documents. Courts in this Circuit have made clear that blanket

6

objections and boilerplate responses do not constitute compliance with discovery obligations, as discovery requires substance, not just form.
Accordingly, Defendants' claim that they "met all their discovery obligations" before requesting a stay is misleading. The record demonstrates that their "disclosures" consisted only of my own complaint documents, followed by blanket objections to my discovery requests after multiple delays. This pattern reflects avoidance of discovery rather than compliance with it.

**Collusion & Bias-**Defendants minimize my concerns by stating that there is "no evidence" of collusion, abuse of discretion, bias, or fraud on the Court. Respectfully, my motion was not based on speculation but on the appearance of impropriety, which is a valid basis for disqualification under **28 U.S.C. § 455(a).** That statute makes clear that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Importantly, the standard is not whether there is proof of actual bias, but whether a reasonable observer could question impartiality. I and the people I have discussed this case with all agree that there are too many issues which point to improper collusion of Magistrate Judge Marutollo with the City Law Department and in particular, Ilona Ehrlich. A comparison of the words used by Ms. Ehrlich to request a Stay of Discovery, and Magistrate Judge Marutollo's language in granting her request, show language and meaning that are identical. This can lead an independent observer to make an inference of complicity and collusion.

Ms. Ehrlich's conclusions that are adopted by Magistrate Judge Marutollo are nonsensical and false. They both claim my case has no value, and is a waste of time and resources. Ehrlich adds that this Court has consistently dismissed all cases exactly like mine. This is easily refuted by current cases in this court, namely Hill v The Department of Education 24-cv-3506-RPK-LB; Mumin v The City of New York et al., 23-cv-03932 (JLR) S.D.N.Y.; Hernandez v. The Richmond County District Attorney, et al., 24-CV-05790 (BMC); Masciarelli v New York City Department of Education, just to state a few out of many. In Ayana Mumin's case, a religious accommodation request was made similar to mine, and Ms. Ehrlich's Motion To Dismiss was denied 9/25/2025.

The circumstances surrounding Defendants' Motion for Extension of Time (ECF No. 34), filed by Mr. Arko, reasonably gave rise to my concern. At the time, Defendants were already out of compliance with deadlines, yet the Court granted their request without affording me the same consideration in parallel situations. This unequal treatment, combined with repeated leniency toward Defendants' missed deadlines and procedural errors, has contributed to the appearance of bias.

Furthermore, Defendants' argument that they "cannot identify any evidence" of ex parte communication misstates my point. I am not in a position to obtain private communications between the Court and counsel; rather, I am entitled to raise concerns when the Court's rulings, viewed together, create an appearance of partiality.

Accordingly, Defendants' attempt to dismiss my concerns overlooks the legal standard. My argument is grounded in the perception of fairness under § 455(a), and the record reflects repeated procedural advantages afforded to Defendants that reasonably call impartiality into question.

7

**Clarification on Defendant Rodi**

I respectfully write to request clarification regarding the representation status of Defendant Katherine Rodi. On April 10, 2025, and in subsequent filings, the case caption and docket entries include Ms. Rodi as a named Defendant. However, in multiple correspondences and filings, defense counsel Ilona Ehrlich identifies her representation as limited to the New York City Department of Education and former Chancellor David Banks, without expressly referencing Ms. Rodi.

This inconsistency raises concerns because Judge Marutollo's Individual Practices provide that *"any attorney appearing before the Court must first enter a notice of appearance on ECF"* (**Individual Practices § III.A**).  Likewise, **EDNY Local Civil Rule 1.3(c)** recognizes counsel of record only when a Notice of Appearance has been filed or when counsel has signed pleadings on behalf of the party. **Local Civil Rule 1.4** further provides that once counsel appears for a party, withdrawal is permitted only by court order. Accordingly, I respectfully request that the Court direct defense counsel to clarify whether she represents Defendant Katherine Rodi in this action, so that the record is clear, and service obligations are properly observed.

On September 12, 2025, I emailed Ms. Ehrlich to include clarification as to whether she represents Ms. Rodi in our joint status report , but she felt it was "inappropriate" and has not provided me with a response.

**City Law Dep't Attorney Ehrlich's claim to inability to upload to PACER:**  While Exhibits E and F confirm that defense counsel was receiving *bundled daily ECF notifications* instead of real-time alerts, this does not excuse Ms. Ehrlich's repeated failure to comply with Court orders. Counsel admits she received notice of the September 15 Order on September 16—after the proof-of-service deadline had passed—but she still could have complied promptly on September 16 once she became aware of the directive. Likewise, she claimed she received notice of the September 18 Orders on September 19—after the 5:00 p.m. September 18 deadline had passed—but again could have responded promptly that morning. Instead, she waited until exactly 5:00 p.m. on September 22 to send Plaintiff documents by email, claiming she was unable to upload them to PACER due to technical issues. However, at 4:23 p.m. on September 19, Plaintiff received an email from Ms. Ehrlich attaching copies of the Court's Orders, dated September 15, 2025, and September 18, 2025, AND the complete PACER Docket!

Additionally, on September 15, 2025 Ms. Ehrlich uploaded to PACER a Notice of Appearance and a Letter Motion for Extension of Time to File Response/Reply to the Complaint in the case Kastner v City of New York, 25-cv-04495; and on September 18, 2025 Ms. Ehrlich, as the counsel of record in the case Caron Davis v New York City Health and Hospitals Corporation, 24-cv-03745 (ER), S.D.N.Y., uploaded to PACER a Letter Motion in Response to Amended Complaint. It seems that Ms. Ehrlich might have made a false statement to Magistrate Judge Marutollo about not having access to PACER during this time. I would certainly like to have her clarify what she meant when she did not obey the Order of the Magistrate Judge.

This sequence demonstrates not a lack of notice, but a lack of diligence in monitoring the docket and timely complying with this Court's clear instructions. I do not believe her statement that the City Law Department could not access PACER. Attorneys of record have an affirmative obligation to check the docket directly; reliance on daily summary emails cannot constitute good cause for repeated violations of Court-ordered deadlines.

Finally, on July 29 2025 Ms. Ehrlich filed a Motion To Stay Discovery, wherein she wrote: "Plaintiff's Complaint alleges no viable claims, and **all claims will be dismissed for both procedural and substantive reasons.** Plaintiff's claims are either time-barred or rely on theories that have been continuously rejected by Courts of this Circuit. Plaintiff merely alleges a familiar panoply of claims that have been pled and rejected time and time again. [*Emphasis added*]. This statement is improper and false.

As stated above, my case is not similar to other cases suing the City of New York because I am not only claiming a failure to accommodate, which has won in this Court – with Ms. Ehrlich's Motions To Dismiss denied - but also I have been denied due process by being terminated for misconduct by the Defendants who placed a Problem Code on my personnel file without my knowledge or consent, so I could not never again obtain unemployment or a job in New York City.

An underlying theme of Ms. Ehrlich's and Magistrate Judge Marutollo's actions appears to be that as I am pro se, my allegations have no value and to pursue litigation is simply a waste of time and resources.

I have been diligent in my quest for a just end to this case, and intend on continuing in good faith. Please grant my request for Disqualification of Magistrate Judge Marutollo from my case so that there is no continuing harm done without lawful authority in violation of the principles upon which the Court must stand, of fairness and impartiality.

Thank you for your consideration,


/s/Corrine Lynch
Corrine Lynch
Plaintiff Pro Se

9