*** Filed ***
09:30 AM, 17 Apr, 2026
U.S.D.C., Eastern District of New York

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————————— x

CORRINE LYNCH,

                         Plaintiff           **DOCKET NO. 24-cv-7795 (DG) (JAM)**

        -against-

                                                **<u>AMENDED COMPLAINT</u>**
                                                *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK; CITY OF NEW
YORK, and STEVEN BANKS, FIRST DEPUTY
COMMISSIONER and GENERAL COUNSEL,
NYC OFFICE OF LABOR RELATIONS, sued
in his Official Capacity,

                         Defendants

——————————————————————— x

*Pro Se* PLAINTIFF CORRINE LYNCH alleges upon knowledge as to her own facts and upon information and belief as to all other matters:

<u>PRELIMINARY STATEMENT</u>

1. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020).

2. CORRINE LYNCH ("Plaintiff") challenges the implementation of the COVID Vaccine

1

Mandate ("CVM") in New York City and seeks injunctive relief, monetary relief, including past and on- going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected rights pursuant to 42 U.S.C. Section 1983, 1st and 14th Amendments to the United States Constitution, Free Exercise Clause and Establishment Clause under the First Amendment, failure to accommodate, New York State and New York City Human Rights Law (NYSHRL and NYCHRL) and Monell municipal liability.

3. Plaintiff is not challenging the validity of the CVM, but the *as-applied* process used by Defendants under color of law to deprive her of her Constitutional rights ending in her unlawful termination.

4. On September 10, 2021 Arbitrator Martin Scheinman issued an Accommodations Process for DOE employees after the United Federation of Teachers (UFT) and the Department of Education (DOE) reached an impasse. The process detailed in this Award was unconstitutional and discriminatory, allowing Christian Scientists and Jehovah witnesses religious accommodations, and requiring a pastor/religious leader approve the request. **EXHIBIT A** Scheinman Award.

5. In November 2021 this Court found that the procedures and criteria created by Martin Scheinman and used by Defendants for approving or denying CVM accommodations were likely unconstitutional. Yet Defendants did not remediate the harm done for those who were denied, including Plaintiff, under this so-called "accommodation process".

6. Plaintiff is entitled to relief under the Second Circuit's holding in *New Yorkers for Religious Liberty, Inc. v. City of New York* ("NYFRL"), in which the Court held that NYFRL plaintiff Natasha Solon asserted constitutional claims because she was never

2

provided with the remedial "Citywide Panel" review ordered to remedy the harm for the original *Kane* plaintiffs, and thus was only given an opportunity to apply for religious accommodation under the accommodations process already held unconstitutional. This is the same process that Plaintiff was harmed by.

7. Yet Defendants and this Court have stood by the arbitration policy, despite its untenable and unconstitutional procedures. Under *Masterpiece Cakeshop v. Colorado Civil Rights Commission, 138 S.Ct. 1719, 1730 (2018),* failure to disavow discriminatory standards defeats neutrality and triggers strict scrutiny. Plaintiff challenges summary termination, which is barred by law, and contract.

8. Plaintiff is also entitled to relief under the Second Circuit's holding in *Kane v. de Blasio, 19 F.4th 152 (2d Cir. 2021)*, in which the Court held that the criteria in the implementation of the COVID Vaccine Mandate ("CVM") were not neutral or generally applicable and likely violated the First Amendment. The City failed to offer any defense that could justify them under strict scrutiny.

9. This pattern of animus in the administration of religious accommodations in providing religious accommodations should have stopped at this point, and Plaintiff should have been given either the same mask-and-test policy she worked under in 2020-September 2021, or a remote teaching position. Defendants never offered Plaintiff any accommodation of any kind.

10. Plaintiff alleges violations of her fundamental statutory and constitutional rights, seeking declaratory and injunctive relief, as well as reinstatement, nominal, compensatory, actual and punitive damages and other remedies for harms arising from the actions complained of herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff filed timely requests for a religious exemption/accommodation to the DOE via SOLAS (HR database) and to the Appeals Panel headed by Martin Scheinman and his Company, Scheinman Arbitration and Mediation (SAMS).

12. Plaintiff timely filed notices of claim and the DOE and the City failed to adjust them within thirty days.

13. Plaintiff states a cause of action under the Human Rights Laws, both City and State, pursuant to a three-year statute of limitation and continuing wrong doctrine under *Riccardo v. New York City Dep't of Ed., 2016 WL 7106048 *6* [Report and Recommendation] (S.D.N.Y. Dec. 2, 2016), adopted by District Judge for reasons set forth in Report and Recommendation 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017) ("There is no apparent reason to treat [filings with the EEOC or NYSDHR] differently under the one-year statute of limitations that applies to claims against school districts and their officers under the human rights laws.")

## PARTIES

14. Plaintiff Corrine Lynch was a tenured employee of the Department of Education of the City of New York in 2021. She was in good standing as a tenured teacher since 2011. She had an impeccable reputation and record. Plaintiff was a public employee of Defendants within the meaning of an "employee" as defined in New York State Civil Service Law § 75-b(1)(b). Plaintiff lives in Oceanside, N.Y.

15. Defendant the Department of Education of the City of New York ("DOE") has overseen the NYC system of public schools located throughout all five (5) boroughs of the City

4

of New York and been and continues to be a recipient of substantial federal funds, and as such, acts under color of law with its' principal place of business located in 65 Court Street in Brooklyn, New York.

16. Defendant Steven Banks was, at all times relevant herein, the First Deputy Commissioner and General Counsel of the New York City Office of Labor Relations ("OLR"). In that capacity, Banks exercised authority on behalf of the City over the negotiation and administration of the accommodation process applicable to DOE employees under the September 2021 COVID-19 vaccine mandate, including coordinating with various high level City policy makers, arranging policy and strategy with the unions and arbitrators, advising on criteria used at all phases of the DOE religious exemption process, and directing the development of guidance used by officials adjudicating religious accommodation requests. He is sued in his official capacity. OLR, authorized by Executive Order 38 (February 7, 1967) and amended by Executive Order 13 (July 24, 1990),  represents the Mayor in the conduct of all labor relations between the City of New York and labor unions representing employees of the City. The Commissioner serves on behalf of the Mayor as the City's liaison with both labor and management in the private sector. The Commissioner represents the Mayor before the Office of Collective Bargaining in representations and all other matters over which the Office of Collective Bargaining possesses jurisdiction. Additionally, the Commissioner administers the Health Benefits Program, Management Benefits Fund, Employee Assistance Program, Medicare Part B Reimbursement and Pre-Tax Benefits & Citywide Programs including the Deferred Compensation Plan and NYCE IRA.

5

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims arising federal questions under 42 U.S.C. 1983, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Education Law §3020-a (the "tenure law"). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C 1343(2)(4) for claims arising federal questions under 42 U.S.C. 1983.

18. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiff's claims within the original jurisdiction of this Court that they form part of the same case or controversy. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiff.

19. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 65 Court Street, Brooklyn, N.Y. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## STATEMENT OF RELEVANT FACTS

20. This action seeks recovery of monetary damages for the violation of Plaintiff's protected property and liberty interests without a meaningful opportunity to challenge Defendants' actions enshrined in Federal Statute and state law protecting the rights of Plaintiff, a

6

tenured employee, who was employed in public service in New York State until February 2022.

21. In 2020 the scientific community began writing about the inefficiency and dangerous side effects of the COVID Vaccine. But New York City shut down entirely, and any restaurants or public places that stayed open were punished. Teachers remained at home, teaching remotely from March 2020 to September 2021. On June 23, 2021, a year and a half in to the pandemic, Governor Cuomo announced that the pandemic emergency was officially over in New York State. The virus had mutated by that time to become more mild, there were far fewer deaths and hospitalizations, and the crisis had stabilized dramatically. By the end of July 2021, the scientific consensus among world public health leaders coalesced around three facts: vaccinated people could still catch and spread Covid-19; herd immunity could not be achieved through vaccination for this disease; and any vaccine protection waned significantly in a few weeks. All this information was ignored by Defendants, who proceeded with their pandemic panic plan.

22. On August 5, 2021 CDC Director Rochelle Walensky said on national TV that the vaccines could not stop transmission of Covid-19.( Blitzer, W. (2021, August 5) Transcript: Interview with CDC Director Dr. Walensky. The Situation Room, CNN. http://www.cnn.com/TRANSCRIPTS/2108/05/sitroom.02.html .

23. In 2021 national media and TV news reported that scientists and doctors did not believe that COVID vaccines stopped transmission of the COVID virus, and that natural immunity was more powerful than any vaccine. They spoke out against any mandate to vaccinate. See **Declaration of Jayanta Bhattacharya** https://www.documentcloud.org/documents/22125801-bhattacharya-declaration/;

7

**The Man Who Talked Back: Jay Bhattacharya On The Fight Against COVID Lockdowns** at https://www.hoover.org/research/man-who-talked-back-jay-bhattacharya-fight-against-covid-lockdowns.

24. While this case challenges Defendant's deprivation of Plaintiffs' due process in the manner in which the COVID Mandate was implemented, not the Mandate itself, it is worth noting the decision of Judge Gerard J. Neri in the case Medical Professionals For Informed Consent et al., v Mary T. Bassett, Index. No. 008575/2022:

> "Arbitrary action is without sound basis in reason and is generally taken without regard to the Respondents acknowledge then-current COVID-19 shots do not prevent transmission (see Summary of Assessment of Public Comment, NYSCEF Doc. No.7, p. 25). The Mandate defines, in the loosest meaning of the word, "fully vaccinated" as determined by the Department in accordance with applicable federal guidelines and recommendations" (ibid). "[I]t is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (Gawron v. Town of Cheektowaga, 117 A.D.3d 1410, 1412 [Fourth Dept. 2014], citing Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577,583 [1998]). A term which is defined at the whim of an entity, subject to change without a moment's notice contains all the hallmarks of "absurdity" and is no definition at all. In the alternative, the Court finds the Mandate is arbitrary and capricious."

25. This widespread anti-CVM media message was not convenient for New York City and the Defendants, so they doubled down on trashing all who dared challenge their removal from employment because they would not, could not, or did not get the vaccine.

26. In this case, Plaintiff lost her career, health insurance, union membership and salary based upon nothing other than Defendants' animus toward her for standing firm on her religious beliefs that forbid her from being vaccinated against COVID.

27. Defendants have not presented a single fact or any proof of the criteria needed to get an exemption/accommodation, or what their "undue burden" really is.

28. This case also involves extensive evidence of religious discrimination that exceeds the

8

scope of the prior decision in Kane or NYFRL, leading to strict scrutiny and relief under multiple causes of action, and establishing municipal liability against the City and DOE, as well as Defendant Steven Banks.

29. Banks spear-headed the denial procedure and made sure that everyone who applied was denied. Indeed, newly discovered evidence on March 19, 2026 proves that Defendants deliberately focused on making sure that almost all who applied for religious accommodations were denied, as part of a biased and arbitrary scheme to remove these alleged miscreants charged with misconduct and problem-coded, from City payrolls. See **EXHIBIT B**, MEMO-UFT Accommodations Process.

30. Defendant Banks started the email chain on September 20, 2021, and advised his team to quickly nullify any claim to a religious exemption/accommodation that was based on, or mentioned, fetal cells. His – and the City's – intent was clear: remove anyone as insubordinate who could not, would not, or did not get vaccinated from the DOE Galaxy budget. Religious accommodations were, he wrote, "BS".

31. As instructed by Steven Banks, Jay Varma, Jackie Bray, DOH Commissioner David Chokshi and other City officials produced a letter which framed whole categories of sincere religious beliefs as "BS," and instructed arbitrators employed by Martin Scheinman – Founder, Arbitrator and Mediator of Scheinman Arbitration and Mediation Services (SAMS) - to reject religious objections grounded in concerns about aborted fetal cell lines and beliefs brought by Catholics and others whose religious leaders advised vaccination— not on scientific grounds, but by invoking the City's own interpretation of Catholic and other religious doctrine, after officials acknowledged they could not refute the objection scientifically.

9

32. The emails show this was deliberate. One senior official warned the group that the guidance and categorical denial of certain faiths, and abortion-based beliefs, "will absolutely be subject to litigation." She nonetheless surmised the letter would "go far" in assisting the City with their scheme to discriminate against whole categories of religion. So, the unlawful termination of Plaintiff was, using the words of Steven Banks in Ex. B, "BS".

33. Defendants also made sure that any employee of the Department of Education (DOE), including Plaintiff, was given a "Problem Code" at the same time that they were suspended from pay (LWOP, **EXHIBIT C**) in order to block any and all former employees from getting rehired by the DOE or any vendor. Health insurance was terminated as well as membership in the employee's respective Union. Plaintiff was not given Notice of any of this. In fact, she did not hear about the Problem Code on her file until April 2022, when an email from DOE employee Eric Amato was made public along with the Declaration of Betsy Combier, filed in the case of *Kane v. De Blasio, 19 F.4th 152 (2nd Cir. 2021)*. These actions by Defendants are vindictive and punitive, and do not belong in public policy decisions. See **EXHIBIT D** Problem Code Documents.

34. By placing Plaintiff's fingerprints into a "problem code" or no-hire database, the forced leave/suspension without pay "LWOP" became a disciplinary action, with a charge of misconduct/insubordination due to Plaintiff holding onto her religious beliefs and refusing the vaccine.

35. This charging of Plaintiff places her case squarely under the jurisdiction of the Tenure Law and Civil Service Law 75-b. Plaintiff could not be terminated without a hearing, and her job was protected. Defendants neglected to address this issue in the unlawful

10

implementation of the Mandates, which never mention termination.

36. Plaintiff Lynch was blocked from submitting an accommodations appeal to the Citywide Panel, therefore was put into LWOP, problem-coded, and denied her salary and job, after she followed the steps in an unconstitutional accommodations procedure which Defendants never rectified by reinstatement, back pay, and other relief. **EXHIBIT E** Error Message.

37. A forced leave ("LWOP") or suspension without pay is retaliatory discrimination, according to the U.S. Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006).* Justice Breyer delivered the opinion of the Court:

> Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).

38. The unconstitutional retaliatory discrimination procedures established by Defendants against Plaintiff shows that Defendants proposed, adopted, enforced and encouraged certain religious beliefs to be accommodated while other religions were categorically excluded from the possibility of accommodation. No facts were given as to the criteria for determining who received the accommodation and who did not. Plaintiff did not, and was never told why she was denied except that any approval would cause Defendants an alleged "undue burden".

39. This process that crushed Plaintiff and her career was simply pretext for religious discrimination.

40. A municipality – the City of New York - is liable when the facts of a matter show a constitutional violation resulting from an official policy, custom, or practice where

11

Defendants (1) discriminated against Plaintiff based on her religious beliefs; (2) wrongfully forced Plaintiff into a suspension without pay and then terminated her, a tenured teacher, by circumventing public policy and placing unconstitutional conditions on employment, due process laws, and the property and liberty rights of the Tenure statute. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

41. Despite giving religious-based accommodations to other tenured employees similarly situated, and placing many unvaccinated employees on reassignment ("rubber rooms") in Defendants' district offices or at home on full salary, Defendants, acting at all times under color of law, did not grant Plaintiff's religious exemption/accommodation request ("RA") or offer any accommodation whatsoever, before terminating her.

42. These actions by Defendants may clearly be defined as disciplinary retaliation, motivated by an intent to harm. Animus infects all levels of implementation.

