THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

***STEVEN BANKS***
***Corporation Counsel***

***Eric Vetterlein***
*Assistant Corporation Counsel*
Labor & Employment Law Division
(212) 356-5044
evetterl@law.nyc.gov

September 24, 2026

**BY E-MAIL**
Magistrate Judge Joseph A. Marutollo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
Marutollo_Chambers@nyed.uscourts.gov

Re: Lynch v. Dept. of Ed. of City of N.Y., No. 24-cv-7795 (DG)(JAM)

Dear Magistrate Judge Marutollo:

The parties write jointly, pursuant to paragraph VI.B of Your Honor's Individual Practices and Rules, to apprise the Court of a discovery dispute that has arisen relating to Plaintiff's requests (a) to include Katherine Rodi ("Rodi"), whom this Court previously dismissed from this case for "lack of personal involvement in the alleged constitutional deprivations,"[1] and Eric Amato ("Amato"), another nonparty DOE employee, as custodians in the parties' limited e-discovery search; and, (b) to produce Rodi for a deposition. Defendant has consistently objected to these requests throughout the course of discovery as Rodi was previously dismissed as a defendant from the case and both custodians lack any personal involvement in Plaintiff's remaining claims.

## I. BRIEF DESCRIPTION OF THE CURRENT CLAIMS AND DEFENSES

On November 8, 2024, Plaintiff filed a Complaint naming Rodi and David Banks, the former Chancellor of the DOE, as defendants. ECF No. 1. On May 12, 2025, the defendants filed a motion to dismiss the Complaint. ECF No. 28. By Memorandum and Order dated March 4, 2026 (ECF No. 70), the Court adopted Your Honor's Report and Recommendation dated December 26, 2025 (ECF No. 60) ("R&R") (collectively, the "Court's Decision"), granting the motion to dismiss as to Plaintiff's: (1) facial Free Exercise and Establishment Clause challenges to the COVID-19 Vaccine Mandate ("CVM") applicable to employees of the New York City Department of Education ("DOE"), to the extent they had been raised; (2) Fourteenth Amendment equal protection claim; (3) procedural due process claim; (4) substantive due process claim; (5) "stigma plus" due process claim; (6) fraud in the inducement; (7) claim for breach of the implied

[1] See Lynch v. Dep't of Educ., No. 24-cv-7795(DG)(JAM), 2025 U.S. Dist. LEXIS 266029 (E.D.N.Y. Dec. 26, 2025), *report and recommendation adopted*, No. 24-cv-7795(DG)(JAM), 2026 U.S. Dist. LEXIS 44321 (E.D.N.Y. Mar. 4, 2026).

covenant of good faith and fair dealing; (8) NY Education Law §§ 3020 and 3020-a claims; and (9) all claims against Rodi. In the same Memorandum and Order, the Court denied the motion to dismiss as it pertained to Plaintiff's: (1) as-applied First Amendment Free Exercise and Establishment Clause claims; and (2) denial of religious accommodation claim under the First Amendment, and granted Plaintiff leave to amend the Complaint. See R&R at 42.

On April 17, 2026, Plaintiff filed an Amended Complaint, naming DOE, the City of New York, and Steven Banks as defendants. ECF No. 80. On May 26, 2026, Plaintiff filed a Second Amended Complaint ("SAC"), naming only DOE as a defendant, and asserting: (1) as-applied First Amendment Free Exercise and Establishment Clause challenges; (2) a First Amendment retaliation claim; and (3) a failure to accommodate claim. ECF No. 88. Defendant DOE filed an Answer to the SAC on June 10, 2026. ECF No. 89.

### A. Claims and Defenses

Plaintiff Corrine Lynch, purporting to proceed *pro se*, a former teacher for the New York City Department of Education whose reasonable accommodation request for a religious exemption from the CVM was denied, was terminated by the DOE due to her failure to comply with the CVM. Plaintiff claims that the denial of her reasonable accommodation request violated the First Amendment Free Exercise and Establishment Clauses, that Defendant subjected her to retaliation, and that Defendant unlawfully failed to accommodate her religion.