43. Plaintiff was hired as a teacher by the New York City Department of Education ("DOE") in 2011. Plaintiff has earned tenure and all the Constitutional protections to her property and liberty rights pursuant to N.Y. Education Law Sections §§3020 and 3020-a of the New York State Education Law. **EXHIBIT F**: Rights of Tenured Teachers

44. On August 24, 2021, DOHMH Commissioner Chokshi imposed the first version of a COVID-19 vaccination mandate (the "CVM") for all employees in the City school district, which required all DOE staff, City employees, and contractors who "work in-person in a DOE school setting or DOE building" and others in City schools to – no later than September 27, 2021 – provide proof that they have at least received the first dose of a vaccine.( Order of the Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination For Department of Education Employees, Contractors, and Others, NEW

12

YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE (Aug. 24, 2021), https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe.pdf.

45. The Mandate was amended twice: on September 15, 2021 to provide for reasonable accommodations, (https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-2.pdf; "¶6. Nothing in this Order shall be construed to prohibit any reasonable accommodations otherwise required by law."); and on September 28, 2021 to change the compliance deadline to October 1, 2021 (https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf).

46. On September 10, 2021, after expedited mediation and then binding arbitration between the UFT, the City and DOE, over the span of some 18 days, Arbitrator Scheinman issued an award concerning pay and personnel policies related to the implementation of the Mandate.

47. The Scheinman Award (EX. A) generally provides, as relevant here, that:

(a) Employees had until November 30, 2021 to elect to either (1) separate from service with incentives or (2) remain on an extended unpaid leave through September 5, 2022 with health benefits and the ability to return if vaccinated or the mandate is lifted.

(b) If an unvaccinated employee did not select either of these options by the November 30, 2021 deadline, as of December 1, 2021, the City employers "shall *seek to* unilaterally separate employees who have not opted" to either separate from service or remain on an unpaid leave. However, all parties reserved their existing rights in this regard, as the Awards explicitly state: "except for the express provisions contained, herein, all parties retain all legal rights at all times relevant, herein." (EX A, pp. 17-18).

13

48. Arbitrator Martin Scheinman created a lawless Leave Without Pay ("LWOP") that involuntarily removed all Department employees from their jobs if they did not submit a COVID vaccination card to the Department by October 4, 2021.(EX C LWOP). This alleged "policy" never changed the terms of Plaintiff's tenured employment status, although claiming to do so. The Award did not provide for any policy related to termination, because those procedures remain *unchanged.* (emphasis added). Moreover, the Award does not determine that the DOE has a right to summarily terminate unvaccinated employees who have not selected from the personnel policies available to them by November 30, 2021. Rather, the Award states that City employers can *"seek to"* terminate those employees, which they have now done in an impermissible manner, given the Awards' explicit reservation of rights.

49. In an AFFIRMATION dated February 8, 2022, UFT General Counsel Beth Norton wrote,

> "Approximately 240 UFT-represented DOE employees continue to work for the DOE remotely without being vaccinated for COVID-19, having received a medical exemption or a religious accommodation. The DOE has advised that some of these employees will be directed to work in-person at non-school facilities later this month, which is permissible under the Mandate.
> From August 23, 2021 through at least November 22, 2021, the DOE sent numerous emails to staff regarding the vaccine mandate and consequences of an employee's failure to comply with the DOE Mandate. None of the email communications indicate, or even mention, that unvaccinated UFT members will be subject to summary termination without regard to due process rights.
> Since the order in <u>Kane</u> was issued, many UFT members have advised the UFT that they were deterred from filing an application for accommodation under the original narrow parameters because they knew they would be denied. Others applied and were deterred from appealing on the same basis. Indeed, by communicating the narrow parameters the DOE hoped to cut down on applications that it did not intend to grant.
> While the DOE has begun denying these post-<u>Kane</u> applications at the agency level, they are not permitting those employees to appeal, as others were able. Now, some of these employees – who are subject to the same unconstitutional procedures rejected by the Second Circuit – are among those who received notices earlier this week that they will be summarily terminated effective February 11, 2022. By placing these individuals on the termination list before some of their initial applications have been determined, the DOE demonstrates that they will be summarily denied, just as the DOE is seeking to

14

summarily terminate them……
Before the most drastic action of termination, UFT members are entitled to access to the due process protections embodied in statutes and agreements the DOE is compelled to follow. To hold otherwise would dismantle the statutory and contractual due process procedures afforded to UFT members as public employees…….Tenured pedagogues such as classroom teachers, guidance counselors, school secretaries, school social workers, and school psychologists, can only be disciplined after an Education Law § 3020-a due process hearing before a neutral hearing officer. See Education Law 3020-a; Article 21 of the Classroom Teacher CBA….. Therefore, the DOE's attempt to summarily terminate unvaccinated employees denies UFT-represented DOE employees the rights they are *guaranteed* by statute and contract prior to adverse employment action."

*The New York City Municipal Labor Committee et al., v The City of New York et al., Index. No. 151169/2022, Doc. No. 30.*

50. Defendants ignored this due process claim and Plaintiff received no hearing or accommodation. Defendants forced illegal summary termination of Plaintiff by employer fiat.

51. In the case of Matthew T. Murphy v New York Police Department and City of New York, (23-cv-11235), the Court found that Murphy sufficiently pled a disparate treatment claim on a theory of his employer's failure to accommodate his religious beliefs which conflicted with an employment requirement. The Court found that he had told his employer about his beliefs, and he was disciplined with termination for his failure to comply with the conflicting employment requirement. Here, Defendants added a problem code that was undeserved to Plaintiff's file and fingerprints as further punishment.

52. Indeed, the Mandates neither speak to employment decisions nor establish COVID-19 vaccination as one of the few "conditions" or "qualifications" of employment exempt from statutory and contractual disciplinary procedures. DOHMH administrative orders (Mandates) cannot decree exemptions from statutory procedures. That can only be done through a legislative process.

15

53. Defendants created a fundamental constitutional problem: the arbitration policy required accommodation if religious beliefs qualified under the discriminatory standard (in which case employees "shall remain on payroll" regardless of hardship), while the Citywide Panel routinely denied similarly situated employees on alleged "undue hardship" grounds. The only difference was whether the employees' beliefs qualified under the discriminatory arbitration standards. Defendants made sure that almost no one did qualify.

54. While Plaintiff and other City workers – except a few hundred given accommodations for some unknown reason – the City rewarded exemptions to professional athletes, performing artists, and those "accompanying" them from vaccination requirements.  Many of the now-exempt earn millions of dollars a year.  This is in sharp contrast to  unvaccinated (now-terminated) UFT members similarly situated to Plaintiff.  See Executive Order 62, https://www.cbsnews.com/newyork/live-updates/eric-adams-vaccine-mandate-pro-athletes-performers-kyrie-irving/

55. Plaintiff has not become vaccinated with a COVID-19 vaccine because she holds sincere religious beliefs that prohibit her from getting vaccinated. See **EXHIBIT G**, Application for Religious exemption/accommodation (RA); **EXHIBIT G(1).** Religious Statement; and **EXHIBIT G(2)** Letter from Cliff Kretkowski. Plaintiff followed the guidelines given to her in the Scheinman Award.

56. On September 25, 2021 Plaintiff was denied her RA by Defendants because she failed to meet "the criteria" for a religious accommodation, and no other worksite could be offered, as this would be an undue hardship. **EXHIBIT G(3); EXHIBIT G(4)** Termination.

57. On November 30, 2021, Plaintiff, without a salary and with no health insurance due to

16

LWOP nonetheless wrote the Department of Education an email saying she would not waive her protected rights. **EXHIBIT H.**

58. In October- November 2021 no one knew that the DOE was secretly denying all religious appeals without reviewing any of them. In May, 2025, the Deposition of Katherine Rodi, was made public by Attorney Austen Graff. In her Deposition, Ms. Rodi testified that she was Director of a "General Committee" where she and her teammates denied all requests for religious accommodations *without review* that were submitted to the DOE through SOLAS. See Masciarelli v NYC Department of Education, 22-cv-7553, Dkt. 76-1.

59. On November 28, 2021 the Court of Appeals threw out the Scheinman Appeals Process and Award because it was "constitutionally suspect". **EXHIBIT I.** Court of Appeals.

60. In a letter to this Court dated July 7, 2022 in Broecker et al. v New York City Department of Education et al Docket No. 21-CV-06387-KAM-LB: Attorney Austin Graff cited Scheinman for violating Department employees' rights:

In Scheinman's June 27 Award Scheinman wrote:

"... While the Department claims its action is unconnected with the Award, it is the Award itself that created a new leave without pay. Absent the Award, the Department was without the authority to remove these employees from the payroll without providing a due process hearing.
Leave without pay is an unusual outcome. Yet, I decided it was appropriate for employees whose requests for a medical or religious exemption were denied. This is because such employees intentionally decided to disregard the mandate they be vaccinated by September 27, 2021, the date established by Commissioner Chokshi and Mayor de Blasio."

Graff adds:
"First, Scheinman's words establish that but-for the Award, the NYCDOE could not have placed the Plaintiff on leave without pay. As Plaintiff argued in opposition to the Defendants' Motions, the Award was a violation of N.Y. Civil Service Law § 209.3.(f) and the numerous cases that have interpreted the statute, including a case from the New York Court of Appeals and numerous opinions issued by PERB. Therefore, if the Court

17

finds that the Award violated N.Y. Civil Service Law § 209.3.(f), as the Plaintiff argue, then the NYCDOE did not have any authority to place the Plaintiff on leave without pay without due process, thereby violating the Plaintiff' due process rights. Scheinman's words are additional evidence that the Plaintiff have stated a plausible claim against the NYCDOE for a violation of 42 U.S.C. § 1983 meaning the NYCDOE's Motion to Dismiss should be denied.

Second, it was Scheinman who "created a new leave without pay" by issuing the Award. Scheinrnan establishes, by his own words, that he actively participated in the violation of the Plaintiff' due process rights by "creat[ing] a new leave without pay" policy. Scheinman was not acting like an arbitrator who interpreted a contract or acted like an umpire in a dispute between the NYCDOE and the United Federation of Teachers ("UFT"), but actively created new policy that, as Scheinman admits, but-for his Award, "the Department was without the authority to remove these employees from the payroll without providing a due process hearing….. admitting that his actions caused the Plaintiff to "suffer[] a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239,245 (2d Cir. 1998)."

61. On or about April 28, 2022 Plaintiff was informed that the DOE's Office of Personnel Investigations ("OPI") had placed her personnel file and fingerprints on the "Problem Code" database in October, 2021, meaning that she would not be able to work in any position for the NYC DOE or any vendor because she was deemed guilty of misconduct/insubordination. Plaintiff was blocked from getting paid by the NYC DOE or any vendor. Karen King at the UFT confirmed this action, and two Declarations were filed in the Kane v DeBlasio and  Keil v City of New York federal cases. EX.D., Problem Code documents.

62. On February 10, 2023 Mayor Adams ended the COVID-19 vaccine mandate and made it voluntary. Yet no one at the DOE told Plaintiff she could re-apply for her job.  When she did try to get reinstated, she was told that she could not work for the DOE or any vendor because she was on the Problem Code.   **EXHIBIT J** Email re Problem Code.

63. Plaintiff was found guilty of misconduct without knowing she had been charged with anything, denied a full and fair hearing, then terminated for her religious beliefs.

18

Fairness requires the opposite – charges, hearing, found guilty, terminated. The misconduct charge was placed on Plaintiff's personnel file on October 4, 2021. Secretly. Plaintiff did not know anything about this until after April, 2022. Plaintiff saw proof of this fraudulent charging process when other teachers were denied unemployment benefits and made their denial of benefits public. The denial was based upon termination due to "misconduct", solely due to the fact that they, like Plaintiff, held sincere religious beliefs prohibiting getting vaccinated.

64. Plaintiff was denied any meaningful opportunity to be heard and given no accommodation whatsoever, despite the fact that the DOE has hundreds of employees throughout the City that either got the exemption from getting the vaccine or they were placed into a reassignment location at home. (**EXHIBIT K**) In addition to these many DOE employees, school bus drivers, and school delivery people were given exemptions by the Mayor. Later, in March 2022, volunteers and Broadway actors as well as sports players were excluded from having to take the COVID Vaccine under the Mandate ("CVM"). See ¶55.

65. The chaotic mess of the explosion of inequalities of law and vaccinations continue today. The New York Post highlighted the hundreds of employees who were getting exemptions:

**City Grants Vaccine Mandate Exemptions For Hundreds Of Public School Employees**

https://gothamist.com/news/city-grants-vaccine-mandate-exemptions-hundreds-public-school-employees; Gothamist, Sept. 24, 2021. Plaintiff was denied, reason unclear.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR RELIGIOUS DISCRIMINATION

19

66. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 65 as if the same were fully set forth at length herein.

67. Plaintiff submitted to Defendants in September 2021 a statement on her sincere religious beliefs which forbade her from getting vaccinated with the COVID-19 vaccine. She was denied, yet other teachers similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

68. The chaos caused by the discrimination of the DOE in the implementation of the COVID mandate is profound, and burdened both the Free Exercise Clause and the Establishment Clause of the Constitution, probably for years to come.

69. In this case, the two most visible signposts of religious discrimination are (1) the continuing wrong of aligning the accommodation process with a vacuous argument that any remote classroom or other such reassignment would be an "undue burden" and no review of any religious accommodation request was necessary; and (2) once the vaccine was declared voluntary and found to be ineffective, no reinstatement or restitution was made available.

70. Starting in 2020 the scientific community started publicly denying the value of the COVID vaccine in terms of stopping the transmission of the virus, or protecting the children in public schools against infection. Yet when the CVM ended and the City made vaccination voluntary in February 2023, Plaintiff was not reinstated, nor was she taken off the Problem Code

71. Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

72. Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore

20

these beliefs, forced her into a suspension without pay, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. …..

> Further, a hardship that is attributable to employee animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

73. Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce her to choose to relinquish her protected beliefs in order to submit to an experimental vaccine, and then punished her for not agreeing to this extortion and discrimination.

74. A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government. Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.

75. All such discrimination practices were used by Defendants against Plaintiff. This violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject

21

to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

76. Plaintiff's unemployment and her unvaccinated status led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated. See: **NYC teachers with vaccine exemptions are being treated like pariahs,** https://nypost.com/2022/03/05/nyc-teachers-with-vaccine-exemptions-treated-like-outcasts/

77. In the new category of "insubordinate employee" and "unvaccinated", Plaintiff was not only removed unfairly and without due process from her job, but ostracized and humiliated by her peers both inside and outside of the workplace. She was discriminated against because of her religious beliefs. RF received an accommodation for his religious beliefs, and was appointed "Principal" at St. Brigid's School where there were 90 seats for unvaccinated DOE employees. All, including RF, remained on salary throughout the lock down, and returned to his job as Assistant Principal in 2023. See **EXHIBIT K.** Why RF received an accommodation and Plaintiff did not is unknown.

78. Defendants started with suspension without pay, then secretly charged Plaintiff with misconduct/insubordination, falsely informed her that they had changed the terms of her employment when no change took place, flagged her files with a "Problem Code" without her knowledge or consent, and never gave her a hearing where she could clarify and particularize her reasons for not getting the COVID vaccination.