Defendant's position is that Plaintiff fails to establish a prima facie case for any of the claims asserted in the SAC. Furthermore, Defendant can establish that providing Plaintiff, a classroom teacher, with her requested exemption to the CVM would have certainly created an undue hardship for Defendant because the presence of an unvaccinated teacher in close proximity to a vulnerable population of unvaccinated students would have created a substantial risk for Defendant, and because allowing Plaintiff to teach her students in-person would have forced DOE to violate the law, which the Second Circuit has consistently held is, necessarily, an undue hardship. See New Yorkers for Religious Liberty, Inc. v. City of NY, 125 F.4th 319, 333 (2d Cir. 2024). Finally, Plaintiff has failed to plead, and discovery has failed to yield, any evidence to show that Plaintiff's termination bore any connection to an inference of discrimination. Instead, the record clearly demonstrates that Plaintiff's termination was the result of her own decision to forego vaccination and failure to comply with the CVM, which was required by law.

## II. DISCOVERY DISPUTES

The current discovery disputes first involves Plaintiff's request to depose Rodi, Plaintiff's request to include Rodi as an ESI custodian, and Plaintiff's request to include Amato as an ESI custodian. As discussed further below, Defendant maintains that Plaintiff has failed to demonstrate how these requests will lead to information relevant to the claims Plaintiff asserts in the SAC.

Furthermore, during Plaintiff's deposition[2] on September 21, 2026, Plaintiff, who continues to represent herself to the Court as a *Pro Se* party in this matter, testified that she has paid, and has been receiving legal services from, Betsy Combier ("Combier"), whom Plaintiff testified is a paralegal. Plaintiff testified to having paid Combier two thousand dollars ($2,000.00) prior to commencing this lawsuit in exchange for Combier's services, which Plaintiff testified include legal research and advice concerning litigation strategy. A self-professed "expert," Combier claims on her website to "support all of our clients as they pursue a just and fair resolution through litigation . . ."[3] Defendant advised Plaintiff during the deposition that Defendant intends to serve a demand for all communications between Plaintiff and Combier related to this case.

With respect to Plaintiff's request to depose Rodi, Plaintiff purports to seek testimony concerning the September 2021 procedures and deadlines, reapplication, further review, SOLAS administration, the officials responsible for those processes, and testimony related to issuance of problem code. Defendant has consistently objected to producing Rodi for a deposition as it is a settled issue in this case that Rodi had no personal involvement with Plaintiff's claims, and therefore her testimony would be irrelevant to the issues in this case. Moreover, Plaintiff acknowledges being in possession of and cites to the transcript of a Rule 30(b)(6) deposition of Rodi taken in another CVM-related matter involving DOE, Masciarelli v. New York City Department of Education, et al, (22-cv-7553)(CBA)(VMS), where Rodi testified about DOE's religious exemption/accommodation request review process. Plaintiff has demonstrated that she is in possession of the relevant 30(b)(6) testimony, and producing Rodi for a deposition, where Plaintiff is seeking entirely duplicative testimony in this case, and which involve facts about which Rodi has no personal knowledge, would be unduly burdensome and prejudicial to Defendants.

As for the ESI-related disputes, on August 23, 2026, the issue arose after Plaintiff requested a meet-and-confer to discuss Defendant's responses to Plaintiff's discovery demands. Plaintiff proposed including as ESI custodians Rodi, unidentified individuals who reviewed her religious accommodation request, unidentified personnel from the Division of Human Capital division, and additional unidentified DOE employees. The parties met and conferred on September 4, 2026 and again on September 16, 2026, and agreed to a set of search terms and date range for an ESI search of Plaintiff's DOE email inbox. However, as Defendant informed Plaintiff during those discussions, Defendant objects to the inclusion of Rodi as a custodian for the ESI search, because Rodi was previously dismissed from this case for lack of personal involvement and has no personal knowledge of the facts of this case. Following the September 4, 2026 meet and confer, Plaintiff newly requested including Amato as a custodian for the ESI search. Defendant objects to this request because Amato is wholly irrelevant to this case. Upon information and belief, Plaintiff, herself, does not even know who Amato is, what his role within DOE is, and Plaintiff has not demonstrated how a search of Amato's email would be anything other than a fishing expedition. Moreover, expanding ESI collection and review at this stage, shortly before discovery is set to close, would impose additional burden and expense without a showing of likely benefit. See Fed. R. Civ. P. 26(b)(1).