79. At all relevant times, the City had full discretion to repeal, amend, carve-out or pause any aspect of the Mandates and appeal procedures, or repeal them altogether. Yet despite

22

mounting evidence that the Mandates were unnecessary, and knowledge that Plaintiff and thousands of others needed religious accommodation, the City did not amend any of the temporary "emergency" policies to provide relief. And when they did announce possible reinstatement in 2023 and again in 2025, no one was reinstated who had been wrongfully terminated.

80. Instead, Defendant City of New York and the DOE exercised their discretion to continue to renew the "emergency" mandate every 30 days well beyond when there was any rational justification for it.

81. On March 7, 2022, Mayor Adams and Commissioner Chokshi held a press conference, each noting how low the transmission rate was in the City, yet changed no one's status if terminated. The people stayed terminated.

82. Based on the foregoing, Defendants under color of law subjected Plaintiff to discrimination on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of her Constitutional rights to property and liberty, without a meaningful opportunity to be heard, 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR RETALIATION

83. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 82 as if the same were fully set forth at length herein.

84. In October 2021 Defendants changed the course of Plaintiff's life and career by placing her on an involuntary forced leave without pay (LWOP) because she requested a religious

23

exemption/accommodation request to remain working while unvaccinated.

85. Plaintiff at that time had been masking and testing, while working in the school performing her excellent and professional service to the children. There is no reason other than religious discrimination for Plaintiff to have been terminated. In Garvey c City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his decision:

> "Though vaccination should be encouraged, public employees should not have been terminated for their non-compliance….The Health Commissioner cannot create a new condition of employment for City employees. The Mayor cannot exempt certain employees from these orders. Executive Order 62 renders all of these vaccine mandates arbitrary and capricious….prohibit an employee from reporting to work."

86. Plaintiff presented a sincere religious belief to SOLAS, the DOE database, and was denied due to the fact alleged by Defendants that she would cause an undue burden. The undue burden in substance remained a mystery.

87. It is well-known that tenured teachers have a contract. The CBA for teachers such as Plaintiff details the process for a Leave. See *Laura Campbell-Lui v. New York City Department of Education et al, Index No.* 153518/19*, doc. 14, p.125:*

> "Teachers may be granted a leave of absence without pay of up to two years to adjust personal affairs (such as the winding up of a family business on the death or incapacitation of the family member in charge) in accordance with existing rules and regulations.  The teacher may consult with the Union with respect to the matter. Teachers who are denied such a leave may refer the matter to the Chief Executive of the Division of Human Resources for review and final determination."

88. In other words, the leave without pay is requested by the employee, it is not forced on the employee. There is actually no forced leave without pay unless you look at "suspension without pay", which is a disciplinary punishment after a misconduct charge is served on a teacher in preparation for a hearing:

> "5. **Serious Misconduct**
> The parties agree that certain types of alleged misconduct are so serious that the

24

employee should be suspended without pay pending the outcome of the disciplinary process.  Serious misconduct shall be defined as actions that would constitute: ☐ the felony sale, possession, or use of marijuana, a controlled substance, or a precursor of a controlled substance or drug paraphernalia as defined in Article 220 or 221 of the Penal Law; or ☐ any crime involving physical abuse of a minor or student (crimes involving sexual abuse of a minor or student are addressed in paragraph 6 below); or ☐ any felony committed either on school property or while in the performance of teaching duties; or ☐ any felony involving firearms as defined in Article 265 of the Penal Law; or ☐ actions that would constitute a class A-I or A-II felony or any felony defined as a violent felony offense in NY Penal Law § 70.02. If an employee is accused of committing serious misconduct, the employee shall be removed from payroll for a term not to exceed two (2) months after a finding by the "probable cause arbitrator" that there is probable cause to believe that the actions alleged were committed by the employee and that they constitute "serious misconduct" as defined above.  Probable cause exists when evidence or information which appears reliable discloses facts or circumstances making it likely that such conduct occurred and that such person committed the conduct.  To establish probable cause, the investigator assigned to the matter must be present and testify under oath before the arbitrator.  The Board may also be required to produce signed statements from the victim or witnesses, if any…."

CBA, p. 156, **ARTICLE TWENTY-ONE DUE PROCESS AND REVIEW PROCEDURES**

89. Martin Scheinman's LWOP, supported by Defendants to the present day, was  made up out of whole cloth and is not in any Union contract in its' alleged form in 2021 (EX. C) connected to the COVID vaccine.

90. The U.S. Supreme Court has ruled that the actions of Defendants in forcing employees into leave without pay,  is retaliatory discrimination in *Burlington Northern and Santa Fe Railway Company, 548 US 53 (2006)* ("that White suffered retaliatory discrimination when she was reassigned to less desirable duties and suspended without pay"). Justice Breyer delivered the opinion of the Court:

  " Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." Pub. L. 88–352, §704, 78 Stat. 257, as amended, 42 U. S. C. §2000e–2(a). A separate section of the Act—its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. §2000e–3(a).
    The Courts of Appeals have come to different conclusions about the scope of the Act's

25

anti-retaliation provision, particularly the reach of its phrase "discriminate against." Does that provision confine actionable retaliation to activity that affects the terms and conditions of employment? And how harmful must the adverse actions be to fall within its scope?

We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

91. But for the approval of the denial of protected rights by the Defendants, Plaintiff was maliciously and in bad faith harassed into involuntarily leaving her job. The punishment was severe, due to the sudden loss of not only her salary, but health insurance at the exact moment she needed it most, and Union membership so she could not grieve the violation of the bargained for rights in her contract, without any hearing on the grounds for the misconduct charge. Plaintiff was also permanently placed on a Problem Code.

92. After Plaintiff was removed from salary she was warned that if she did not give up her right to sue the DOE, she could not be returned to work nor keep her health benefits. (EX. C)

93. All these actions are retaliatory discrimination, part of a "punish without proof" procedure and "you better do what we say you must do, get vaccinated, or you will be sorry".

94. Defendants' deliberate targets were employees similarly situated as the Plaintiff here, who had high salaries and – worst of all – tenure. Tenure is public policy in New York State and gives, by law, protected property and liberty rights to those employees who earn this status. Defendants never liked this policy. Defendants wanted – and succeeded – in fraudulently harassing and discriminating against Plaintiff to get them out of their positions quickly without due process. Their procedure, namely allowing Martin Scheinman to hold hearings where everyone would be denied their appeal, worked. Until November 28, 2021, when his

26

procedure was declared unconstitutional.

95. The MEMO-UFT Accommodation Procedure (EXHIBIT B) shows the animus and retaliatory discrimination that the process detailed in this case shows at every step. From the start, the City, DOE and Steven Banks all wanted any employee who submitted a religious accommodation request to be denied, terminated, removed from salary. Banks called religious beliefs against getting the COVID vaccine "BS". From this statement, Banks seemed to believe that all teachers who claimed a sincere religious belief in order to remain unvaccinated were basically lying.

96. The denial of any hearing is also in this mix of voices which created the retaliatory discrimination. Defendants insist that the implementation of the CVM was never disciplinary, because Martin Scheinman said so in his September 10, 2021 Award. The laws of New York City and State refute this. In addition to the case cited above, *Burlington v White,* there is the decision of the Third Appellate Division and the Court of Appeals in the matter of *Kilduff v. Rochester City School District*, 107 A.D.3d 1536, 966 N.Y.S.2d 708 (N.Y. Ct. App. 2013):

> "We agree with petitioner that respondents failed to comply with the requirements of Education Law § 3020 (1) when they disciplined petitioner without affording her a hearing pursuant to Education Law § 3020-a….. (see generally Matter of Winter v Board of Educ. for Rhinebeck Cent. School Dist., 79 NY2d 1, 9 [1992], rearg denied 79 NY2d 978 [1992]; Matter of Diggins v Honeoye Falls-Lima Cent. School Dist., 50 AD3d 1473, 1474 [2008]). Present — Smith, J.P., Fahey, Carni, Sconiers and Whalen, JJ."

97. This decision was affirmed by the Court of Appeals in Matter of Kilduff v Rochester City Sch. Dist., 2014 NY Slip Op 08056 [24 NY3d 505], November 20, 2014.

98. Plaintiff was never given any meaningful opportunity to challenge Defendants' actions. This is part of the retaliation and discrimination. Martin Scheinman's panel denied everyone. So did Katherine Rodi's General Committee. This is retaliation and

discrimination.

99. Defendants placed Plaintiff on the problem code as part of their discrimination and retaliation. On October 4, 2021 Plaintiff's fingerprints were given a flag/code known as a "Problem Code" and placed onto Defendants' Galaxy (budget) database used by the FBI and the Department of Labor Unemployment Board (UIAB). Anyone with the flag or Code on their fingerprints cannot get paid by the Defendants or any of the thousands of vendors working in the City of New York. This scarlet letter is extremely damaging to Plaintiff's career and character. See the following post on Parentadvocates.org:

> "**The New York City Department of Education's "Problem Code" is an Unlawful Flag on an Employee's Fingerprints**"
> https://www.parentadvocates.org/index.cfm?fuseaction=article&articleID=8884

100. The story given by the DOE that the Problem Code is not available to anyone except DOE employees, this is totally false. The Declaration of Betsy Combier shows that, as Ms. Combier never worked for the DOE and was able to tell employees whether or not they were on the Code, when asked. The Code is accessible by government agencies and principals, and UFT Representatives, among others. The label means that the individual has committed misconduct and was found guilty.

101. Based on the foregoing, Defendants retaliated against Plaintiff for engaging in protected activity, including requesting a religious accommodation and refusing to relinquish her rights, in violation of 42 U.S.C. § 1983 and applicable state and city human rights laws.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR FAILURE TO REASONABLY ACCOMMODATE
## THE PLAINTIFF'S SINCERELY HELD RELIGIOUS BELIEFS

102. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 101 as if the same were fully set forth at length herein.

28

103.  Plaintiff has sincerely held religious beliefs which forbid her from getting vaccinated with the COVID-19 vaccine.

104.  Defendants had knowledge of Plaintiff's sincerely-held religious beliefs yet chose to ignore these beliefs, denied her exemption request and Appeals based upon an unconstitutional ruling that cited "undue burden" on the Department without any further details or reason, and terminated her employment. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

105.  No reasonable accommodation was offered to Plaintiff yet other employees of the Defendants received accommodations for their religious and/or medical accommodations.

106.  At all relevant times Defendants knew that they had "rubber rooms" and reassignments to home as the new workplace for employees similarly removed from their positions in the Department:

> **New Rubber Rooms Pop Up Throughout NYC To Warehouse Unvaccinated Employees Who have Won medical or Religious Exemptions https://nycrubberroomreporter.blogspot.com/2022/03/new-rubber-rooms-pop-up-throughout-nyc.html**
>
> and "rubber homes"
>
> **Idled NYC educators do nothing but sign in remotely, even from Europe** https://nypost.com/2023/01/14/idled-nyc-educators-do-nothing-but-sign-in-remotely-even-from-europe/ By Susan Edelman, NY POST, Published Jan. 14, 2023

107.  Defendants never engaged in a dialogue about Plaintiff's accommodation or reassignment. This deprivation of a lawful procedure was intentional, acted on under color or law, and pursued in bad faith.

108.  Defendants claimed "undue burden" while simultaneously omitting information of their long-term policy re-assigning employees to "rubber rooms", some of which held about 1-2000+ employees from 2002 until 2010. After 2010 Defendants scattered the re-assigned

employees who could not be near children to rooms throughout New York City. The re-assigned employees not only were not told what they were guilty of, but were awaiting charges of incompetency or misconduct for some act that may never have happened. A problem code was put on these re-assigned employees when they were removed from their classrooms and school. Some remained reassigned to the rubber room for more than 7-15 years. All reassigned personnel received their full salary and benefits while they waited for a hearing unless they were removed from salary at a probable cause hearing. During the pandemic, these re-assigned employees awaited their §3020-a hearings at home.

109. Defendants could have given all the so-called "miscreants" similarly unvaccinated as Plaintiff, a reassignment to home or a rubber room. Defendants chose to claim that no accommodation was available and any accommodation was an "undue burden". This lack of consideration directly contradicts the ruling in Groff. See RF's Religious Statement, **EXHIBIT K**. He was given a religious accommodation.

110. A UFT Press release issued September 10, 2021, the same day as Scheinman's Award, publicly announced that there were many options for non-classroom accommodations within the DOE, as long as you claimed a medical exemption and not a religious accommodation. This makes no sense. **EXHIBIT L**.

111. Plaintiff alleges a sincerely held religious belief; a request for accommodation; an adverse employment action; and Defendants' refusal to provide a reasonable accommodation. These allegations satisfy the pleading standard under EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. 768 (2015).

30

112.  Defendants conducted no individualized assessment and instead adopted a blanket policy categorically denying religious accommodation requests. Such categorical denials violate Title VII as a matter of law.

113.  Based on the foregoing, the NYCDOE failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiff on the basis of her religion, unlawfully discriminating against the Plaintiff in the terms and conditions of her employment on the basis of her religion, in violation of the First Amendment, Free Exercise Clause, and Establishment Clause, contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**FOR MUNICIPAL LIABILITY UNDER SECTION 1983**

114.  Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 113 as if the same were fully set forth at length herein.

115.  Under *§ 1983*, the CITY and DOE may be liable for unconstitutional actions taken by its employees where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the City]'s officers." *Monell v. Dep't of Social Servs., 436 U.S. 658, 690, 98S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*.

116.  To establish a municipal liability (or *Monell*) claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)* (quotation marks omitted); *Agosto, 982 F.3d at 97*.

31

117.  Governments can only be held responsible for the actions of their employees when "their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)*. Therefore, a plaintiff must "demonstrate that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Agosto, 982F.3d at 98* (quoting *Bd. of City Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137L. Ed. 2d 626 (1997)*).

118.  Here, Plaintiff has stated sufficient facts to plead a *Monell* claim, as her complaint challenges an official DOE policy. *Wray, 490 F.3d at 195*.

118A. These policies and practices were reflected in written guidance and internal communications, including EXHIBIT B, and were applied broadly to employees seeking religious accommodations.

119.  Plaintiff includes numerous allegations as to Defendants' actions regarding her termination process, and has sufficiently alleged that the City and DOE and its employees are responsible for the Mandate itself, its' enforcement, and implementation. *See Praprotnik, 485 U.S. at 122*; *Agosto, 982F.3d at 98-99*.

120.  Plaintiff has enough facts to establish a constitutional violation in the implementation of the CVM as-applied to her and to all DOE employees similarly situated.

121. As a direct and proximate result of these policies, customs, and practices, Plaintiff suffered the deprivation of her constitutional rights, including the loss of employment, income, benefits, and professional standing.

### PLAINTIFF DEMANDS A TRIAL BY JURY

**WHEREFORE,** Plaintiff demands judgment against the Defendants for all compensatory,

emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.  Permanently removing the Problem Code from Plaintiff's files;

2.  Awarding Plaintiff all back pay, lost benefits, and compensation from October 2021 through the date of judgment, together with pre-judgment and post-judgment interest;

3.  Granting such other and further relief that the Court deems just and proper.


Dated: April 16, 2026
      Oceanside, N.Y.