[2] Plaintiff's deposition was held on September 21, 2026; as such, Defendant is still awaiting the deposition transcript. Defendant is prepared to produce a copy of the transcript to the Court upon receipt of the transcript.

[3] See ADVOCATZ, https://www.advocatz.com (last visited June 22, 2026).

**Plaintiff's Position**[4]

**1. Katherine Rodi Deposition and ESI**

Plaintiff seeks Rodi as a fact witness concerning Plaintiff's surviving claims, not to revive the individual claims dismissed against her. The R&R addressed whether Plaintiff sufficiently alleged Rodi's personal involvement for purposes of individual liability; it did not determine that Rodi lacked relevant factual knowledge. (R&R at 38-39.) Importantly, Plaintiff did not possess or know of Rodi's March 25, 2025 deposition testimony when the Court considered Defendants' motion to dismiss and the R&R addressed Rodi's individual liability. That subsequently obtained sworn testimony provides the present factual basis for this discovery.

Rodi testified that she served on DOE's General Committee involved in implementation of the vaccine mandate and that the Committee made decisions concerning "the process of how employees would apply for exemptions" and other elements of the exemption process. (Ex. D at 15-16.) She further testified that she reviewed specific exemption applications and "physically denied them" in SOLAS. (Id. at 19-20.) She also testified that the General Committee made an overall undue-burden determination before reviewing individual applications. (Id. at 20-22.)

This testimony is relevant to Plaintiff's surviving as-applied Free Exercise, Establishment Clause, and failure-to-accommodate claims. The R&R identified an unresolved issue concerning whether Citywide Panel review was even available to Plaintiff. (R&R at 19.) Rodi also testified that when certain applications were incorrectly submitted or lacked appropriate documentation, DOE immediately advised employees so they could reapply or provide the necessary documentation. (Ex. D at 31.) Plaintiff, by contrast, was subsequently blocked by SOLAS from submitting another accommodation application. (Ex. G.) Plaintiff therefore seeks testimony concerning the September 2021 procedures and deadlines, reapplication, further review, SOLAS administration, and the officials responsible for those processes.

Rodi is also an efficient and proportional witness because her deposition may address two areas relevant to Plaintiff's surviving claims. In addition to her demonstrated firsthand knowledge of the religious-accommodation process, Plaintiff's June 14, 2026 discovery specifically sought Rodi's records concerning Plaintiff's Problem Code, as well as her accommodation and employment status. (Ex. B.) Plaintiff does not presently contend that Rodi personally placed Plaintiff's Problem Code. Rather, Plaintiff seeks to determine, to the extent of Rodi's knowledge, the process and officials responsible for its administration. Using Rodi for these subjects may reduce, rather than multiply, the need for separate DOE witnesses.

Plaintiff's request is not new. On July 28, 2025, Plaintiff expressly stated that she intended to depose Rodi and requested that a date be coordinated. Prior defense counsel responded that she would check Rodi's availability. (Ex. A.) Thus, Plaintiff sought this deposition more than a year before the present dispute.

The requested Rodi ESI is similarly longstanding. Plaintiff's June 14, 2026 discovery sought Rodi's files and communications concerning Plaintiff, religious accommodations, appeals, employment status, termination, the Problem Code, and the committee reviewing religious

[4] The language included here is copied verbatim from a draft "joint letter" Plaintiff emailed to the undersigned on September 17, 2026.

accommodations. (Ex. B.) Rodi's sworn testimony identifies her deputy Mallory Sullivan, her supervisor Vicki Bernstein, and, on occasion, the Law Department as persons with whom applications were discussed. (Ex. D at 20.) A search limited to Plaintiff's own DOE mailbox cannot capture such internal communications where Plaintiff was not copied.

**2. Eric Amato ESI**

Plaintiff separately seeks a limited ESI search of Eric Amato concerning the Problem Code and resulting employment restrictions as relevant to Plaintiff's surviving retaliation claim, not the dismissed stigma-plus theory.