          /s/Corrine Lynch
          Corrine Lynch

# Exhibit A


**SCHEINMAN**
ARBITRATION & MEDIATION SERVICES

September 10, 2021

**Via E-Mail Only**
Renee Campion, Commissioner
Steven H. Banks, Esq.
New York City Office of Labor Relations
The Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, NY 10007

Alan M. Klinger, Esq.
Stroock & Stroock & Lavan, L.L.P.
180 Maiden Lane, 33rd Floor
New York, NY 10038

Beth Norton, Esq.
Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, NY 10004

Re:    **Board of Education of the City School District of the City of New York
        and
        United Federation of Teachers, Local 2, AFT, AFL-CIO
        (Impact Bargaining)**

Dear Counsel:

Enclosed please find my Award in the above referenced matter.

Thank you.

Sincerely,

Martin F. Scheinman

MFS/sk
BOE.UFT.Impact Bargaining.awd

322 Main Street ◆ Port Washington, NY 11050 ◆ 516.944.1700 ◆ fax: 516.944.1771 ◆ www.ScheinmanNeutrals.com

Ex 1

Case 1:24-cv-07795-DG-JAM   Document 80   Filed 04/17/26   Page 36 of 117 PageID #: 1051

```
------------------------------------- X
In the Matter of the Arbitration
                                      X
        between
                                      X
BOARD OF EDUCATION OF THE CITY                Re: Impact Bargaining
SCHOOL DISTRICT OF THE CITY OF        X
NEW YORK
                                      X
          "Department"
                                      X
        -and-
                                      X
UNITED FEDERATION OF TEACHERS,
LOCAL 2, AFT, AFL-CIO                  X

          "Union"               .   . X

------------------------------------- X
```

**APPEARANCES**


**For the Department**
   Renee Campion, Commissioner of Labor Relations
   Steven H. Banks, Esq., First Deputy Commissioner
   and General Counsel of Labor Relations




**For the Union**
STROOCK & STROOCK & LAVAN, L.L.P.
    Alan M. Klinger, Esq.



Beth Norton, Esq., UFT General Counsel
Michael Mulgrew, UFT President




**BEFORE:** Martin F. Scheinman, Esq., Arbitrator

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 37 of 117 PageID #: 1052

## BACKGROUND

The Union ("Union" or "UFT") protests the Department of Education's ("Department" or "DOE") failure to reach agreement on the impact of its decision mandating all employees working in Department buildings show proof they started the Covid-19 vaccination protocols by September 27, 2021. The Union contends the Department failed to adequately provide, among other things, for those instances where employees have proof of a serious medical condition making the vaccine a danger to their health, as well as for employees who have a legitimate religious objection to vaccines.

Most of the basic facts are not in dispute.

For those in the New York City ("NYC" or "City") metropolitan area, we are now in the 18th month of the Covid-19 pandemic. During that time, we have seen substantial illness and loss of life. There have been periods of significant improvement and hope, but sadly, we have seen resurgence with the Delta variant. Throughout this period, NYC and its municipal unions have worked collaboratively to provide needed services for the City's 8.8 million residents in as safe an environment as possible. Yet, municipal employees have often borne great risk. The Department and the UFT are no exception. The DOE and the UFT immediately moved to remote instruction and then later a hybrid model of both in-person and remote learning for the 2020-2021 school year. Educators at all levels strove to deliver the best experience possible under strained circumstances. For this

2

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 38 of 117 PageID #: 1053

coming school year, both the DOE and the UFT have endeavored to return, as much as possible, to in-person learning. They have developed protocols regarding masking and distancing to effectuate a safe environment for the City's students and educators.

To this end, the Delta resurgence has complicated matters. In recognition of increased risk, there have been various policies implemented at City agencies and other municipal entities. Mayor de Blasio in July 2021 announced a "Vaccine-or-Test" mandate which essentially requires the City workforce, including the UFT's educators, either to be vaccinated or undergo weekly testing for the Covid-19 virus effective September 13, 2021.

Most relevant to this matter, on August 23, 2021, the Mayor and the NYC Commissioner of Health and Mental Hygiene, David A. Chokshi, MD, announced a new policy for those workforces in NYC DOE buildings. Those employees would be subject to a "Vaccine Only" mandate. That is, such employees would need to show by September 27, 2021, they had at least started the vaccination protocol or would not be allowed onto DOE premises, would not be paid for work and would be at risk of loss of job and benefits. This mandate was reflected in an Order of Commissioner Chokshi, dated August 24, 2021. That Order, by its terms, did not expressly provide for exceptions or accommodations for those with medical contraindications to vaccination or sincerely-held religious objections to inoculation. Nor did it address matters of due process with regard to job and benefits protection.

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 39 of 117 PageID #: 1054

The UFT promptly sought to bargain the impact and implementation of the Vaccine Only mandate. A number of discussions were had by the parties but important matters remained unresolved.

On September 1, 2021, the UFT filed a Declaration of Impasse with the Public Employment Relations Board ("PERB") as to material matters. The City/DOE did not challenge the statement of impasse and PERB appointed me to mediate the matters. Given the exigencies of the imminent start of the school year and the coming of the September 27, 2021, mandate, together with the importance of the issues involved to the workforce, mediations sessions were held immediately on September 2, 3, 4 and 5, 2021, with some days having multiple sessions. Progress was made, and certain tentative understandings were reached, but significant matters remained unresolved. By agreement of the parties, the process moved to arbitration. They asked I serve as arbitrator.[1]

Arbitration sessions were held on September 6 and 7, 2021. During the course of the hearings, both sides were given full opportunity to introduce evidence and argument in support of their respective positions. They did so. Both parties made strenuous and impassioned arguments reflecting their viewpoints on this entire issue.

During the course of these hearings, I made various interim rulings concerning the impact of the "Vaccine Only" mandate. I then

---

[1] My jurisdiction is limited to the issues raised during impact bargaining and not with regard to the decision to issue the underlying "Vaccine Only" order.

4

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 40 of 117 PageID #: 1055

directed the parties to draft language reflecting those rulings. Even though I am very familiar with the language of the current Collective Bargaining Agreement, as well as the parties' relationship since I am a member of their permanent arbitration panel and have served as a fact-finder and mediator during several rounds of bargaining, I concluded the parties are more familiar with Department policy and how leave and entitlements have been administered in accordance with prior agreements. As such, my rulings reflect both the understandings reached during the negotiations prior to mediation, those reached in the mediation process and the parties' agreed upon language in response to my rulings. All are included, herein.

I commend the parties for their seriousness of purpose and diligence in addressing these complicated matters. The UFT made clear it supports vaccination efforts and has encouraged its members to be vaccinated. Nonetheless, as a Union, it owes a duty to its members to ensure their rights are protected. The City/DOE demonstrated recognition of the importance of these issues, particularly with regard to employees' legitimate medical or religious claims. I appreciate both parties' efforts in meeting the tight timeline we have faced and the professionalism they demonstrated serving the citizens of the City and what the million plus students deserved. They have invested immense effort to insure such a serious issue was litigated in such a thoughtful way.

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 41 of 117 PageID #: 1056

Yet, in the end, it falls to me, as Arbitrator, to arrive at a fair resolution of the matters at hand.

This matter is one of the most urgent events I have been involved with in my forty (40) plus years as a neutral. The parties recognized the complexity of the issues before me, as well as the magnitude of the work that lies ahead to bring this conflict to completion in a timely manner. For this reason, they understood and accepted the scope and complexity of this dispute could not be handled by me alone. They agreed my colleagues at Scheinman Arbitration and Mediation Services ("SAMS") would also be involved.

I want to thank my colleagues at SAMS, especially Barry J. Peek, for their efforts and commitment to implementing the processes to resolve this matter. This undertaking could not be accomplished by any single arbitrator.

**Opinion**

After having carefully considered the record evidence, and after having the parties respond to countless inquiries. I have requested to permit me to make a final determination, I make the rulings set forth below. While some of the language has been drafted, initially, by the parties in response to my rulings, in the end the language set forth, herein, is mine alone. I hereby issue the following Award:

**I.     Exemption and Accommodation Requests & Appeal Process**

As an alternative to any statutory reasonable accommodation

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 42 of 117 PageID #: 1057

process, the City, the Board of Education of the City School District for the City of New York (the "DOE"), and the United Federation of Teachers, Local 2, AFT, AFL-CIO (the "UFT), (collectively the "Parties") shall be subject to the following Expedited Review Process to be implemented immediately for full-time staff, H Bank and non-pedagogical employees who work a regular schedule of twenty (20) hours per week or more inclusive of lunch, including but not limited to Occupational Therapists and Physical Therapists, and Adult Education teachers who work a regular schedule of twenty (20) or more hours per week. This process shall only apply to (a) religious and medical exemption requests to the mandatory vaccination policy, and (b) medical accommodation requests where an employee is unable to mount an immune response to COVID-19 due to preexisting immune conditions and the requested accommodation is that the employee not appear at school. This process shall be in place for the 2021-2022 school year and shall only be extended by mutual agreement of the Parties.

Any requests to be considered as part of this process must be submitted via the SOLAS system no later than Monday, September 20, 2021, by 5:00 p.m.

A. Full Medical Exemptions to the vaccine mandate shall only be considered where an employee has a documented contraindication such that an employee cannot receive any of the three (3) authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 43 of 117 PageID #: 1058

considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one (1) type of vaccine will be a precaution for the other types of vaccines, and may require consultation with an allergist.

B. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

o Within the isolation period after a COVID-19 infection;

o Within ninety (90) days of monoclonal antibody treatment of COVID-19;

o Treatments for conditions as delineated in CDC clinical considerations, with understanding CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

o Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 44 of 117 PageID #: 1059

Length of delay for these conditions may vary, and the employee must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described, above.

C. Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature. Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

D. There are cases in which, despite an individual having sought and received the full course of the vaccination, he or she is unable to mount an immune response to COVID-19 due to preexisting immune conditions. In these circumstances, each individual case shall be reviewed for potential accommodation. Medical accommodation requests must be documented in writing by a medical doctor.

E. The initial determination of eligibility for an exemption or accommodation shall be made by staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 45 of 117 PageID #: 1060

Relations. These determinations shall be made in writing no later than Thursday, September 23, 2021, and, if denied, shall include a reason for the denial.

F. If the employee wishes to appeal a determination under the identified criteria, such appeal shall be made in SOLAS to the DOE within one (1) school day of the DOE's issuance of the initial eligibility determination. The request for appeal shall include the reason for the appeal and any additional documentation. Following the filing of the appeal, any supplemental documentation may be submitted by the employee to the Scheinman Arbitration and Mediation Services ("SAMS") within forty eight (48) hours after the filing of the appeal. If the stated reason for denial of a medical exemption or accommodation request is insufficient documentation, the employee may request from the arbitrator and, upon good cause shown, the arbitrator may grant an extension beyond forty eight (48) hours and permit the use of CAR days after September 27, 2021, for the employee to gather the appropriate medical documentation before the appeal is deemed submitted for determination.

G. A panel of arbitrators identified by SAMS shall hear these appeals, and may request the employee or the DOE submit additional documentation. The assigned arbitrator may also request information from City and/or DOE Doctors as part of the review of the appeal documentation. The assigned

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 46 of 117 PageID #: 1061

arbitrator, at his or her discretion, shall either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the arbitrator requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing. The expedited hearing shall be held via Zoom telecommunication and shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the arbitrator's request shall be provided to the DOE at least one (1) business day before the hearing or the issuance of the written decision without hearing.

H. Appeal decisions shall be issued to the employee and the DOE no later than Saturday September 25, 2021. Appeal decisions shall be expedited without full Opinion, and final and binding.

I. While an appeal is pending, the exemption shall be assumed granted and the individual shall remain on payroll consistent with Section K below. However, if a larger number of employees than anticipated have a pending appeal as of September 27, 2021, as determined by SAMS, SAMS may award different interim relief consistent with the parties' intent. Those employees who are vaccinated and have applied for an

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 47 of 117 PageID #: 1062

accommodation shall have the ability to use CAR days while their application and appeal are pending. Should the appeal be granted, these employees shall be reimbursed any CAR days used retroactive to the date of their initial application.

J. The DOE shall cover all arbitration costs from SAMS under this process. To the extent the arbitrator requests additional medical documentation or information from the DOE, or consultation with City and/or DOE Doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the DOE.

K. An employee who is granted a medical or religious exemption or a medical accommodation under this process and within the specific criteria identified above shall be permitted the opportunity to remain on payroll, but in no event required/permitted to enter a school building while unvaccinated, as long as the vaccine mandate is in effect. Such employees may be assigned to work outside of a school building (e.g., at DOE administrative offices) to perform academic or administrative functions as determined by the DOE while the exemption and/or accommodation is in place. For those with underlying medical issues granted an accommodation under Section I(D), the DOE will make best efforts to ensure the alternate work setting is appropriate for the employee's medical needs. The DOE shall make best efforts to make these assignments within the same borough as

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 48 of 117 PageID #: 1063

the employee's current school, to the extent a sufficient number of assignments exist in the borough. Employees so assigned shall be required to submit to COVID testing twice per week for the duration of the assignment.

L. The process set forth, herein, shall constitute the exclusive and complete administrative process for the review and determination of requests for religious and medical exemptions to the mandatory vaccination policy and accommodation requests where the requested accommodation is the employee not appear at school. The process shall be deemed complete and final upon the issuance of an appeal decision. Should either party have reason to believe the process set forth, herein, is not being implemented in good faith, it may bring a claim directly to SAMS for expedited resolution.

## II. Leave

A. Any unvaccinated employee who has not requested an exemption pursuant to Section 1, or who has requested an exemption which has been denied, may be placed by the DOE on leave without pay effective September 28, 2021, or upon denial of appeal, whichever is later, through November 30, 2021. Such leave may be unilaterally imposed by the DOE and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 49 of 117 PageID #: 1064

B. Except as otherwise noted, herein, this leave shall be treated consistent with other unpaid leaves at the DOE for all purposes.

C. During such leave without pay, employees shall continue to be eligible for health insurance. As with other DOE leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D. Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the DOE prior to November 30, 2021, shall have a right of return to the same school as soon as is practicable but in no case more than one (1) week following notice and submission of documentation to the DOE.

E. Pregnancy/Parental Leave

   i. Any soon-to-be birth mother who starts the third trimester of pregnancy on or before September 27, 2021, (e.g. has a due date no later than December 27, 2021), may commence UFT Parental Leave prior to the child's birth date, but not before September 27, 2021.

   ii. No documentation shall be necessary for the early use of Parental Leave, other than a doctor's written assertion the employee is in her third trimester as of September 27, 2021.

   iii. Eligible employees who choose to start Parental Leave prior to the child's birth date, shall be required to first use CAR days until either: 1) they exhaust CAR/sick days,

14

at which point the Parental Leave shall begin, or 2) they give birth, at which point they shall be treated as an approved Parental Leave applicant for all purposes, including their prerogative to use additional CAR days prior to the commencement of Parental Leave.

iv.    Eligible employees who have a pregnancy disability or maternity disability outside of the regular maternity period may, in accordance with existing rules, borrow CAR/sick days and use a Grace Period.  This eligibility to borrow CAR/sick days does not apply to employees during the regular maternity recovery period if they have opted to use Parental Leave.

v.    In the event an eligible employee exhausts CAR/sick days and parental leave prior to giving birth, the employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.  As applicable, unvaccinated employees may be placed in the leave as delineated in Section II(A).

vi.    If not otherwise covered by existing Family Medical Leave Act ("FMLA") or leave eligibility, an employee who takes Parental Leave before the birth of the child shall be eligible to be on an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section)

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 51 of 117 PageID #: 1066

      vii.    All other eligibility and use rules regarding UFT Parental Leave as well as FMLA remain in place.