This request has a specific evidentiary basis. In a February 9, 2022 email concerning employees placed on "2VM vaccine mandate leave," Amato stated that a "Problem code" was added to those employees, that "our central offices placed this code," and addressed when it would be removed. (Ex. C.) This does not establish that Amato personally placed Plaintiff's code, but it demonstrates contemporaneous knowledge of DOE's Problem Code process and identifies central DOE offices as involved.

Plaintiff's June 14 discovery sought records concerning the reasons for Plaintiff's Problem Code, the individuals involved, related communications, policies governing its use and removal, and its effect on employment eligibility or rehire. (Ex. B.) When Plaintiff later asked DOE whether the "problem code on my file" remained, DOE responded that Plaintiff had an "ineligible" working status and "cannot provide services to NYC students." (Ex. E.) The requested ESI may therefore identify the decision-makers, communications, timing, basis, maintenance, and removal criteria concerning the designation and resulting employment restrictions relevant to Plaintiff's retaliation claim.

Defendants also agreed in writing on September 11, 2026 to "conduct a limited search of Eric Amato's email," but subsequently withdrew that agreement and asserted that Amato had "zero involvement" with Plaintiff's claims. (Ex. F.) Plaintiff seeks the limited Amato search already contemplated during the parties' meet-and-confer.

**3. Meet-and-Confer and Relief Requested**

The parties conferred by telephone and exchanged written correspondence but remain at an impasse. Exhibit F documents Plaintiff's explanation of Rodi's relevance, Defendants' written agreement to a limited Amato search, and Defendants' subsequent refusal to produce Rodi for deposition or ESI and withdrawal of the Amato search.

Accordingly, Plaintiff respectfully requests that the Court direct Defendants to: (1) make Katherine Rodi available for deposition concerning the religious-accommodation process and, to the extent within her knowledge, the Problem Code process and responsible DOE officials; (2) conduct a reasonably limited ESI search of Rodi concerning Plaintiff's surviving claims; and (3) conduct a reasonably limited ESI search of Eric Amato concerning the Problem Code and resulting employment restrictions relevant to Plaintiff's surviving retaliation claim.

Rodi remains Plaintiff's primary requested witness because her demonstrated knowledge may permit Plaintiff to address multiple relevant subjects through one deposition. If Defendants maintain that Rodi lacks knowledge concerning a particular relevant subject, Plaintiff alternatively requests that Defendants identify and make available the General Committee

member or DOE official with comparable firsthand knowledge. Rodi's sworn testimony identifies, among others, Mallory Sullivan as an individual with whom exemption applications were discussed. (Ex. D at 20.) Plaintiff remains willing to meet and confer regarding reasonable ESI search terms and date restrictions.

**4. Additional Arguments concerning Ms. Combier[5]**

I am proceeding pro se and represent myself in this action. Ms. Combier is not an attorney, has never represented herself to me as an attorney, and has not provided me with legal representation or legal advice.

As I explained during my deposition, Ms. Combier and I work together and she assists me with research and information, including identifying and sharing cases and other materials. I also stated that I contacted her before my deposition to discuss what I should expect. None of this changes the fact that I am representing myself and make my own decisions concerning this litigation.

When I was asked during my deposition to estimate percentages concerning our work, I provided approximate figures in response to the questioning. I disagree with any characterization of that testimony suggesting that Ms. Combier is directing this litigation or acting as my attorney.

Ms. Combier has multiple professional roles in addition to being my friend, including her work with ADVOCATZ, as a paralegal, investigative reporter, and parent advocate. My communications with her are not limited to this litigation.

The approximately $2,000 I provided to Ms. Combier in 2024 was for assistance with research and to offset research-related expenses, including PACER costs. It was not payment for legal representation.

I have not concealed Ms. Combier’s assistance. I testified about our relationship and her assistance when questioned. I am unaware of any requirement that a pro se litigant notify the Court merely because a non-attorney assists with research, identifies cases, or provides information.

To the extent Defendants are attempting to connect Ms. Combier to my reliance upon Katherine Rodi’s March 25, 2025 testimony, the chronology should be accurately presented before such an inference is made.

Defendants have indicated that they intend to serve post-deposition discovery demands concerning Ms. Combier. I reserve all objections to any such demands, including objections concerning relevance, proportionality, scope, and timeliness. My willingness to address Defendants’ newly raised allegations in the joint letter should not be construed as agreement that the proposed additional discovery is appropriate.