## III. Separation

A. During the period of September, 28, 2021, through October 29, 2021, any employee who is on leave without pay due to vaccination status may opt to separate from the DOE. In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused CAR days on a one (1) for one (1) basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the DOE, for non-disciplinary reasons. An employee who separates under this Section shall continue to be eligible for health insurance through September 5, 2022, unless they are eligible for health insurance from another source (e.g., a spouse's coverage or another job).

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 52 of 117 PageID #: 1067

B. During the period of November 1, 2021, through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through September 5, 2022. In order to extend this leave pursuant to this Section, and continue to receive the commensurate benefits, an employee must file a form created by the DOE which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health insurance through September 5, 2022. Employees who comply with the health order and who seek to return from this leave, and so inform the DOE before September 5, 2022, shall have a right to return to the same school as soon as is practicable but in no case more than two (2) weeks following notice to the DOE.  Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by September 5, 2022, shall be deemed to have voluntarily resigned.

C. Beginning December 1, 2021, the DOE shall seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions

17

Case 1:24-cv-07795-DG-JAM    Document 80    Filed 04/17/26    Page 53 of 117 PageID #: 1068

contained, herein, all parties retain all legal rights at all times relevant, herein.

September 10 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


STATE OF NEW YORK          )
                           )    ss.:
COUNTY OF NASSAU           )


I, MARTIN F. SCHEINMAN, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

September 11 , 2021.

_____
Martin F. Scheinman, Esq.
Arbitrator


DOE.UFT.Impact Bargaining.awd

18

# Exhibit

# B

| | |
|---|---|
| **From:** | Nellie Afshar |
| **To:** | Dave Chokshi |
| **Subject:** | RE: Urgent Need for Help--UFT Accommodation Process |
| **Date:** | Wednesday, September 22, 2021 10:25:11 AM |
| **Attachments:** | Memo_09 21 21 Final.pdf |

Final version for your awareness. No changes from what you saw last.

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Wednesday, September 22, 2021 8:13 AM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thanks—looks good

On Sep 21, 2021, at 10:19 PM, Nellie Afshar <nafshar@health.nyc.gov> wrote:

Here is latest version of the memo – includes addition of the list of meds and animal products.

For awareness, we have not been able to verify the list of meds, I asked Jackie if she can track it down w Jay.

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:04 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Thank you!!

Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:03 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Yes I'm making those revisions now, and also adding line about Tylenol, advil, etc

Thank you!

---

**From:** Dave Chokshi <dchokshi@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 8:02 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Nellie, this looks fine to me and no issues with it coming from me. We had to remove the section about pork and animal products? Seemed they wanted it specifically.

Also happened to notice that 'fetal' is misspelled as 'feral' in one place.

Dave A. Chokshi, MD MSc

Commissioner

NYC Department of Health and Mental Hygiene

347-396-4133

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 7:18 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Commissioner – we're still refining this but here is the current version in case you can review in parallel. On our side – Jane, Celia, Jen Rosen, and PIO reviewed.  Let me know if any issues w this coming from you.

---

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 5:15 PM
**To:** Nellie Afshar <nafshar@health.nyc.gov>; Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

Here is the latest draft from OLR who reformatted some.

Happy to merge the edits if useful once I have yours.

*Jackie Bray*
*Pronouns: she/her/hers*

*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Nellie Afshar <nafshar@health.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:49 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

We have edits and I will send your way Jackie

---

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Dave Chokshi <dchokshi@health.nyc.gov>; Celia Quinn Md <cquinnmd@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; Nellie Afshar <nafshar@health.nyc.gov>; Rebecca Giglio <rgiglio@health.nyc.gov>
**Cc:** 'Anne Mabus' <mabusa@nychhc.org>
**Subject:** FW: Urgent Need for Help--UFT Accommodation Process

Thoughts? Can we close this out?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 4:46 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; 'Anne Mabus' <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; 'Jane Zucker' <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

OK I've added a line about pork, beef, and animal products. DOHMH needs to confirm if the line is accurate.

COH and team – we need your approval on this memo and then we need guidance from you on who at the DOHMH would sign it. I think it should go from dOHMH to OLR officiallu once you are comfortable with it. We are moving fast here on negotiations and hearings on exemptions so wanting to wrap this up today.

Thank you!

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Tuesday, September 21, 2021 2:00 PM
**To:** Varma, Jay <JVarma@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>; 'Celia Quinn Md' <cquinnmd@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

+Celia too.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Varma, Jay <JVarma@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:58 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>; Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Memo ok with me.

Get Outlook for iOS

**From:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Sent:** Tuesday, September 21, 2021 1:56:53 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>; Anne Mabus <mabusa@nychhc.org>; Chokshi, Dave (DOHMH) <dchokshi@health.nyc.gov>; Varma, Jay <JVarma@cityhall.nyc.gov>; Afshar, Nellie (Health) <nafshar@health.nyc.gov>; Jane Zucker <jzucker@health.nyc.gov>
**Subject:** RE: Urgent Need for Help--UFT Accommodation Process

++adding MDs.

Attached is a memo Annie drafted. Obviously need Dave, Jane, and Jay to review and then need to know from OLR whether this works.

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 10:08 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>; Siciliano Lauren <LSiciliano2@schools.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

+Lauren for awareness and to see if an example or 2 can be provided by the DOE

The first page of the North Dakota document is a little bit more neutral than I was thinking. But the second and third page get to the point. We can go further and make an argument about how even if someone is concerned about fetal cells it should not prevent them from being vaccinated.

Yes the list is good. Because to the extent there are hearings in these cases, the employees can be asked about whether they use or have used those medications.

And yes to a little more time, there is no definitive time limit but I said I'd get the UFT something tomorrow and the idea is that hearings are going to start on Wednesday. If it's later in the afternoon I'm sure that's ok.

On Sep 20, 2021, at 9:56 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Need you to weigh in on three things:

1. Here's a memo from the North Dakota Department of Health. If we created something similar is that what you need? COVID-19_Vaccine_Fetal_Cell_Handout.pdf

2. The MDs were also batting around the idea of making someone attest to rejecting all the medications on this list and look for proof that they have rejected all of these "sincerely" for some time: https://www.patheos.com/blogs/throughcatholiclen-tested-on-hek-293-is-immoral-goodbye-modern-medicine/

3. Can you send me some of the letters? Are there phrases that appear in many of them?

And finally, we clearly have very good material here and we also want to give you the best product we can because this will absolutely be subject to litigation and will go far. Is there a way to buy us more than 12 hours overnight?

Thanks,
Jackie

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Sent:** Monday, September 20, 2021 9:50 PM
**To:** Bray, Jackie <JBray@cityhall.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

Yep. Thanks much

> On Sep 20, 2021, at 9:07 PM, Bray, Jackie <JBray@cityhall.nyc.gov> wrote:

OK. Yes. We can get you something and have a shell of something to use from LA County.

Might take till noon or 1pm. that OK?

*Jackie Bray*
*Pronouns: she/her/hers*
*Deputy Executive Director*
*NYC COVID-19 Test & Trace Corps*
*jbray@cityhall.nyc.gov*
*Cell: 347-453-3697*

---

**From:** Bray, Jackie
**Sent:** Monday, September 20, 2021 8:27 PM
**To:** Steve Banks (OLR) <sbanks@olr.nyc.gov>
**Cc:** Thamkittikasem, Jeff <JThamkittikasem@cityhall.nyc.gov>; Campion, Renee (OLR) <rcampion@olr.nyc.gov>
**Subject:** Re: Urgent Need for Help--UFT Accommodation Process

I have no clue if we can pull this together because this is a "new one" but I will absolutely try. Will circle back later tonight with an update.

Sent from my iPhone

> On Sep 20, 2021, at 8:22 PM, Steve Banks (OLR) <sbanks@olr.nyc.gov> wrote:
>
> Now that the UFT exemption requests have been coming in for several days and the cases have been reviewed at the DOE, it turns out that upwards of 2/3 of the exemption requests are religious not medical. But there is a medical aspect to the religious requests that I could use some help on. Many of the religious claims cite that fetal tissue and/or certain animal products were used in the research, development, and/or actual formula for the COVID vaccines.
>
> Since many of these cases are going to labor arbitrators, there is a need for factual

information for the arbitrators to reference. It would be very very helpful if we could get a document signed off on by a City Doctor that essentially makes the argument as to why this is BS. The purpose of the document would be for the arbitrators to reference, and I would vet it with the UFT first. So I'm looking for basically a point by point analysis of why the potential claims that taking this would violate the rights of someone who religiously opposes abortion and/or consumption of certain animals is not consistent with the science of the virus. In some areas, there may be a distinction between the 3 brands of vaccine and I think as long as one is available the claim should also be denied.

Is this something you guys could pull together by late morning tomorrow?

Thanks,

Steven Banks
First Deputy Commissioner & General Counsel
NYC Office of Labor Relations

22 Cortlandt Street, 14th Floor
New York, NY 10007
(212) 306-7238

Sent from the New York City Department of Health & Mental Hygiene. This email and any files transmitted with it may contain confidential information and are intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.
<Draft Memo - Religious Exemption DOE_DOHMH v2_JZ v3.docx>

# Exhibit C

**From:** NYCDOE <noreply@schools.nyc.gov>
**Sent:** Saturday, October 2, 2021 3:10 PM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Notice of Leave Without Pay - PLEASE READ



Dear Corrine Lynch,

You are receiving this message because **you are being placed on a Leave Without Pay (LWOP) because you are not in compliance with the DOE's** COVID-19 Vaccine Mandate. If you are a substitute or in certain titles you have been placed in another inactive status, not a LWOP. **This means you must _not_ report to your work or school site beginning Monday, October 4th.**

While you are on Leave Without Pay (LWOP), you:

- Cannot work and will not receive compensation, but you will continue your medical benefits
- Cannot use annual leave, CAR or sick time
- Cannot enter your work or school site
- Cannot reach out to students or families

In order to return from LWOP status, you must complete two steps using the DOE Vaccination Portal

1. Upload proof that you have received your first dose of a COVID-19 vaccine. **Proof of COVID-19 Vaccine can be an image of your vaccination card, NYS Excelsior Pass, or another government record**
2. E-sign the attestation stating that you are willing to return to your worksite within seven calendar days of submission.

Once you have completed these two steps, your HR Director and supervisor will also be notified and will work with you to plan your return date.

**If you have been vaccinated this weekend and upload this information by Monday morning, you may report to work as usual on Monday, October 4th, and you will be put back on active status.**

On Monday, October 4th, if you have an acceptable proof of vaccination (e.g., vaccination card, NY State Excelsior pass, or other government record) but have not been able to upload to the DOE Vaccination Portal, you may show your proof to the School Safety Agent and/or Principal (or designee) at the door. You will be allowed in the building, and you must immediately upload proof of vaccination to the Vaccination Portal and confirm that you would like to return to work in order to ensure there is no break in payroll.

If you encounter technical issues accessing the Vaccination Portal, please contact the DOE Help Desk by opening a ticket online or calling 718-935-5100. If you need support uploading your proof of vaccination, please contact your principal or HRD who can do so on your behalf.

Please be advised that if you do not intend to return to the DOE after October 1, 2021, you will need to return all DOE property, including computers, IDs, blackberries, and keys, immediately. Failure to return any DOE property that has been assigned to you will delay the processing of your final payment and any payout of leave time.

Employees represented by UFT or CSA who have been placed on LWOP due to vaccination status may select (in SOLAS) special separation or leave options per the arbitration award:

- **Separation with benefits** (available in SOLAS as of Monday, October 4)**:** Employees choosing to separate under this option:
  - **Must share their intention to separate via SOLAS by October 29, 2021.**
  - Will be required to waive their rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process
  - Will be eligible to be reimbursed for unused CAR/sick leave on a one-for-one basis at the rate of 1/200th of the employee's salary at departure per day, up to 100 days, to be paid out following the employee's separation
  - Will be eligible to maintain health insurance through September 5, 2022, unless they have health insurance available from another source.
- **Extend the leave without pay due to vaccination status through September 5, 2022** (available in SOLAS as of Monday, November 1 through November 30, 2021):
  - Employees choosing this option will also be required to waive their rights to challenge their involuntary resignation, including, but not limited to, through a contractual or statutory discipline process
  - They will remain eligible for health insurance through September 5, 2022
  - Employees who have not returned by September 5, 2022 shall be deemed to have voluntarily resigned
- Beginning December 1, 2021, the DOE will seek to unilaterally separate employees who have not selected one of the options above or otherwise separated service.

For more information about where to get vaccinated, visit vaccinefinder.nyc.gov or call 877-VAX-4-NYC. For the latest COVID-19 staffing updates, please visit the Coronavirus Staff Update InfoHub page.

Sincerely,
NYCDOE Division of Human Capital

# Exhibit D



**Department of Education**

November 18, 2022

Brooklyn, New York

Title: Teacher/
Applicant ID:
PRP#:

Dear Ms.

Your name was recently submitted to the Office of Personnel Investigation (OPI) for security clearance to work with the NYC Department of Education (DOE) or a DOE contracted vendor. According to our records, your services with the DOE were terminated due to noncompliance with the vaccine mandate and you currently appear out of compliance. The purpose of our contact was to request information so that your application could be processed for security clearance. Requests were sent to you at the email address you provided             @aol.com' on November 10, 2022 and November 16, 2022. You were given a deadline to provide the requested information. To date, we have not received the required information.

Due to your non-compliance, you are unable to work with the DOE or any DOE contracted vendors. As such, your case has been administratively closed, and no security clearance determination has been made. Please note that at this time, you do not have security clearance to work with the DOE and/or one of its contracted vendors.

Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

cc: File

From: kking@uft.org >
Date: Thu, Apr 28, 2022 at 12:50 PM
Subject: response from UFT regarding the problem code
>


**Karen King** (KKing@uft.org)To:you Details
Hello,

Technically you should receive charges. At this time, however, the DOE is not going to issue 3020-a charges because they do not believe they have to do so. We have filed a legal challenge to protect your due process rights, should the judge decide in our favor, you will be entitled to a hearing at that time.

The problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. DOE's central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

**Karen King**
*Administrative Assistant to the Assistant Secretary &*
*Director of Personnel, Payroll, and Special Projects*
United Federation of Teachers
50 Broadway, 13th Floor
New York, N.Y. 10004
*kking@uft.org*

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

MICHAEL KANE, et al,

                               Plaintiffs,

        - against –                      21-CV-7863 (VEC) (Lead Case)

BILL DE BLASIO, et al.,

                               Defendants.

------------------------------------------------------------------ x

MATTHEW KEIL, et al.

                               Plaintiffs,

        - against -                    21-CV-8773 (VEC)

THE CITY OF NEW YORK, et al.,

                               Defendants

------------------------------------------------------------------ x

**MALLORY O. SULLIVAN**, under penalty of perjury, declares pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

        1.        I am the Deputy Director of the Office of Employee Relations ("OER") at the New York City Department of Education ("DOE"), and I have held this position since November 2014. Prior to serving in my current position, I was an Agency Attorney with the DOE's Office of the General Counsel for approximately four years.

        2.        I submit this declaration to provide information about DOE's employment record system in response to certain allegations regarding "problem codes" as set forth in the Declaration of Natasha Solon dated May 20, 2022 (ECF dkt. 162). I am familiar

with the facts set forth herein based on my personal knowledge as well as discussions with other DOE employees and the review of DOE records.