[5] The arguments in *Point 4* are included verbatim from an email sent by Plaintiff at 10:18 AM on September 24, 2026.

**Defendant's Position**

**A. This Court Dismissed Katherine Rodi From This Case for Lack of Personal Involvement and Plaintiff Has Failed to Demonstrate How Any Discovery From Rodi Would Be Relevant to Her Remaining Claims**

As an initial matter, Plaintiff has not noticed a deposition for Rodi, who is now a nonparty to this case. Moreover, through email correspondence and during several meet-and-confers, Defendant has maintained its objection to Rodi's deposition and inclusion as an ESI custodian because as the Court had held, Rodi had no personal involvement and/or knowledge relevant to Plaintiff's claims. Plaintiff now claims that on July 28, 2025, prior to Rodi's dismissal from this case, Plaintiff emailed the Assistant Corporation Counsel previously handling this case about deposing Rodi, but this is irrelevant because at that time, Rodi was a named defendant, and has since been dismissed. Your Honor's R&R specifically noted that Your Honor recommended Rodi's dismissal because, "[t]he Complaint lacks any allegation that Defendant Rodi had any direct interaction with Plaintiff, mentioned religion, or treated Plaintiff differently than any other individual." ECF No. 60 at 39. This fact has not changed, nor has Plaintiff made any showing that any additional discovery from Rodi would be relevant, that Rodi was even aware of Plaintiff's individual request for a religious exemption to the CVM, or that Rodi had any involvement in Plaintiff's termination. Plaintiff's insistence on requesting discovery from Rodi is part of her continued futile attempts to reassert (1) facial challenges to the CVM, and (2) her claim that a problem code was improperly placed on her employment file. However, these claims were conclusively dismissed from this case, and it would be prejudicial to Defendant to bear the time and expense of engaging in discovery that is wholly irrelevant to Plaintiff's surviving claims. Plaintiff appears to be on a fishing expedition premised on Rodi's job title rather than any actual factual information that Rodi participated in, directed, reviewed, or had any knowledge whatsoever of the decision-making concerning Plaintiff's accommodation request.

Additionally, Plaintiff is in possession of Rodi's deposition transcript from Rodi's 30(b)(6) deposition in Masciarelli. Indeed, Plaintiff emailed a copy of that transcript to Defendant as part of her discovery production on March 21, 2026. Plaintiff misrepresents this timeline in an attempt to argue that because Plaintiff was not in possession of the transcript while opposing Defendants' Motion to Dismiss, she was purportedly unable to address Rodi's personal involvement. However, this argument has no merit because first, Rodi's testimony in Masciarelli firmly establishes that Rodi oversaw the review process and did not have personal knowledge specific to employees' applications for exemptions to the CVM nor to the reasons for DOE's denial and/or granting of the applications. Second, Rodi's transcript has been publicly available on Combier's website, and undoubtedly available to Plaintiff, since May 28, 2025,[6] before Plaintiff filed her opposition to the Motion to Dismiss on June 12, 2025. ECF No. 31. As stated above, Plaintiff testified that she paid and was corresponding with Combier prior to Plaintiff's commencement of this lawsuit on November 8, 2024. Plaintiff's contention that she was not in possession of the Rodi transcript prior to opposing the Motion to Dismiss stretches the limits of credulity.

---

[6] See https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/ (last visited September 23, 2026).

Plaintiff also insists that Defendant broadly search Rodi's email but fails to demonstrate why Rodi is an appropriate ESI custodian. A party seeking additional ESI custodians must articulate a reason to believe the custodian has unique, relevant information not available from existing custodians or sources. See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 107 (S.D.N.Y. 2013). Plaintiff has not done so here. Instead, Plaintiff relies on misguided speculation despite the Court's finding that Rodi was not personally involved in Plaintiff's accommodation request. Moreover, the only search that would potentially be relevant to Plaintiff's as-applied claims would be using Plaintiff's name "Corinne Lynch" as the search term. Notwithstanding the fact that Plaintiff has failed to articulate any reason to believe Rodi would have relevant information, this Court has already found that Rodi lacks personal involvement and knowledge of Plaintiff claims. Therefore, conducting a search of Rodi's email would directly contradict the Court's reasoning for dismissing Rodi from this case. Other than pure speculation, Plaintiff has not provided any basis as to how a search of Rodi's email would lead to any relevant discovery.