3.        In my role as Deputy Director, I oversee the DOE's Office of Personnel Investigation ("OPI"), which is responsible for, among other things, screening and conducting background investigations for all candidates for employment with the DOE or with vendors under contract with the DOE and monitoring employee and vendor employee security clearances. As a part of these processes, OPI uses internal system codes.

4.        The DOE maintains electronic employment records and employee service histories for DOE employees ("DOE employment records"). DOE employment records are kept within a system called NYCAPS, which is operated by the City of New York for all DOE and City employees. DOE employment records are only visible to the DOE and reflect employees' dates of employment, titles held, and various changes in active employment status.

5.        In addition, DOE has codes within NYCAPS designed to engender special attention should an individual seek employment, re-employment, or change titles with the DOE. Such a code might be used where, for example, an employee left DOE employment with a performance issue, had a nomination for employment rescinded, or was the subject of an arrest. This is designed to ensure that prior to any new employment or new title within DOE, the employee's application undergoes further review by OPI. These types of codes have been colloquially referred to as "problem codes." These codes are only visible to internal DOE Human Resources staff, and the underlying basis for such code is only accessible by OPI.

8.        Separately, DOE implemented an internal NYCAPS code specific to the Commissioner of Health Order mandating vaccination of DOE employees ("Vaccination Mandate"). This code remains visible to only OPI staff to ensure vaccination status was

reviewed prior to any return of an employee placed on a leave without pay due to non-compliance with the Vaccination Mandate. A DOE employee would not have a "problem code" in their service history as a result of any non-compliance with the Vaccination Mandate.

9.    In this instant case, Natasha Solon was placed on leave without pay due to non-compliance with the Vaccination Mandate, and returned to service once compliance with the Vaccination Mandate was confirmed. At no point did Natasha Solon have a "problem code" in her service history as a result of her non-compliance with the Vaccination Mandate nor was there ever any code in her service history arising out of her vaccination status visible to anyone outside of OPI.

Dated:    May 27, 2022
    New York, New York

By: _____
Mallory O. Sullivan
Deputy Director
Office of Employee Relations

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                        :
MICHAEL KANE, et al.,                                   :
                                                        :
                              Plaintiffs,               :
                                                        :
          - against -                                   :   Case No.  21-cv-7863 (VEC) (Lead)
                                                        :
BILL DE BLASIO, et al.,                                 :
                                                        :
                              Defendants.               :
-----------------------------------------------------------------X
                                                        :
MATTHEW KEIL, et al.                                    :
                                                        :
                              Plaintiffs,               :
                                                        :
          - against -                                   :   Case No.  21-cv-8773 (VEC)
                                                        :
THE CITY OF NEW YORK, et al.,                           :
                                                        :
                              Defendants.               :
-----------------------------------------------------------------X

**DECLARATION OF BARRY BLACK IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**BARRY BLACK**, an attorney admitted to practice before this Court, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true:

1. I am an attorney for Plaintiffs and fully familiar with the facts and circumstances of this case.

2. I respectfully submit this declaration in response to Mallory O. Sullivan's Declaration.

3. Attached as Exhibit 1 is a true and correct copy of a declaration from Betsy Combier.

4. Attached as Exhibit 2 is a true and correct copy of a declaration from Plaintiff Dennis Strk.

5. Attached as Exhibit 3 is a true and correct copy of a declaration from proposed class member Patricia Catoire.

### First False Assertion in Sullivan Declaration

6. The Sullivan Declaration asserts that there are two different kinds of codes in the NYCAPS system: a "problem code" and some other unnamed code. the "problem code" indicating anything from a performance issue to criminal activity, and the unspecified code flagging the absence of vaccination. Glaringly absent from Sullivan's recitation is how these codes appear to the reader. That is because there is no difference; they are one and the same.

7. Indeed, DOE Human Resources Director Eric Amato explicitly stated in an email to UFT Assistant Secretary Michael Sill and General Counsel Beth Norton that a "[p]roblem code was added to all employees who were placed on 2VM vaccine mandate leave. Our central offices placed this code on all employees who went on the leave." Ex. 1, ¶ 13, Ex. A.

8. Moreover, terminated Plaintiffs had a problem code plainly visible in their payroll portal, indicated by a "**Problem PR**" notation in their salary history tab. Ex. 2, ¶ 5, Ex. A; Ex. 1 ¶ 10 (DOE's "problem code" is also referred to as a "pr" code).

1

### Second False Assertion in Sullivan Declaration

9. The Sullivan Declaration falsely posits that the no one outside DOE's Office of Personnel Investigations has access to the problem code. To the contrary, any non-DOE school or official that wants to learn whether a former DOE employee has a problem code in his or her personnel file can easily do so in a variety of ways. For example, non-DOE schools which offer DOE-funded positions have access to the DOE's payment portal, Galaxy, which allows them to see problem codes; indeed Plaintiffs present evidence of at least 15 former DOE employees who were not hired at non-DOE schools because the non-DOE schools discovered their problem codes. Ex. 1, ¶¶ 14-18. Simple phone calls work as well: a former UFT Special Representative explained that she used to "receive[] countless calls every week asking . . . if there was a problem code on an employee's personnel file" and that her UFT colleague next door would then check her computer and "tell [her] 'yes' or 'no' within a minute." Ex. 1, ¶ 8. In some instances, DOE representatives disclosed the problem codes to prospective employers from non-DOE schools calling to verify employment. Ex. 1, ¶ 19. In one instance, a third-party HR representative at Bright Start Learning Center of NYC—a non-DOE school operating pursuant to NYS Department of Health Bureau of Early Intervention directives—informed a former DOE employee that she had had been flagged as "ineligible" in her personnel file. Ex. 3, ¶¶ 8-9, 13.

10. It is noteworthy that such evidence was already in the record before Defendants filed the Sullivan declaration, but Defendants did not even attempt to discredit it. ECF No. 162 ¶¶ 11-13 (Plaintiff Solon was told by an official at non-DOE school that it could not hire her because of the problem code in her personnel file).

2

## Further Evidence of Irreparable Harm

11. Plaintiffs' irreparable harm did not cease with their terminations. Instead, the problem codes in their files make them unemployable indefinitely at both DOE and non-DOE schools.

12. The UFT has stated unequivocally that such problem codes "will be removed once [they] are eligible to return to work." Ex. 1, ¶ 13, Ex. A.

13. Thus, Plaintiffs face ongoing coercion to violate their religious beliefs and become vaccinated, in order to become employable -- and remove the scarlet letter from their permanent records.

14. The Court is reminded that Plaintiff Solon's problem code was removed within 24 hours of her getting vaccinated. ECF No. 162 ¶ 18.

Dated: New York, New York

     June 3, 2022

Respectfully submitted,

Barry Black
Nelson Madden Black LLP
*Attorney for Plaintiffs*
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4303

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X  :

MICHAEL KANE, et al.,

                         Plaintiffs,

        - against -

DE BLASIO et al.,

                         Defendants.
------------------------------------------------------X  :

                                  Case No.  21-cv-7863 (VEC) (Lead)

MATTHEW KEIL, et al.

                         Plaintiffs,

        - against -                       Case No.  21-cv-8773 (VEC)

THE CITY OF NEW YORK et al.,

                         Defendants.
------------------------------------------------------X

## DECLARATION OF BETSY COMBIER

Betsy Combier declares as follows, pursuant to 28 U.S.C. § 1746:

1.    My name is Betsy Combier and I am the President and lead paralegal of Advocatz, a paralegal consulting business for people who need a partner as they go through the Courts, grievances, or life problems.

2.    I respectfully submit this Declaration in support of Plaintiffs' Motion for a Preliminary Injunction.

3.    I know the facts stated herein to be true based upon my personal knowledge and based upon my review of the files of hundreds of my clients whom I have represented in proceedings with the New York City Department of Education ("DOE"), except

1

for statements which are made on information and belief and, as to those, I verily believe them.

4. I have a degree in Child Psychology from Northwestern University, an MA Certificate from the Johns Hopkins' School for Advanced International Studies where my specialization was the Soviet Military Industrial Complex, an MPS in Interactive Telecommunications from New York University, and a Certificate in Art and Drama Therapy from The New School.

5. I have successfully assisted parents, children, and caregivers with the educational needs of their children, and I have been advocating for the due process rights of Union members—in particular, members of the AFL-CIO, United Federation of Teachers ("UFT") and Local 32 B&J—for 17 years.

6. From 2007-2010, I worked as Special Representative to the UFT where my job was to oversee the eight re-assignment centers in the NYC DOE, first in all boroughs, and then at the Manhattan, Brooklyn, and Bronx locations.

7. I am very familiar with the arbitration hearing process, set forth in New York Education Law § 3020-a, having assisted teachers in approximately 300 3020-a hearings since 2003.

8. I am also very familiar with "problem codes"—the flag the DOE puts in the personnel file of employees to indicate that they should not be hired due to unexplained misconduct of some kind. Employees can be flagged for everything from receiving an unsatisfactory or ineffective rating to engaging in egregious criminal acts. During the three years I worked at the UFT headquarters, I received countless calls every week

2

asking me if there was a problem code on an employee's personnel file. When that happened, I would simply ask the person next door to my office, another UFT Special Representative, whether she could check her computer, and she would tell me "yes" or "no" within a minute.

9. When the DOE puts a problem code in the employee's personnel file, it also places a flag on the employee's fingerprints, which is then sent to the national databases at both the Federal Bureau of Investigation and the State Division of Criminal Justice Services.

10. I have represented more than 15 DOE employees before the DOE's Office of Personnel Investigation in proceedings in which they requested the removal of their problem codes. The flag has several names such as "problem code," "pr" code, "pc" code, "ineligible," and "no hire/inquiry" code; however, all refer to a salary block, whatever title it is given.

11. I have helped approximately 20 DOE employees get their problem codes removed from their personnel files.

12. I know of many former DOE employees who have problem codes in their personnel files because they declined to be vaccinated in violation of the DOE's mandate and were not granted a religious or medical exemption. The DOE places a problem code on the employee's personnel file immediately upon getting information that the employee did not submit proof of vaccination. As soon as the employee gets the vaccination and submits proof, the code is removed from his or her file.

3

13. Attached as Exhibit A is a true and correct redacted copy of an email one of my clients received from Eric Amato at the DOE. The email was also sent to UFT Assistant Secretary Michael Sill and copies UFT officials including its General Counsel Beth Norton. The email confirms that DOE employees who were placed on leave without pay for failing to be vaccinated in violation of the DOE's mandate had a problem code (as opposed to any other kind of code) added to their personnel files.

14. I am aware that non-DOE schools located in counties outside New York City receive funds from the NYC DOE for certain teaching positions. These may include, for example, special education or STEM teachers.

15. The DOE pays the salaries for these positions using the same system it uses to pay traditional DOE employees, which is called Galaxy. Galaxy indicates whether the employee has a problem code in his or her file and blocks payment to the employee with this flag/code if viewed in the personnel file.

16. Many of my clients with problem codes in Galaxy have looked for other teaching jobs outside the NYC DOE while their problem code appeals were ongoing.

17. At least 15 of my clients with problem codes were not hired by prospective schools outside the DOE because such schools saw the problem codes in Galaxy, even though those schools were located outside New York City.

18. Such schools were able to see the codes because the position applied for was financed by the DOE and so the school used the Galaxy system and could check the prospective employee's file.

4

19.    I also have several clients who applied to schools outside of the DOE who were not hired by their prospective employers because when the prospective employers reached out to the DOE to verify my clients' previous employment, the DOE representative told them about the problem codes in my clients' files.

20.    In sum, any non-DOE school that wants to learn whether a former DOE employee has a problem code in his or her personnel file can readily do so.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       June 3, 2022

_____
By: Betsy Combier

5

# EXHIBIT A

From: **Amato Eric** <EAmato4@schools.nyc.gov>
Date: Wed, Feb 9, 2022 at 8:06 AM
Subject: RE: PR code
To: ███████████████████████████ Michael Sill <msill@uft.org>
Cc: Beth A. Norton
<bnorton@uft.org>, Kking@uft.org <Kking@uft.org>, dcampbell@uft.org <dcampbell@uft.org>

PR = Problem code — Problem code was added to all employees who were placed on 2VM vaccine mandate leave. It was placed there the day you went on the leave. Our central offices placed this code on all employees who went on the leave. It will be removed once you are eligible to return to work.

Thanks,
Eric

5. In October, 2021, I was involuntarily suspended for failing to get vaccinated in violation of my sincerely held religious beliefs.

6. After the Second Circuit held that the DOE's religious exemption policy was unconstitutional, I was able to apply for reconsideration by the Citywide Panel. The email sent to me stated that we did not need to submit anything because they would rely on the original material.

7. I received no response for months. Meanwhile my situation became desperate.

8. I depleted all of my savings, my son had to take a leave of absence from school because I could not pay the parental portion of tuition, and my children and I were running out of food, and on the brink of losing our home.

9. I owed over $2,000 in heating bills.

10. I applied to over sixty jobs during this period. Despite my extensive qualifications and spotless record, few positions called me back, and none offered me a job.

11. Finally, during an interview in Westchester, the woman conducting the interview took pity on me. She told me she liked me and wished she could hire me.

12. However, she said she had to be honest with me – neither she nor anyone else would be able to hire me.

13. I asked why. She said that there was a "problem" code in the system flagging my name. Outside schools cannot see the reason for the code, other than there is a problem flagged indicating not to hire. Examples she gave me of typical problem codes arose from robbery and other serious misconduct.

14. I have a spotless record and was shocked to find out about this code.

15. I investigated further and learned that the internal records at the DOE showed the reason for the problem code was that I was not vaccinated.

16. My situation grew more desperate every day, and it soon became clear that I would get no other work while this code remains.

17. Finally, to save my family and our home, I took the vaccine, which is against my sincerely held religious beliefs.

18. Within twenty-four hours of submitting my paperwork to the DOE, I was reinstated, and the problem code was removed.

19. Even though I felt I had no choice, this decision has been deeply traumatic and continues to cause irreparable harm.

20. I pray every day for help to overcome my anger, pain, and guilt for having to violate my faith.

21. The experience continues to impact me and to cause me serious distress.

22. I do not feel safe at my job. I do not feel safe in society.

23. The fact that the courts would continue to uphold this brazen unconstitutional condition and fail to intervene to protect us as we lose everything we have worked so hard to achieve continues to shake my faith in this country.

24. If, as the Second Circuit admitted, the DOE violated the Constitution, how can this Court or any other continue to allow the DOE to continue to harm so many of us for not taking the vaccine?

25. I am vaccinated now, but when the inevitable booster requirement comes, I will have to go through all of this again. I do not think that I can violate my faith again. The harm it caused me to do it to save my family was too severe.

26. I only hope that this Court intervenes before that occurs, or at least intervenes before more of my colleagues are forced to be violated the way I was.

27. This is spiritual rape. There is no other way to put it. I did not consent to this.

28. This Court must help us to stop the continuing injustice.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:     New York, New York
           May 20, 2022

           _____
           By: Natasha Solon

From: **Beth A. Norton** <BNorton@uft.org>
Date: Thu, Jul 28, 2022, 12:36 PM
Subject: RE: Questions about voluntary resignations and follow ups
To:
Cc: Michael Sill <MSill@uft.org>, Michael Mulgrew <MMulgrew@uft.org>, Tanisha Franks <TFranks@uft.org>, Karen King <KKing@uft.org>

The arbitration award doesn't "expire," I am not sure what you mean by that.