Finally, Defendant objects to the deposition and ESI search of Rodi out of a concern that Plaintiff's intention is nothing other than to harass Rodi and to continue to waste valuable time and resources based on Plaintiff's purely speculative and already debunked belief that Rodi played a role in Plaintiff's termination.

**B. Plaintiff's Discovery Requests Are Futile Attempts to Revive Her Facial Challenge to the Vaccine Mandate and "Stigma Plus" Claims**

In Defendant's letter in response to Plaintiff's Amended Complaint (ECF No. 80) this Office notified the Court that the Plaintiff therein attempted to reassert her already-dismissed claims for a facial challenge to the Vaccine Mandate, that the Citywide Panel was a "sham" process, and that Defendants were "secretly denying all religious appeals without reviewing any of them." See ECF No. 84. Now, Plaintiff seeks testimony from Rodi concerning DOE's vaccine reasonable accommodation procedure and deadlines, reapplication, the review process, and issuance of problem codes. None of these issues relate to Plaintiff's remaining claims: an as-applied challenge to the denial of her exemption request, a retaliation claim, and a failure to accommodate claim. DOE's decision-making process, policy considerations, and general standards of review are instead issues related to Plaintiff's incorrect and previously dismissed assertion that the CVM was, on its face, unconstitutional.

The same is true for Plaintiff's demands for discovery concerning to the issuance of an alleged problem code on her employment file. Again, this Court dismissed Plaintiff's claims that a problem code was improperly placed on her file. Yet, as is clear from Plaintiff's position as stated above, the vast majority of Plaintiff's discovery demands at issue here focus on identifying *who* placed the problem code on Plaintiff's employment file. Defendant has spent a great deal of time discussing this issue with Plaintiff and explaining that not only, upon and information and belief, was the problem code removed from Plaintiff's file once the CVM was lifted, but the issues Plaintiff raises related to the problem code are irrelevant to the surviving claims in this case.

**C. Defendant Objects to the Inclusion of Eric Amato as a Custodian in Defendant's ESI Search**

As an initial matter, Plaintiff's claim that Defendant agreed to include Amato as an ESI custodian is a blatant misrepresentation of the parties' discussions concerning ESI. The email referenced by Plaintiff in the statement of her position was nothing more than an attempt by Defendant to resolve outstanding discovery issues prior to the now-extended discovery deadline. During that email exchange, Defendant proposed being open to including Amato as a custodian as part of ongoing discovery negotiations **if** his inclusion would resolve the outstanding discovery issues and finalize the parameters of the ESI search. Clearly, as evidenced by the submission of this letter, Plaintiff refuses to attempt to resolve the remaining discovery and finalize parameters of the ESI search. Thus, Defendant maintains its objection to including Amato in its ESI search.

The meager support Plaintiff musters regarding including Amato in the ESI search is an email dated February 9, 2022, which, notably, was not even sent to Plaintiff, concerning the issuance of a problem code to employees who refused to comply with the CVM. This email was not specific to Plaintiff, and more importantly, is another attempt to relitigate Plaintiff's "stigma plus" problem code claims. Moreover, while Defendant acknowledges that Amato was a DOE employee at some point during the relevant periods, Plaintiff fails to demonstrate that Amato ever interacted with Plaintiff or had any knowledge of Plaintiff's religious accommodation request. Further, Plaintiff has never mentioned Amato at any time in the past during one of the many discussions between the parties concerning ESI. Amato is wholly irrelevant to this case and any of Plaintiff's surviving claims.

Accordingly, the Court should deny Plaintiff's request to require and/or compel Defendant to produce Rodi for a deposition and Plaintiff's request to include Rodi and Amato as custodians in Defendant's ESI search.

We thank the Court for considering this request.

Respectfully Submitted,

/s/ Eric Vetterlein
Eric Vetterlein
Assistant Corporation Counsel

/s/ Corinne Lynch______
Corinne Lynch
*Pro Se Plaintiff*