As the language you quoted from the waiver indicates, you will be deemed to have voluntarily resigned your position with the DOE on September 6 if you are not, at that time, in compliance with the health order (vaccinated with 2 shots of Pfizer or Moderna, or 1 shot of J&J). This will be treated as a traditional resignation, it is not a termination. You will be permitted to cash out your CAR and vacation days at the contractual rates. The code on your file indicates that you are not vaccinated, that will not be lifted until such time as you are vaccinated.

You should be receiving an email from the DOE in the next week or so asking for your intent for the fall.

At this time there is no indication that the vaccine mandate will be lifted, so if you wish to return you would have to comply with the health order. If that changes we will let you know.

Regards,

**Beth A. Norton**
General Counsel
United Federation of Teachers
52 Broadway 14th Floor
New York, NY 10004
212-701-9420

# Exhibit E

e Application System

Selection                                    Overview and Tasks

**Information**                                                                    ✕

Error: You have been identified as being non-compliant to the vaccine mandate.
You can't submit an application for Reasonable Accommoddation or COVID-19
Vaccine Related Exemption/Accommodation at this time.

OK

Back          E-Sign & Submit          Print          Exit

e that you cannot complete submission of your application until you agree to the terms and conditions above, by selecting t

 ult...    rel - Search Results ...    Online Leave Appli...   Work Search Recor...    Document1 - Word

# Exhibit F



**The University of the State of New York**
The State Education Department
Teacher Tenure Hearing Unit
89 Washington Ave., Room 987 EBA
Albany, New York 12234

| | |
|---|---|
| Ph: | (518) 473-2829 |
| Fax: | (518) 402-5940 |

(09/21)

## Rights of Tenured Employees
*(This document only applies to cases where charges were filed on or after July 1, 2015.)*

This document, while not intended to be exhaustive, describes certain rights of tenured employees in Education Law §3020-a and §3020-b* proceedings. The information contained in this document should not act as a substitute for the applicable statutes or regulations. Individuals are advised to consult with an attorney as significant adverse consequences may result from these proceedings.

> ### Special Notice to Tenured Employees of the New York City Department of Education
>
> Many of the provisions in Education Law §3020-a and/or §3020-b, including those described in this document, have been substantially modified by the collective bargaining agreement and subsequent amendments and/or revisions between the United Federation of Teachers ("UFT") and the New York City Department of Education ("NYCDOE"). Education Law §3020(3) permits the NYCDOE to modify the provisions of Education Law §3020-a through the collective bargaining process. If you are a tenured employee of the NYCDOE, you are advised to review your collective bargaining agreement and any amendments and/or revisions thereto to determine whether your rights may deviate from the provisions described below. If you have any questions, you should consult with the UFT and/ or an attorney.

Tenured individuals cannot be disciplined or removed from employment except for "just cause" pursuant to Education Law §3020. The procedures for such discipline or removal are set forth in Education Law §3020-a, Education Law §3020-b, and the Commissioner's Regulations 8 NYCRR Ch. II, Sub. C, Part 82-3.

### Charges

1. The employing board of education ("board") must determine, by a majority vote, that probable cause exists to bring a disciplinary proceeding against the tenured employee ("employee").
2. If the board finds probable cause, the tenured employee must be provided with a written statement specifying: a.) the charges in detail; b.) the maximum penalty the board will seek if the employee is found guilty of the charges or that will be imposed if the employee does not request a hearing; and c.) a copy of this form outlining the employee's rights. The charges must be sent by certified or registered mail, return receipt requested or by personal delivery.
3. Charges cannot be brought more than three years after the alleged incompetency or misconduct, except when the charge is of misconduct constituting a crime when committed.

### Suspension Pending Hearing

The employee may be suspended pending a hearing on the charges and the final determination thereof. An employee may be suspended without pay if: a.) the employee has pleaded guilty to or has been convicted of certain felony drug crimes or a felony crime involving the physical abuse of a minor or student; or b.) the employee is charged with misconduct constituting physical or sexual abuse of a student. Employees suspended without pay due to charges constituting physical or sexual abuse of a student, are entitled to an expedited probable cause hearing.

### Termination Without Hearing

The employee shall be terminated without a hearing upon conviction of a sex offense as defined by Education Law §305(7-a)(b)(2). Employees acting as school administrators or supervisors shall be terminated without a hearing upon conviction of defrauding the government as defined by Education Law §305(7-b)(b)(2).

### Hearing Request/Failure to Request

1. Within 10 days of receiving charges, the employee must provide a written request to the clerk or the secretary of the employing board if the employee desires a hearing on the charges.
2. In the written request for hearing, the employee should indicate the name and contact information for the attorney who will represent the employee, if any. Such attorney shall be authorized to receive all correspondence related to the proceeding on the employee's behalf.

## Rights of Tenured Employees *(cont.)*

3. If the employee does not request a hearing within 10 days of receipt of the charges, the employee shall be deemed to have waived the right to a hearing if there is an unexcused failure to request a hearing.

4. If the employee waives his right to a hearing, the board shall proceed, within fifteen days, by a majority vote to determine the case and fix the penalty, if any, to be imposed.

### Hearing Officer Selection Process

1. Within 3 business days of receipt of the written hearing request, the clerk or secretary of the board shall notify the commissioner of the need for a hearing.

2. Upon receipt of such notification, the commissioner shall request that the American Arbitration Association provide a list of names of individuals to potentially serve as hearing officers along with relevant biographical information concerning the individual. The commissioner shall forthwith send such list to both parties.

3. For charges brought pursuant to §3020-a, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 15 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 15 days, the commissioner shall appoint a hearing officer from the list.

4. For charges brought pursuant to §3020-b, where an employee has received two consecutive ineffective ratings, the employee and the board must notify the commissioner of their agreed upon hearing officer selection within 7 days of receiving the list of potential hearing officers. If the parties fail to agree or fail to notify the commissioner of their selection within 7 days, the commissioner shall appoint a hearing officer from the list.

5. For charges brought pursuant to §3020-b, where an employee has received three consecutive ineffective ratings, the commissioner shall appoint a hearing officer from the list.

### Pre-Hearing Conference

1. The pre-hearing conference shall be private.

2. The hearing officer shall hold a pre-hearing conference within 10-15 days of receipt of notice from the commissioner confirming his or her acceptance to serve in such position, in the case of a standard or expedited §3020-a hearing.

3. For expedited §3020-b hearings where the employee has received 2 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 7 days of receiving notice confirming the hearing officer's agreement to serve.

4. For expedited §3020-b hearings where the employee has received 3 consecutive ineffective APPR ratings, the hearing officer shall hold a pre-hearing conference within 5 days of receiving notice confirming the hearing officer's agreement to serve.

5. At the pre-hearing conference, the hearing officer has the power to: a.) issue subpoenas; b.) hear and decide motions and applications made by either party; c.) set a schedule for full and fair disclosure of witnesses and evidence for both parties; and d.) set the time and place for hearings to ensure that the hearing is conducted within the statutory timelines.

6. Generally, pre-hearing motions must be made on written notice to the hearing officer and adverse party at least 5 days before the pre-hearing conference. Any pre-hearing motions not made as provided for herein shall be deemed waived. However, for expedited hearings, written notice to the adverse party shall be made no later than 2 days before the pre-hearing conference.

### General Hearing Procedures

1. The hearing will be conducted by a single hearing officer.

2. The employee shall have a reasonable opportunity to defend his or herself, including making any additional motions and applications and an opportunity to testify on his or her own behalf, however, the employee shall not be required to testify.

3. Each party has the right to be represented by counsel, and may subpoena and cross-examine witnesses. All testimony shall be under oath.

4. An accurate record of the hearing shall be kept at the expense of the commissioner. Upon request, the employee is entitled to a copy of the record without charge.

5. If the hearing officer needs to be replaced and the parties fail to notify the commissioner of their mutually agreed upon replacement within 2 business days, the commissioner shall select the replacement.

## Rights of Tenured Employees *(cont.)*

6. At the conclusion of the testimony, the hearing officer may allow the parties to submit memoranda of law; however, such submission may not delay the date that the hearing officer is required to render a decision.
7. In general, hearings must be completed within 60 days of the pre-hearing conference. Please see below for the time periods applicable to particular expedited hearings.
8. In general, all evidence must be submitted within 125 days of the filing of charges and no additional evidence shall be accepted after such time, absent extraordinary circumstances beyond control of the parties.

### Expedited Hearing Based on Revocation of Certification

1. If the charges are based upon revocation of the employee's certification, an expedited hearing must be held.
2. The hearing shall commence within 7 days of the pre-hearing conference and is limited to one day. The hearing may not be adjourned except upon request of a party and only for good cause as determined by the hearing officer.

### Expedited Hearing Based on Charges Constituting Physical or Sexual Abuse of Student

1. If the charges are based upon allegations of physical or sexual abuse of a student, an expedited hearing must be held.
2. The hearing shall commence within seven days after the pre-hearing conference and shall be completed within sixty days after the pre-hearing conference. Adjournments may not be granted that would extend the hearing beyond 60 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Expedited Hearing Based on Two Consecutive Ineffective APPR Ratings

1. The Board may bring charges alleging incompetence based upon two consecutive ineffective APPR ratings, in which case an expedited hearing would be held, but the board is not required to bring charges.
2. The hearing must begin within 7 days of the pre-hearing conference and be completed within 90 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 90 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.
3. The charges must allege that the board has developed and substantially implemented a teacher or principal improvement plan for the employee following the first evaluation in which the employee was rated ineffective and the immediately preceding evaluation if the employee was rated developing.

### Expedited Hearing Based on Three Consecutive Ineffective APPR Ratings

1. The Board shall bring charges alleging incompetence where any teacher or principal receives three consecutive ineffective APPR ratings, in which case an expedited hearing must be held.
2. The hearing must commence within 5 days of the pre-hearing conference and be completed within 30 days following the date that the employee requested the hearing. Adjournments may not be granted that would extend the hearing beyond 30 days, except where the hearing officer determines that the delay is both substantially beyond control of the requesting party and an injustice would result if the adjournment were not granted.

### Decision

1. With the exception of expedited hearings, the hearing officer shall render a written decision within 30 days of the last hearing date.
2. For expedited hearings, the hearing officer shall render a written decision within 10 days of the last hearing date.
3. The commissioner must immediately forward copies of the decision to the parties.
4. The hearing officer shall render a written decision that includes findings of fact and conclusions, based upon the findings of fact, as to each charge and shall state the penalty, or other action, if any, against the employee on each charge.

## Rights of Tenured Employees *(cont.)*

5. In those cases where a penalty is imposed, such penalty may be a written reprimand, a fine, a suspension for a fixed time without pay, or dismissal.

6. In determining penalty, the hearing officer shall give serious consideration to the penalty recommended by the board, and if the hearing officer imposes a different penalty, then the hearing officer must indicate the reasons for the alternate penalty based upon the record.

7. Within 15 days of the receipt of the hearing officer's decision, the board shall implement the decision. If the employee is acquitted of the charges, he or she must be restored to his or her position with full pay for any period of suspension without pay and the charges expunged from the employment record.

8. The hearing officer shall indicate in the decision whether any of the charges brought by the board were frivolous as defined by the Civil Practice Law and Rules §8303-a. If the hearing officer finds that all of the charges were frivolous, the hearing officer shall order the board to reimburse both the employee and the department reasonable costs that were incurred. If the hearing officer finds that some, but not all of the charges were frivolous, the hearing officer shall order the board to reimburse a portion of the reasonable costs incurred to the department and the employee.

### Appeal

1. Not later than 10 days after receipt of the hearing officer's decision, either the employee or the board may make an application to the New York State Supreme Court to vacate or modify the hearing officer's decision pursuant to Civil Practice Law and Rules §7511.

2. The filing of the pendency of an appeal shall not delay the implementation of the hearing officer's decision.

### Restoration of Rights

If an employee who was convicted of a felony crime as specified in Education Law §3020-a(2)(b) has his or her conviction reversed, the employee, upon application, shall be entitled to have his or her pay and other emoluments restored, for the period of time extending from the date of suspension to the date of the decision.

---

*Pursuant to §§ 30-2.14 and 30-3.17 of the Rules of the Board of Regents, educators whose Annual Professional Performance Reviews (APPRs) include results from the State's growth model (i.e., teachers of grades 4-8 ELA and Mathematics; principals of buildings including those grade levels; and principals of buildings including all of grades 9-12) or any other measures based on the grades 3-8 ELA and Mathematics State assessments will receive both an "original" evaluation and a "transition" evaluation. This process will continue through the 2018-19 school year, during the time that the State transitions to new ELA and Mathematics learning standards and assessments and during that time the State will explore potential revisions to the evaluation framework. The "original" evaluation will include the results of the State's growth model and any other measures based on the grades 3-8 ELA and Mathematics State assessments. This evaluation is provided for advisory purposes only and cannot be used for employment related decisions. Affected educators will also receive a "transition" evaluation that excludes the above referenced measures. During the transition period, only this transition score and rating will be used for purposes of employment decisions, including tenure determinations and for purposes of proceedings under Education Law §§3020-a and 3020-b.

# Exhibit G

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Tuesday, September 21, 2021 12:22 PM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Your application for a COVID-19 Vaccine Related Exemption or Accommodation has been received.

09/21/2021

Case#: A79583
File# 0865228
EMP ID: 1296342

Dear CORRINE LYNCH,

Thank you for submitting your application online!

Type of Application: COVID-19 Vaccine Related Exemption or Accommodation

Application Communications:
During your application process, all communications will be sent to your DOE e-mail account. You must continue to check your DOE e-mail, even if you listed a different preferred email address.

Changes to Your Application:
Unfortunately, you cannot make changes to your submitted application. If you need to make changes, you must withdraw this application and re-submit your request. To withdraw the application please log back into SOLAS: https://dhrnycaps.nycenet.edu/SOLAS.

**Questions:**
For technical questions regarding the SOLAS system, please call HR Connect at 718-935-4000 and refer to the case number at the top of this notice.For more information, you may also visit the HR Connect Employee Portal by logging in with your DOE/Outlook User ID and password at https://doehrconnect.custhelp.com.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

Ref Number : GX5908463 N3350 ADA Submission

# Exhibit G (1)

Corrine Lynch
34 Cheslan Court
Oceanside, NY 11572
(516) 316-0451
Clynch7@schools.nyc.gov

Dear **New York City Department of Education**,

I am writing to formally and respectfully apply for a religious exemption to immunizations. I base my request on religious grounds. New York law has great respect and deference for the myriad religions that are practiced in her borders and, as such, allows for the individual's unique word from God as it concerns this issue. I understand that we do not have to be members of an organized religion or any religion at all. I also appreciate that refusing immunization does not have to be a tenet or directive of a particular faith that I may follow. I also understand that I do not have to submit a letter from a religious figure.  Before moving any further, I ask that this be shared on an as-needed basis only; that is, only those charged with approving the application should read my words.

I was brought up as a Christians. Some Christian principles remain with me; those of generosity and tolerance towards others, the goal of peace and contentment, and a union with God remain a perpetual goal. However, as I grew and matured, I began to see that I did not truly understand why I adhered to the form of Christianity my parents introduced me to. I always looked for something beyond the church, past the hymns and more than the prayers recited. I needed more than the words that others wrote, which I was supposed to think and feel. I bought into it partially, but not 100%. Shouldn't religion be an integral part of life? As soon as I put down the Bible or walked out of the church, I left the thoughts and feelings a little bit behind; I had other ideas and feelings that were all my own that were not directly spoken of in the church. Shouldn't it all be the same? 'Half-baked' regarding organized religion did not sit well with me; I found I needed more to explain what I felt and thought. And what my relationship to God needed to be.

My family and I do not have to adhere to Christianity my parents introduced me to. We can look for something beyond the church building, past the hymns, and more than the prayers recited. We believe religion needs be an integral part of life, not just a few hours on a Sunday. We needed to make religion an essential part of life. We can't simply put down the Bible and disconnect. Belief in God needs, for us, to be more than that. We also believe that there is evidence that Jesus Christ did not necessarily want his teachings to become a standardized type of religion, which is precisely what, at least, Catholicism has done. We have chosen to live by the Christian principles that we feel define the essence of the faith and the word of Jesus Christ and the Bible. We have also invited other complementary aspects of other religions, including Buddhism, into our lives to complete our set of beliefs. We live by a blended group of views, and this suits us.

Nevertheless, the principles of generosity, tolerance towards others, inner peace and contentment, and a loving union with God remain a perpetual goal for us. We achieve this peace by trusting in God's words and following them. Followers of Jesus look for this inner peace and well as followers of Buddhism.

While I always will carry my Christian roots and a deep belief in Jesus and the Father, I look to other religious principles to live a life-supporting the essence of my understanding of Christ. I find that Eastern faiths (specifically Buddhism) call out to me as suitable for how I live and worship. This is because Buddhism teaches, among other things, that solutions to problems and obstacles lie within our bodies and minds- ourselves- not outside of ourselves.

"Trust in the Lord with all thine heart, and lean not unto thine own understanding. In all thy ways acknowledge Him, and He shall direct thy paths." Proverbs 3:5,6 "Show me the path where I should go, O Lord, show me the right road for me to walk." Psalms 25:4 "I will instruct thee and teach thee in the way which thou shalt go; I will guide thee with mine eye." Psalms 32:8 This illustrates that we must place our faith and trust in God and listen to His word. Therefore, whatever we feel his directive is to us, we must follow. This is important as various scripture can deliver a message to us, and according to the above, we must heed it as it is the word of God.

Do I believe in medical interventions? I think whatever God sends my way, I will seek His help for solutions and guidance. And my decisions will adhere to my personal belief in God. Though I turn my back on immunization, I do not turn my back on all 'modern' medicine and its practices and philosophies. When my child was born with a rare neurological-genetic condition, I leaned on God and prayer to help guide my family through the most challenging decisions we ever faced, and I accepted help.  There is a significant difference between a body in crisis needing help and a healthy body accepting a procedure. I believe God would accept the former; He would not accept the latter.

Why was I immunized in the past? It is part of my nature to live in a way that adheres to the 'rules' and follows guidelines set by trained experts. For me, and in most instances, this is comfortable and feels right. For this reason, my child and I have been vaccinated in the past. As I have raised my child and evolved and developed as a spiritual being, I see that many things of value in life do not necessarily make sense as humankind sees them. Sometimes, this is one of those 'times' we need to follow our inner voice, instinct, and conversations with our higher power. These conversations with God can take endless forms. Turning my back on vaccines has reached me in His word. This, to me, defines faith and defines mine. It is a difficult step to take in society, not to vaccinate. Current medical wisdom tells us there is a health risk if I do not engage in this procedure. It is difficult to carry out what I knew to be suitable for my family and reflect on my bond with God. Through prayer, consulting with self, God, and family members, I have found the strength to carry out what God's word means to me, even if it means opposing a more mainstream school of thought. My relationship with God, my family and my conscience are uniquely mine. My family and I will be raised to be a part of the holy and sacred union and interpretation.

The above is an explanation of my personal religious beliefs. I hope I have described them sufficiently. But, again, these thoughts are the unique message I receive from my God. I don't ask that you, or anyone else, agree with these thoughts and personal translations. But under New York law, I respectfully request that they be honored as truthful and legally permissible. Therefore, based on what I have shared, I ask this waiver be approved.

Warm regards,

Corrine Lynch

# Exhibit G (2)

September 13, 2021

To whom it may concern:

I, Cliff Kretkowski, am writing to confirm that I have been a part of Corrine Lynch's religious and spiritual journey for 39 years. I was a Pastor at the Valley Stream Church of the Nazarene and have witnessed and played a significant role in Corrine's religious/spiritual growth. I have known her since the day she was born. She was baptized in the church when she was 21 years old. I married her in the church and dedicated her son to God when he was a baby. She has attended Bible Studies to deepen her relationship with God, and I have been a mentor to her through many of life's challenges. Her relationship with God has been unique and transforming and it is her and her's alone. If you have any questions, please feel free to reach me at  (516) 680-0647.

Sincerely,
Cliff Kretkowski

# Exhibit G (3)

**From:** solas_donotreply@schools.nyc.gov <solas_donotreply@schools.nyc.gov>
**Sent:** Saturday, September 25, 2021 2:03 AM
**To:** Lynch Corrine <CLynch7@schools.nyc.gov>
**Subject:** Your COVID-19 Vaccine Religious Exemption Application - Determination

09/24/2021

Case#: A79583
File# 0865228
EMP ID: 1296342

Dear CORRINE LYNCH,
We have reviewed your application and supporting documentation for a religious exemption from the DOE COVID-19 vaccine mandate.
Your application has failed to meet the criteria for a religious based accommodation. Per the Order of the Commissioner of Health, unvaccinated employees cannot work in a Department of Education (DOE) building or other site with contact with DOE students, employees, or families without posing a direct threat to health and safety. We cannot offer another worksite as an accommodation as that would impose an undue hardship (i.e. more than a minimal burden) on the DOE and its operations.

Sincerely,

*HR Connect*
Medical, Leaves, and Records Administration

Please do not reply to this message via e-mail. This email address is automated.

# Exhibit G (4)

**From:** Division of Human Resources <DHR@schools.nyc.gov>
**Sent:** Monday, January 31, 2022 3:18 PM
**Subject:** February 11 Termination of Employment from the NYCDOE

Dear DOE Employee,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all New York City Department of Education staff.  Compliance with that Order is a condition of employment. Since you have not complied with the Order and have not chosen to extend your leave without pay, despite notice and an opportunity to do so, your employment with the New York City Department of Education is terminated, effective February 11, 2022. Please note that your health insurance coverage through the City will also cease upon termination.

You must return all DOE-issued equipment and materials, including your ID, to your supervisor. Information about COBRA will be mailed separately to you at the address on file in NYCAPS. Your school and/or office will be notified of your termination as well.

If you believe you are receiving this notification in error, please email LWOPquestions@schools.nyc.gov no later than February 2, 2022.

Thank you for your service to the New York City Department of Education.

Sincerely,

NYCDOE Division of Human Resources

# Exhibit H

**From:** Lynch Corrine
**Sent:** Tuesday, November 30, 2021 7:17 PM
**Subject:** Updated Maintaining Right to Sue for Wrongful Termination

**SUBJECT – Maintaining Right to Sue for Wrongful Termination**

To whom it may concern,
I received a final notice of leave without pay status from NYCDOE Division of Human Capital on 11/29/2021. In this notice, it states "If you remain non-compliant and have not opted to extend you LWOP or return from LWOP status by November 30, you are subject to termination from service with the NYCDOE beginning December 1, 2021."

I have reasons to believe that my religious or medical exemption was wrongfully denied by the DOE and I am writing this letter to inform you of the followings.
1.    I will NOT choose to extend my LWOP status on SOLAS by 11:59 pm on 11/30/2021 because I will not waive my right to sue.
2.    I am NOT waiving my rights to seek religious or medical exemption and accommodation from any requirement that conflicts with my sincerely held religious beliefs and/or medical conditions, and I am not waiving my rights to seek legal redress from any wrongful denial of such exemption or accommodation.
3.    I am NOT waiving my rights to challenge the involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process.
4.    I am NOT waiving my rights to challenge any wrongful termination.

Employee Name: Corrine Lynch
Signature: Electronic- Corrine Lynch
Date: 11/30/21

--
*Sincerely*
*Corrine Lynch*

# Exhibit

# I

**APPENDIX**

# United States Court of Appeals

FOR THE

SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:     Pierre N. Leval,
            José A. Cabranes,
            Denny Chin,
                *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith, Amaryllis Ruiz-Toro,

                                *Plaintiffs-Appellants,*          **ORDER**

            v.                                                    21-2678-cv

Bill de Blasio, in his official capacity as Mayor of the City of New York, David Chokshi, in his official capacity of Health Commissioner of the City of New York, New York City Department of Education,

                                *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado, Dennis Strk, Sarah Buzaglo,

                                *Plaintiffs-Appellants,*

            v.                                                    21-2711-cv

The City of New York, Board of Education of the City School District of New York, David Chokshi, in his Official Capacity of Health Commissioner of the City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

# Exhibit

# J

**From:** Venekas Rita <rveneka@schools.nyc.gov>

**To:** Corrine Lynch <rins083082@aol.com>

**Sent:** Monday, February 27, 2023 at 10:13:20 AM EST

**Subject:** Re: Problem code

Good morning

You have an "ineligible" working status with the DOE and cannot provide services to NYC students. Whatever caused the problem is confidential information.Please send an email and request assistance for clearance to OPI at OPIINFO@schools.nyc.gov

**Rita Venekas, PAA**

**Office of Related Services**

**Email: rveneka@schools.nyc.gov**

"It is during our darkest moments that we must focus to see the light"

Aristotle

# Exhibit

# K

September 13th, 2021

**To whom it may concern,**

**My name is R      F.          , my employee ID is #....... I have been employed with the NYCDOE for 20 years now.  I am extremely proud of all the work I've done with the communities of the Bronx that I've had the privilege of working with.  I am currently an Assistant Principal with Frederick Douglas Academy V in the Bronx.**

**"Religious liberty is a foundational principle of enduring importance in America enshrined in our Constitution and other sources of Federal law."**  I know that the law in this Country allows for personal religious beliefs and that's what makes me so proud to be an American, where my beliefs and freedoms are protected.  I get to work in a city that is literally called the Melting Pot of the Country.  It is filled with all different cultures and religions and we can live together respecting and encouraging one another's differences.

My faith, and religious journey is the most important thing in my life.  I am a devout Christian; my life is led by the Holy Spirit that lives inside of me.  It is my religious belief that my God is my healer and I put all my faith and hope in Him.  It is my religious belief that it is a complete betrayal of faith to put my hope and faith in any vaccine to keep my body healthy.  My God will heal me and my family.  We have all contracted covid and He kept us all, safe and whole.

Any blood that may be in any vaccines is sacrilegious and I cannot allow my body to be corrupted or made unclean.  1 Corinthians 3:17 "If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple".  Exodus 15:26 "I am the Lord that heals you." Fetal cells that may be used in creating this vaccine, goes against my stance on abortion.  As a Christian I am against murder.  Exodus 20:13 "You shall not murder."  Therefore, taking this vaccine will desecrate my body.  Even though I have been fully vaccinated in my childhood, that choice was performed by the choices of my non-religious parents, whom I loved dearly.  As an adult, husband and father, I choose to live out my life through God's command from His Holy word, the Bible.

My faith and relationship in God are what helps guide my life and helps me discern what is needed to keep my body in line with the Word of God.  I am created in the image of God.  My body/blood is a sacred being and must remain pure in the sight of God.  Taking this vaccine or any other vaccine for that matter would go against everything I believe and base my life upon.

I ask that you please keep this confidential, I am only sharing these personal things so you could have a better understanding of my declination of this vaccine due to my religious beliefs.  Please understand my convictions.  Thank you for your time and consideration.

Sincerely,

R.      F.

# Exhibit L

UFT.ORG - The United Federation of Teachers

🏠 > News > Press Releases > Arbitrator rules city must offer non-classroom work to teachers with Covid vaccination medical/religious exemptions

**PRESS RELEASES**

# Arbitrator rules city must offer non-classroom work to teachers with Covid vaccination medical/religious exemptions

Office or remote assignments must be available for vaccinated teachers with suppressed immune systems

*September 10, 2021* | Press Releases

**Arbitration finding also calls for unpaid leaves with health coverage, along with severance arrangements**

An independent arbitrator has ruled that New York City teachers with certain documented medical conditions must be offered non-classroom assignments. Other staffers reluctant to take the vaccine must be offered either an unpaid leave that maintains their health coverage, or a severance package.

UFT President Michael Mulgrew said, "As a group, teachers have overwhelmingly supported the vaccine, but we have members with medical conditions or other reasons for declining vaccination. After our demand for independent arbitration, the city backed off its initial position that all unvaccinated personnel be removed from payroll, and will offer out-of-classroom work for those with certified medical or other conditions."

"The city has also agreed — based on the arbitrator's determination — to create both a leave process and a severance agreement for other teachers who feel that they cannot comply with the vaccination mandate."

The teacher vaccine mandate is scheduled to go into effect on Sept. 27, 2021. Classes begin Monday, Sept. 13.

The UFT estimates that more than 80% of teachers have already been vaccinated, either through the union's own vaccination program or through other city and state initiatives.

## Medical exemptions

Under the terms of the arbitrator's ruling, teachers and other staff with certain medical conditions that prevent them from being vaccinated, either temporarily or permanently, including certain cancer treatments, must be offered educational and administrative work in non-classroom buildings.

In cases where teachers seek exemptions for medical conditions not on the list, independent arbitrators will decide if the exemption is appropriate.

Teachers who have been vaccinated but whose immune systems are suppressed must also be offered office or remote assignments as long as their medical conditions last.

## Religious exemptions

Exemption requests shall be considered for recognized and established religious organizations and not where the objection is personal, political, or philosophical in nature. Applications for religious exemptions must be documented in writing by clergy or a religious official. Appeals of religious exemption denials will be heard by the same independent arbitrators ruling on medical exemption appeals.

## Unpaid leaves

Teachers who are not vaccinated but for whom medical exemptions are unavailable must be offered unpaid leaves that will last until next September. While their salaries will be withheld, the city will continue their medical insurance coverage.

Such teachers will be returned to their jobs and the payroll if and when they decide to be vaccinated. If they have not been vaccinated by the end of that leave, the system will assume they have resigned.

## Severance

Staff who decline to accept an unpaid leave must be offered a severance package that would include payment for unused sick days, along with health insurance until the end of the school year. They would also be entitled to apply to return to city schools in the future.

Unvaccinated teachers who refuse all options will be subject to the disciplinary process.

## Arbitration and the legal process

Arbitration is a process outside of the court system that is used to resolve differences between parties, often over contract interpretation — in this case a dispute between the UFT and the city over the impact of the Health Department's vaccine mandate on the work of teachers and other staff members.

The arbitration finding does not resolve the underlying issue of whether the city has the legal authority to issue such a mandate for teachers and other city workers. The question of the city's legal authority can only be resolved by the courts. The Municipal Labor Committee, of which the UFT is a member, has brought a suit in Manhattan Supreme Court to resolve that issue.

The arbitration was conducted by Martin F. Scheinman, of Scheinman Arbitration and Mediation Services. **Read the arbitration decision »** (https://drive.google.com/file/d/1NUaMMrvP_1Pe31uX33MEXJgRpietv1EI/view?usp=sharing)